**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : |
| Plaintiff-Applicant, | : SIPA LIQUIDATION |
| | : |
| v. | : No. 08-01789 (BRL) |
| | : |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | : Substantively Consolidated |
| | : |
| Defendant. | : |

---

In re:

BERNARD L. MADOFF,

    Debtor.

---

IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,

    Plaintiff,

    v.

JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, and J.P. MORGAN SECURITIES LTD.,

    Defendants.

Adv. Pro. No. 10-4932 (BRL)

---

**MEMORANDUM OF LAW IN SUPPORT OF JPMORGAN'S**
**MOTION TO WITHDRAW THE REFERENCE**


WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
(212) 403-1000

*Attorneys for Defendants JPMorgan Chase & Co.,*
*JPMorgan Chase Bank, N.A., J.P. Morgan Securities*
*LLC and J.P. Morgan Securities Ltd.*

Dated:  February 8, 2011

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND .....................................................................................................4

    A.    JPMorgan's contacts with Madoff ............................................................5

    B.    Madoff's demise and liquidation ..............................................................6

    C.    The Trustee's lawsuit against JPMorgan to recover losses
            suffered by customers ..............................................................................6

    D.    The Trustee's claim that JPMorgan violated federal banking law .........7

ARGUMENT ..........................................................................................................9

I.     THIS ACTION IS SUBJECT TO MANDATORY WITHDRAWAL
      OF THE REFERENCE...................................................................................9

    A.    Withdrawal of the reference is mandatory when a proceeding
            requires significant interpretation of federal law other than the
            Bankruptcy Code ....................................................................................9

    B.    The Trustee's claims require significant interpretation of
            complex federal banking statutes and regulations ...............................11

    C.    The Trustee's claim of "fraud on the regulator" requires
            significant interpretation of federal non-bankruptcy law......................14

    D.    The Trustee's claims raise substantial issues of standing and
            preemption under federal securities law ...............................................17

            1.    Standing under SIPA..................................................................18

            2.    Preemption under SLUSA ..........................................................20

II.    THIS ACTION IS SUBJECT TO WITHDRAWAL OF THE
      REFERENCE FOR CAUSE.........................................................................23

    A.    Constitutional considerations support withdrawal of the
            reference in non-core proceedings .........................................................23

    B.    The Trustee's common law claims are non-core .................................24

    C.    Other relevant factors also strongly support withdrawal
            of the reference ......................................................................................27

1.   JPMorgan's right to a jury trial supports withdrawal
     of the reference ......................................................................................27

2.   The pendency of related litigation in this District
     supports withdrawal of the reference ........................................................29

CONCLUSION.................................................................................................................31

# TABLE OF AUTHORITIES

**Page**

**Cases**

*131 Liquidating Corp.* v. *LaSalle Capital Group, Inc. (In re 131 Liquidating Corp.)*,
222 B.R. 209 (S.D.N.Y. 1998).................................................................................................. 26

*1800Postcards, Inc.* v. *Morel*,
153 F. Supp. 2d 359 (S.D.N.Y. 2001) ...................................................................................... 27

*AT&T Co.* v. *Chateaugay Corp.*,
88 B.R. 581 (S.D.N.Y. 1988).................................................................................................. 11

*Baker* v. *Simpson*,
613 F.3d 346 (2d Cir. 2010) ................................................................................................... 25

*Barron* v. *Igolnikov*,
2010 WL 882890 (S.D.N.Y. Mar. 10, 2010)..................................................................... 20, 22

*Bear, Stearns Sec. Corp.* v. *Gredd*,
2001 WL 840187 (S.D.N.Y. July 25, 2001) ....................................................... 10, 11, 14, 22

*Boyle* v. *United Techs. Corp.*,
487 U.S. 500 (1988)................................................................................................................ 15

*Buckman Co.* v. *Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001)........................................................................................................... 15, 16

*Caplin* v. *Marine Midland Grace Trust Co. of New York*,
406 U.S. 416 (1972)........................................................................................................... 18, 19

*Chemtura Corp.* v. *U.S.*,
2010 WL 1379752 (S.D.N.Y. Mar. 26, 2010) ........................................................................ 11

*City of New York* v. *Exxon Corp.*,
932 F.2d 1020 (2d Cir. 1991) ................................................................................................... 9

*Durso Supermarkets, Inc.* v. *D'urso (In re Durso Supermarkets, Inc.)*,
170 B.R. 211 (S.D.N.Y. 1994)................................................................................................ 28

*Eastern Airlines, Inc.* v. *Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.)*,
1990 WL 5203 (S.D.N.Y. Jan. 24, 1990) ............................................................................... 10

*Enron Corp.* v. *J.P. Morgan Sec., Inc. (In re Enron Corp.)*,
388 B.R. 131 (S.D.N.Y. 2008)................................................................................................ 10

*Enron Power Mktg., Inc.* v. *Cal. Power Exch. Corp. (In re Enron Corp.)*,
2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004)........................................................................ 10

*Granfinanciera, S.A.* v. *Nordberg*,
492 U.S. 33 (1989).................................................................................................................. 28

*Hassett* v. *Bancohio Nat'l Bank (In re CIS Corp.)*,
172 B.R. 748 (S.D.N.Y. 1994)................................................................................................ 26

*Holmes* v. *SIPC*,
   503 U.S. 258 (1992)..................................................................................................... 18

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   2006 WL 337667 (S.D.N.Y. Feb. 10, 2006)........................................... 14, 27, 29, 30

*In re Dana Corp.*,
   379 B.R. 449 (S.D.N.Y. 2007)............................................................................. 10, 14

*In re Horizon Air, Inc.*,
   156 B.R. 369 (N.D.N.Y. 1993)............................................................................. 11, 14

*In re Old Carco LLC*,
   2010 WL 5158621 (S.D.N.Y. Dec. 6, 2010) ............................................................. 16

*Instituto de Prevision Militar* v. *Merrill Lynch*,
   546 F.3d 1340 (11th Cir. 2008) ................................................................................. 20

*Joremi Enters., Inc.* v. *Hershkowitz (In re New 118th LLC)*,
   396 B.R. 885 (Bankr. S.D.N.Y. 2008) ...................................................................... 25

*Keller* v. *Blinder (In re Blinder, Robinson & Co.)*,
   162 B.R. 555 (D. Colo. 1994)............................................................................. 11 n.3

*Kentile Floors, Inc.* v. *Congoleum Corp. (In re Kentile Floors, Inc.)*,
   1995 WL 479512 (S.D.N.Y. Aug. 10, 1995)............................................................. 28

*Kirschner* v. *KPMG LLP*,
   15 N.Y.3d 446 (2010)................................................................................................. 17

*LaSala* v. *Bordier et Cie*,
   519 F.3d 121 (3d Cir. 2008) ................................................................................. 21 n.6

*Levinson* v. *PSCC Servs., Inc.*,
   2010 WL 5477250 (D. Conn. Dec. 29, 2010)........................................................... 22

*M. Fabrikant & Sons, Inc.* v. *Long's Jeweler's Ltd.*,
   2008 WL 2596322 (S.D.N.Y. June 26, 2008) ..................................................... 27, 28

*MBNA Am. Bank, N.A.* v. *Hill*,
   436 F.3d 104 (2d Cir. 2006) ...................................................................................... 25

*Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*,
   547 U.S. 71 (2006)...................................................................................................... 21

*Mishkin* v. *Ageloff*,
   220 B.R. 784 (S.D.N.Y. 1998)........................................................... 10, 11 n.3, 22, 27

*Mishkin* v. *Peat, Marwick, Mitchell & Co.*,
   744 F. Supp. 531 (S.D.N.Y. 1990) ............................................................................ 18

*Newbro* v. *Freed*,
   409 F. Supp. 2d 386 (S.D.N.Y. 2006) ....................................................................... 17

*Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*,
   458 U.S. 50 (1982)...................................................................................................... 23

*Northwest Airlines Corp.* v. *City of Los Angeles (In re Nw. Airlines Corp.),*
    384 B.R. 51 (S.D.N.Y. 2008) .................................................................................................... 27

*Orion Pictures Corp.* v. *Showtime Networks, Inc. (In re Orion Pictures Corp.),*
    4 F.3d 1095 (2d Cir. 1993) .............................................................................................. 24, 27

*Pension Benefit Guar. Corp.* v. *LTV Corp. (In re Chateaugay),*
    86 B.R. 33 (S.D.N.Y. 1987) ................................................................................................... 26

*Penthouse Media Grp.* v. *Guccione (In re Gen. Media, Inc.),*
    335 B.R. 66 (Bankr. S.D.N.Y. 2005) .................................................................................... 25

*Redington* v. *Touche Ross & Co.,*
    592 F.2d 617 (2d Cir. 1978) ................................................................................................. 18

*Redington* v. *Touche Ross & Co.,*
    612 F.2d 68 (2d Cir. 1979) ................................................................................................... 18

*RGH Liquidating Trust* v. *Deloitte & Touche,*
    71 A.D.3d 198 (1st Dep't 2009) .......................................................................................... 21

*Schachter* v. *Japan Indep. Commc'ns Corp.,*
    1995 WL 675486 (S.D.N.Y. Nov. 14, 1995) ...................................................................... 28

*SEC* v. *Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group),*
    960 F.2d 285 (2d Cir. 1992) ................................................................................................. 23

*SEC* v. *Goren,*
    2002 WL 32963582 (E.D.N.Y. Mar. 6, 2002) ............................................................. 11 n.3

*SEC* v. *Zandford,*
    535 U.S. 813 (2002) ............................................................................................................... 20

*Shearson Lehman Hutton, Inc.* v. *Wagoner,*
    944 F.2d 114 (2d Cir. 1991) ........................................................................................... 17, 18

*Shugrue* v. *Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),*
    922 F.2d 984 (2d Cir. 1990) ....................................................................................... 9, 10 n.2

*SIPC* v. *BDO Seidman, LLP,*
    49 F. Supp 2d 644 (S.D.N.Y. 1999) .................................................................................... 19

*SIPC* v. *BDO Seidman, LLP,*
    222 F.3d 63 (2d Cir. 2000) ................................................................................................... 19

*Solutia Inc.* v. *FMC Corp.,*
    2004 WL 1661115 (S.D.N.Y. July 27, 2004) ...................................................................... 24

*Starr Int'l Co., Inc.* v. *Am. Int'l Group, Inc.,*
    623 F. Supp. 2d 497 (S.D.N.Y. 2009) ................................................................................. 28

*Togut* v. *RBC Dain Correspondent Servs. (In re S.W. Bach & Co.),*
    425 B.R. 78 (Bankr. S.D.N.Y. 2010) ................................................................................... 26

*Touche Ross & Co.* v. *Redington,*
    442 U.S. 560 (1979) ............................................................................................................... 18

*United Orient Bank* v. *Green*,
  200 B.R. 296 (S.D.N.Y. 1996)................................................................. 25

*Wedtech Corp.* v. *London (In re Wedtech Corp.)*,
  81 B.R. 237 (S.D.N.Y. 1987)................................................................. 29

**Statutes**

11 U.S.C. § 157(d) .................................................................................. 19 n.5

11 U.S.C. § 548(c) ........................................................................................ 8

11 U.S.C. § 550(b)(1) .................................................................................... 8

12 U.S.C. § 93 ............................................................................................. 16

12 U.S.C. § 161 ........................................................................................... 15

12 U.S.C. § 164 ........................................................................................... 15

12 U.S.C. § 164(d) ...................................................................................... 16

12 U.S.C. § 325 ........................................................................................... 16

12 U.S.C. § 481 ........................................................................................... 16

12 U.S.C. § 483 ........................................................................................... 16

12 U.S.C. § 1818 ......................................................................................... 16

12 U.S.C. § 1844(a) .................................................................................... 15

12 U.S.C. § 1847 ......................................................................................... 16

15 U.S.C. § 78bb(f)(5)(D) ........................................................................... 21

15 U.S.C. § 78bbb ................................................................................... 19 n.5

15 U.S.C. § 78ff(a) ...................................................................................... 15

15 U.S.C. § 78o ........................................................................................... 15

15 U.S.C. § 77p(b) ...................................................................................... 20

15 U.S.C. § 77p(f)(2)(A) ............................................................................. 21

15 U.S.C. § 77r(b) ....................................................................................... 20

15 U.S.C. § 78u-2 .................................................................................... 15-16

18 U.S.C. § 1001(a) .................................................................................... 15

18 U.S.C. § 1005 ......................................................................................... 15

28 U.S.C. § 157(a) ...................................................................................... 23

28 U.S.C. § 157(b)(1) .................................................................................. 24

28 U.S.C. § 157(b)(2) .................................................................................. 25

28 U.S.C. § 157(c)(1) .................................................................................. 24

28 U.S.C. § 157(d) ................................................................................. passim

28 U.S.C. § 157(e) ........................................................................................................ 28

28 U.S.C. § 1334(b) ...................................................................................................... 23

31 U.S.C. § 5318(h) ...................................................................................................... 12

31 U.S.C. § 5320 ........................................................................................................... 26

31 U.S.C. § 5321 ........................................................................................................... 26

N.Y. Debt. & Cred. Law § 278 ....................................................................................... 8

**Regulations**

12 C.F.R. § 21.11 .......................................................................................................... 15

12 C.F.R. § 208.62 ........................................................................................................ 13

12 C.F.R. § 208.63(b) .................................................................................................... 12

12 C.F.R. § 208.63(c) ............................................................................................... 12, 13

12 C.F.R. § 225.4(f) ....................................................................................................... 15

**Other Authorities**

1 *Collier on Bankruptcy* ¶ 3.04[2] (16th ed. 2010) ................................................ 10 n.2

1 *Collier on Bankruptcy* ¶ 3.01 (15th ed. 1986) ......................................................... 11

Federal Financial Institutions Examination Council, *Bank Secrecy
Act/Anti-Money Laundering Examination Manual* .......................................... 13 n.4

JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC and J.P. Morgan Securities Ltd. (collectively, "JPMorgan") respectfully submit this memorandum of law in support of their motion for an order pursuant to 28 U.S.C. § 157(d) withdrawing the reference of this action to the bankruptcy court. As set forth below, this case meets the requirements for both mandatory and discretionary withdrawal of the reference and must be adjudicated in the district court.

## PRELIMINARY STATEMENT

Although filed in the bankruptcy court, this extraordinary lawsuit raises novel and unsettled questions of federal non-bankruptcy law that fall well outside the bankruptcy court's domain and expertise. By this action, the Trustee for the liquidation of Bernard Madoff's brokerage firm seeks to recover more than *$6 billion* in damages from JPMorgan, where Madoff's firm maintained commercial bank accounts. The Trustee alleges that JPMorgan knew about and actively assisted in Madoff's crimes, supposedly motivated by the desire to protect the bank's wholly immaterial earnings from Madoff's bank accounts. The Trustee further alleges that JPMorgan violated numerous federal banking laws in handling Madoff's accounts. Based on these allegations, the Trustee brings various common law claims against JPMorgan, as well as a claim that the Trustee calls "fraud on the regulator."

The Trustee's massive damages action against JPMorgan bears no resemblance to a typical lawsuit commenced by a bankruptcy trustee. In seeking to recover billions of dollars from JPMorgan, the Trustee is not relying on his powers under the Bankruptcy Code to avoid preferential or fraudulent transfers. Although the Trustee has brought some avoidance claims, they are tiny in comparison to the Trustee's damages claims. Nor is the Trustee seeking to recover losses suffered by the brokerage firm he was appointed to liquidate. Rather, the Trustee

has proclaimed that he is pursuing non-bankruptcy claims on behalf of thousands of Madoff's *customers* to recover losses that *they* suffered as a result of Madoff's scheme.  In substance, the Trustee is trying to pursue an enormous backdoor class action to recoup damages incurred by individuals and entities other than the firm to which he is the appointed successor.

JPMorgan has a statutory right to litigate this case — in which it is falsely accused of complicity in the largest securities fraud in U.S. history — in an Article III court. Under 28 U.S.C. § 157(d), the referral of an action to the bankruptcy court *must* be withdrawn if the proceeding requires significant interpretation of federal law other than the Bankruptcy Code. This proceeding meets that requirement many times over.  The Complaint presents numerous issues that will require significant interpretation of federal banking and federal securities law.

*First*, federal banking law pervades the Complaint.  The Trustee alleges repeatedly that JPMorgan violated federal banking statutes and regulations, including the Bank Secrecy Act of 1970, the USA Patriot Act, and related regulations.  Those federal laws provide broad guidelines to banks for detecting money laundering, but they have rarely been addressed or interpreted by the courts.  JPMorgan believes that the Trustee is entirely wrong in asserting that JPMorgan violated any federal statutes or regulations; quite simply, the Trustee's interpretation of federal banking law would impose broad investigative duties on banks that do not exist.  The Trustee's contentions thus require the Court to engage in significant interpretation of federal banking law to determine what the relevant statutes and regulations require.  This is most certainly not the domain of bankruptcy law or the bankruptcy court.

*Second*, the Trustee's claim against JPMorgan for "fraud on the regulator" also presents significant issues of federal law.  The Trustee alleges that JPMorgan deceived the U.S. government — including the Securities and Exchange Commission, the Office of the

Comptroller of the Currency, and the Federal Reserve — by not alerting them to Madoff's crimes. Yet the bank's relationships with its regulators are governed by an array of federal statutes and regulations, none of which creates an express private right of action against banks for fraud on the regulator. Accordingly, if any such claim were to exist, it would have to be created under federal common law. Moreover, to the extent the Trustee tries to rely on *state* common law to assert this novel claim, the Court will need to determine whether such a purported claim is preempted by federal law. The "fraud on the regulator" claim thus raises substantial questions of federal law that can only be resolved by an Article III court.

*Third*, to resolve the Trustee's claims, the Court will need to consider threshold issues of standing and preemption under the federal securities laws. The Trustee knows that he cannot bring multi-billion dollar damages claims against JPMorgan in his capacity as successor to Bernard L. Madoff Investment Securities LLC ("BMIS"): the damages in this case were suffered by BMIS's customers, not by BMIS itself; and in any event, claims on behalf of BMIS would be barred by an *in pari delicto* defense. The Trustee thus purports to assert his multi-billion dollar claims as a representative of the *customers* of BMIS, alleging that he has standing to sue as their supposed bailee, subrogee, or assignee and to recover damages that they alone suffered. The federal courts, however, have split on whether the Securities Investor Protection Act of 1970 ("SIPA"), part of the federal securities laws, authorizes a SIPA trustee to sue on behalf of customers. Moreover, even if SIPA does confer such standing, the Court will still need to decide whether this backdoor class action is barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), which prevents plaintiffs from bringing state-law securities fraud claims on a representative basis. Resolution of these issues will require significant interpretation of federal securities law, mandating withdrawal of the reference.

Finally, even if withdrawal of the reference were not mandatory due to this multitude of federal law questions, the reference should be withdrawn as a matter of discretion. Under section 157(d), withdrawal of the reference "for cause" is appropriate where the plaintiff's claims fall outside the bankruptcy court's "core" jurisdiction — meaning that the bankruptcy court lacks authority to enter final orders on those claims — and where interests of efficiency and uniformity would be served by withdrawal.

Here, the Trustee's common law claims for aiding and abetting, conversion and unjust enrichment are precisely the types of claims that are routinely litigated in Article III courts, and they fall squarely outside the bankruptcy court's "core" jurisdiction and area of special expertise. For the same reason, the Trustee's claims that JPMorgan violated federal banking law, which sustain mandatory withdrawal, likewise support discretionary withdrawal. Although the Trustee has also brought "core" claims under federal bankruptcy law, those claims are dwarfed by the multi-billion dollar claims that the Trustee has asserted under *non*-bankruptcy law. JPMorgan, moreover, has the right to demand a jury trial with respect to most of the Trustee's claims, which could not be conducted in the bankruptcy court. These factors, as well as the pendency in the district court of a related action against JPMorgan, weigh decisively in favor of withdrawing the reference.

## BACKGROUND

This action arises out of Madoff's Ponzi scheme. The plaintiff is Irving H. Picard, as Trustee for the liquidation of BMIS. The defendants are JPMorgan Chase & Co., a

bank holding company, JPMorgan Chase Bank, N.A., a national banking association, and two of their affiliates, J.P. Morgan Securities LLC and J.P. Morgan Securities Ltd.  Compl. ¶¶ 15-24.[1]

### A.  JPMorgan's contacts with Madoff

BMIS had bank accounts at JPMorgan or predecessor banks since 1986.  *Id*. ¶ 178.  During that period, BMIS deposited customer investments into a so-called "703 Account" at JPMorgan and transferred money out of that account as part of the scheme.  *Id*. ¶¶ 2, 173.

JPMorgan also made loans to BMIS and received customary fees for providing commercial banking services.  In 2005 and 2006, JPMorgan made secured loans of $145 million to BMIS, earning less than $3.5 million of interest before the loans were repaid.  *Id*. ¶¶ 257-66 & Ex. A.  The Trustee also alleges that, during the six-year period prior to Madoff's bankruptcy, JPMorgan received approximately $597,000 in fee payments from BMIS.  *See id*. ¶ 277 & Ex. A.

In addition to this commercial banking relationship, beginning in 2006, J.P. Morgan Securities Ltd. invested approximately $338 million in four Madoff "feeder funds," *i.e.*, third-party investment funds that invested their assets with Madoff.  JPMorgan made these investments as a hedge for certain financial products that were tied to Madoff's reported returns. *See, e.g.*, *id*. ¶¶ 109, 123.

After JPMorgan acquired Bear Stearns, JPMorgan conducted an across-the-board review of its exposure to hedge funds.  *Id*. ¶ 122.  JPMorgan's review of its hedge fund exposure resulted in significant redemptions from hedge funds unrelated to Madoff.  The review also resulted in JPMorgan's redeeming approximately $276 million of its original investments in Madoff feeder funds, *id*. ¶ 169 & Ex. E, which was a small fraction of the total redemptions

---

[1] The Trustee's Complaint against JPMorgan, as publicly filed on February 3, 2011, is attached to the accompanying Declaration of Emil A. Kleinhaus as Exhibit 1.

resulting from the bank's review.  JPMorgan lost the remainder of its Madoff-related investments when the Ponzi scheme was revealed.

### B.    Madoff's demise and liquidation

On December 11, 2008, the FBI arrested Madoff, and the U.S. Attorney for the Southern District of New York charged him with conducting a multi-billion-dollar securities fraud.  On December 15, 2008, the Securities Investor Protection Corporation ("SIPC") filed an application in this Court seeking to commence a liquidation proceeding for BMIS under SIPA. The Honorable Louis L. Stanton granted SIPC's application and referred the SIPA proceeding to the bankruptcy court.  *Id*. ¶ 50.

### C.    The Trustee's lawsuit against JPMorgan to recover losses suffered by customers

On December 2, 2010, after taking substantial discovery from JPMorgan under Rule 2004 of the Federal Rules of Bankruptcy Procedure, the Trustee commenced this action in the bankruptcy court.  While a small portion of the Trustee's action resembles the hundreds of other "clawback" actions that the Trustee has brought against BMIS customers and other parties, the crux of this lawsuit, trumpeted by the Trustee in multiple press releases, is a set of massive common law damages claims against JPMorgan seeking to recover losses suffered by thousands of BMIS customers as a result of Madoff's fraud.

The Trustee's "clawback" claims seek to recover payments made by BMIS to JPMorgan before the fraud was revealed.  These claims seek to recover $145 million in loan repayments, $3.48 million in interest payments on that loan, and $597,000 in banking fees.  *See* Compl. ¶¶ 292-347 & Ex. A.  The Trustee also seeks to recover the approximately $276 million in redemptions made by JPMorgan from Madoff feeder funds.  *Id*. ¶¶ 348-429 & Ex. E.

In size, these bankruptcy claims pale in comparison to the Trustee's non-bankruptcy claims.  Based on theories of aiding and abetting fraud and breach of fiduciary duty, as well as a theory of "fraud on the regulator," the Trustee asserts that JPMorgan should be held liable for at least $5.4 billion, apparently the amount that Madoff's customers allegedly lost between December 2004 and December 2008.  *Id.* ¶¶ 443, 458, 482.  In addition, based on theories of conversion and unjust enrichment, the Trustee claims that Madoff's customers are entitled to all the amounts that JPMorgan earned, directly or indirectly, from Madoff's account, which the Trustee estimates (without support) to be $500 million.  *Id.* ¶¶ 468, 471-72, 465.

Consistent with the Trustee's recognition that the losses he is seeking to recover were suffered by *customers* of BMIS — as opposed to BMIS itself — the Trustee has explicitly brought this lawsuit as a purported representative of those customers.  The Trustee alleges that he is suing "on behalf of customer-bailors," *id.* ¶ 17(f), that he is an "assignee" of claims who "stands in the shoes of persons who have suffered injury-in-fact," *id.* ¶ 17(h), and that SIPC is a subrogee of claims paid to customers, *id.* ¶ 17(i).

### D.  The Trustee's claim that JPMorgan violated federal banking law

A central theory of the Complaint is that JPMorgan failed to comply with federal banking laws — including the Bank Secrecy Act, the Patriot Act, and related regulations — in its handling of Madoff's bank accounts.  The Trustee claims that JPMorgan "was responsible for knowing the business of its customers," *id.* ¶ 2, and that JPMorgan "disregard[ed] its own anti-money-laundering duties" by failing to report Madoff's fraudulent activity, *id.* ¶ 4.

The Complaint sets forth the Trustee's interpretation of what "federal legislation and regulations" require of banks, and asserts that JPMorgan did not comply with those laws.  *Id.*

¶¶ 182-250.  The Trustee alleges that JPMorgan did not "closely observe the transactions" in Madoff's bank accounts; did not have an adequate "sponsor" for the accounts; and did not sufficiently "investigate" the account holder's "business activity" through "on-site due diligence," review of documents, and attention to "media reports."  *Id*. ¶¶ 183-93.  The Trustee also alleges that JPMorgan did not conduct the kind of "serious investigation of the activity in the 703 Account" that is supposedly required by federal law in determining whether to file Suspicious Activity Reports with the U.S. government.  *Id*. ¶¶ 238, 249-50.

The Trustee invokes JPMorgan's alleged failure to comply with its duties as a federally regulated financial institution to support multiple causes of action.  In alleging "fraud on the regulator," the Trustee expressly relies on JPMorgan's alleged failure to "report irregularities in the 703 Account activity," despite its "duty to report suspicious activity."  *Id*. ¶¶ 474-75.  Likewise, in alleging a claim for conversion, the Trustee asserts that "JPMorgan was required to monitor BLMIS's banking activities."  *Id*. ¶¶ 462, 464.  Further, in alleging that JPMorgan aided and abetted Madoff's fraud and breach of fiduciary duty, the Trustee asserts that JPMorgan provided substantial assistance to Madoff's scheme by "choosing not to execute its AML policy," not providing "an account sponsor to the 703 Account," and not reporting "irregular activity" in the 703 Account.  *Id*. ¶¶ 441, 456.

The Trustee can also be expected to argue that JPMorgan's alleged non-compliance with federal banking law undermines the bank's position that it received transfers from Madoff in "good faith."  Under applicable law, JPMorgan has a defense to the Trustee's fraudulent transfer claims, as well as the Trustee's claims to recover from JPMorgan as an alleged indirect recipient of withdrawals by Madoff feeder funds, if it can show that it took the transfers for value and in "good faith."  11 U.S.C. § 548(c); 11 U.S.C. § 550(b)(1); N.Y. Debt. &

Cred. Law § 278.  The Trustee has already alleged that JPMorgan did not receive the transfers

made to it in "good faith."  Compl. ¶ 467.

## ARGUMENT

Section 157(d) of the Judicial Code provides for both mandatory and

discretionary withdrawal of the reference:

> The district court *may* withdraw, in whole or in part, any case or
> proceeding referred under this section, on its own motion or on
> timely motion of any party, for cause shown.

> The district court *shall*, on timely motion of a party, so withdraw a
> proceeding if the court determines that resolution of the proceeding
> requires consideration of both title 11 [the Bankruptcy Code] and
> other laws of the United States regulating organizations or
> activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).  For the reasons set forth below, the Trustee's adversary

proceeding is subject to mandatory withdrawal of the reference.  *See* Point I, *infra*.  There is also

ample "cause" to withdraw the reference as a matter of discretion.  *See* Point II, *infra*.

## I.     THIS ACTION IS SUBJECT TO MANDATORY WITHDRAWAL OF THE REFERENCE.

### A.     Withdrawal of the reference is mandatory when a proceeding requires significant interpretation of federal law other than the Bankruptcy Code.

Section 157(d) requires withdrawal of the reference of any proceeding that

involves "significant interpretation, as opposed to simple application, of federal laws apart from

the bankruptcy statutes."  *City of New York* v. *Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991);

*see also Shugrue* v. *Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995

(2d Cir. 1990) (requiring "substantial and material consideration" of federal non-bankruptcy law

for mandatory withdrawal).  The reference has thus been withdrawn in cases that "require 'the

bankruptcy court to engage itself in the intricacies' of non-Bankruptcy law, as opposed to 'routine application' of that law." *In re Dana Corp.*, 379 B.R. 449, 453 (S.D.N.Y. 2007) (quoting *Shugrue*, 922 F.2d at 995); *accord Enron Power Mktg., Inc.* v. *Cal. Power Exch. Corp. (In re Enron Corp.)*, 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) ("'The purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside the Bankruptcy Code.'" (quoting *Eastern Airlines, Inc.* v. *Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.)*, 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24, 1990)).[2]

Under the mandatory withdrawal provision, "the district court is not required to find that novel or unsettled questions of non-bankruptcy law are presented in order to withdraw the reference." *Enron Corp.* v. *J.P. Morgan Sec., Inc.* (*In re Enron Corp.*), 388 B.R. 131, 139 (S.D.N.Y. 2008); *accord Enron Power Mktg., Inc.*, 2004 WL 2711101, at *2. However, "where matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met." *Mishkin* v. *Ageloff*, 220 B.R. 784, 796 (S.D.N.Y. 1998); *accord Bear, Stearns Sec. Corp.* v. *Gredd*, 2001 WL 840187, at *4 (S.D.N.Y. July 25, 2001).

"Section 157(d) reflects Congress's perception that specialized courts should be limited in their control over matters outside their areas of expertise," and also assures parties that the interpretation of non-bankruptcy law "will be considered outside the narrow confines of a bankruptcy court proceeding by a district court, which considers laws regulating interstate commerce on a daily basis and [is] 'better equipped to determine them than are bankruptcy

---

[2]  Although section 157(d) refers to "consideration of both title 11 and other laws of the United States," many courts have "found that withdrawal does not depend upon the presence of a title 11 issue at all."  1 *Collier on Bankruptcy* ¶ 3.04[2] (16th ed. 2010) (citing, *inter alia*, *Shugrue*, 922 F.2d at 995).  Since the Complaint in this case alleges claims under the Bankruptcy Code, withdrawal would be mandatory even if consideration of title 11 were required.

judges.'"  *AT&T Co.* v. *Chateaugay Corp.*, 88 B.R. 581, 583-84 (S.D.N.Y. 1988) (quoting 1

*Collier on Bankruptcy* ¶ 3.01 at 3-53 (15th ed. 1986)); *accord In re Horizon Air, Inc.*, 156 B.R.

369, 374 n.5 (N.D.N.Y. 1993).  In determining whether withdrawal of the reference is

mandatory, a district court "need not evaluate the merits of the parties' positions"; rather, it is

sufficient for the court to determine that the proceeding will involve "substantial and material

consideration" of federal non-bankruptcy law.  *Gredd*, 2001 WL 840187, at *4; *see also*

*Chemtura Corp.* v. *U.S.*, 2010 WL 1379752, at *2 (S.D.N.Y. Mar. 26, 2010) (withdrawal of the

reference mandatory where proceeding "implicate[d] consideration and analysis of CERCLA and

the intricacies of non-Bankruptcy law, as opposed to routine application of that law" (internal

quotation marks and citation omitted)).[3]

     **B.**    **The Trustee's claims require significant interpretation**
                **of complex federal banking statutes and regulations.**

          The Trustee's claim that JPMorgan did not comply with federal banking laws will

present a substantial dispute about the requirements of the Bank Secrecy Act, the Patriot Act, and

related regulations.  The Trustee contends that these federal laws require banks such as

JPMorgan to "closely observe" their customers' transactions and conduct extensive, "on-site"

investigations of customers in an effort to detect money laundering.  Compl. ¶¶ 182, 183, 186,

189.  JPMorgan strongly disagrees with the Trustee's interpretation of the federal banking laws

---

[3]  Section 157(d) is fully applicable in liquidation proceedings under SIPA.  *See, e.g.*, *Mishkin*,
220 B.R. at 795-98 ("Courts have held, and the parties do not dispute, that [section 157(d)] and
the cases interpreting it, apply in SIPA proceedings.") (granting motion to withdraw the
reference of an adversary proceeding commenced by a SIPA trustee that required "substantial
and material consideration" of the PSLRA); *see also SEC* v. *Goren*, 2002 WL 32963582
(E.D.N.Y. Mar. 6, 2002) (withdrawing the reference of an entire SIPA liquidation proceeding
under section 157(d)); *Keller* v. *Blinder (In re Blinder, Robinson & Co.)*, 162 B.R. 555, 559 (D.
Colo. 1994) (concluding "that SIPA's jurisdictional provisions are not unconstitutionally
overbroad because withdrawal of the reference is contemplated in SIPA proceedings under the
same circumstances as are appropriate in regular bankruptcy cases").

cited in the Complaint, and categorically rejects the assertion that it violated any laws in its treatment of Madoff's accounts.  Thus, to evaluate the Trustee's claims, the Court will need to interpret the governing statutes and regulations and determine what they require.

The statutes and regulations cited by the Trustee provide only general guidance to banks.  For example, Section 352 of the Patriot Act requires financial institutions to "establish anti-money laundering programs" that include:  "(A) the development of internal policies, procedures, and controls; (B) the designation of a compliance officer; (C) an ongoing employee training program; and (D) an independent audit function to test programs."  31 U.S.C. § 5318(h) (cited in Compl. ¶ 184).  A related regulation cited by the Trustee likewise requires banks to develop a "compliance program" and a "customer identification program," and also requires that the compliance program provide for "internal controls," "independent testing for compliance," and "training."  12 C.F.R. § 208.63(b) & (c).

At all relevant times, JPMorgan had extensive programs in place that were designed to comply with these and other federal banking laws.  In accordance with those programs, JPMorgan assessed the risks posed by particular customers, consistent with regulatory guidance and industry practice, and monitored transactions in light of the risks presented by specific accounts.  To assess the Trustee's hindsight-driven claim that JPMorgan's programs violated federal law because they were "not effectively executed," Compl. ¶ 188, the Court will need to determine what the relevant statutes and regulations specifically require of banks like JPMorgan that have tens of millions of customers and accounts.  In particular, the Court will need to determine whether, as the Trustee asserts, the laws cited in the Complaint imposed a duty to "closely monitor" Madoff's transactions and conduct extensive, "on-site" investigations of Madoff's business.  In resolving those questions, the Court will have minimal guidance from

prior cases.  Section 352 of the Patriot Act has rarely been interpreted, and 12 C.F.R. § 208.63 has never even been mentioned in a reported decision of any court.

The Trustee's assertion that JPMorgan's "know your customer" program violated federal law will likewise require significant interpretation of federal regulations.  In support of that assertion, the Trustee alleges that banks must "fully understand the business in which their customers are engaged," Compl. ¶ 185, relying upon a regulation that directs banks to file suspicious activity reports in certain circumstances, including when a bank "detects any known or suspected Federal criminal violation."  12 C.F.R. § 208.62 (cited in Compl. ¶¶ 185-88). According to the Trustee, this federal banking regulation and others require financial institutions to "perform on-site visits to their clients, obtain and review financial statements to corroborate the sources of the clients' wealth, and to review media reports regarding their clients."  Compl. ¶¶ 185-86.  But the plain language of the cited regulation imposes no such requirements, nor have courts ever interpreted the regulation as the Trustee claims it should be interpreted.[4]

In sum, the Complaint in this case represents an attempt to impose investigatory duties on banks that, in JPMorgan's view, are not required by federal banking law and could only be imposed through "significant interpretation," if not revision, of the relevant statutes and regulations.  The Trustee's theories, moreover, have not been tested in the courts, both because of their novelty and because the Trustee is seeking to intrude upon an area that is dominated by

---

[4] The reason for the absence of case law in this area is readily explained.  As one of the sources cited by the Trustee (*see* Compl. ¶ 189) makes clear, federal agencies occupy the "critical role in implementing [Bank Secrecy Act] regulations, developing examination guidance, ensuring compliance with the BSA, and enforcing the BSA.  These agencies include the U.S. Treasury, FinCEN, and the federal banking agencies."  Federal Financial Institutions Examination Council, *Bank Secrecy Act/Anti-Money Laundering Examination Manual*, at 8, available at http://www.ffiec.gov/bsa_aml_infobase/documents/BSA_AML_Man_2010.pdf.  The statutes and regulations invoked by the Trustee do not create private rights of action against banks — and yet the Trustee is relying on them in attempting to support common law claims.

the federal agencies that regulate banking in the United States.  Accordingly, the Court that hears

this case will undoubtedly be required to engage in an extensive analysis of federal banking laws

on matters of first impression.  In such a case, withdrawal of the reference is mandatory.  *See,*

*e.g.*, *In re Dana Corp.*, 379 B.R. at 458 (withdrawal of the reference mandatory where

proceeding required the bankruptcy court "to engage in careful and significant consideration of

CERCLA, a statute 'outside its realm of expertise,' and to apply it to a complex body of facts"

(quoting *In re Horizon Air, Inc.*, 156 B.R. at 374 n.5)); *In re Adelphia Commc'ns Corp. Sec. &*

*Derivative Litig.*, 2006 WL 337667, at *2-3 (S.D.N.Y. Feb. 10, 2006) (withdrawal of the

reference mandatory to address claims brought by the Adelphia estate against Adelphia's

commercial bank lenders "under the Bank Holding Company Act"); *Gredd*, 2001 WL 840187, at

*3-4 (withdrawal of the reference mandatory where resolution of trustee's claims required

"substantial and material consideration" of "the pervasive federal regulatory scheme" relating to

margin requirements in brokerage accounts).

### C.       The Trustee's claim of "fraud on the regulator" requires significant interpretation of federal non-bankruptcy law.

The Trustee's novel, $5.4 billion claim of "fraud on the regulator" also raises

issues of federal law that are not routine.  The Trustee's claim is that JPMorgan's failure to

detect and report Madoff's fraudulent conduct to "United States government authorities"

constituted "fraud on the regulator" — in particular, the Securities and Exchange Commission,

the Office of the Comptroller of the Currency in the Department of the Treasury, and the Federal

Reserve.  Compl. ¶ 474.  The adjudication of this claim will require the Court to determine

whether such a cause of action exists under federal common law and, if the Trustee tries to

invoke state common law, whether federal law preempts the Trustee's claim.

To the extent that there is any cause of action for "fraud" on the SEC, the OCC, or the Federal Reserve, it would have to be a creature of federal common law. As the United States Supreme Court has held, "the relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law." *Buckman Co.* v. *Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001); *Boyle* v. *United Techs. Corp.*, 487 U.S. 500, 504 (1988) ("[W]e have held that a few areas, involving 'uniquely federal interests,' are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law of a content prescribed (absent explicit statutory directive) by the courts – so-called 'federal common law.'" (citations omitted)).

The statutes and regulations that govern the SEC, the OCC, and the Federal Reserve all set forth reporting requirements for regulated entities. *E.g.*, 15 U.S.C. § 78o (SEC: "Registration and regulation of brokers and dealers"); 12 U.S.C. § 161 (OCC: "Reports to the Comptroller of the Currency"); 12 C.F.R. § 21.11 (OCC: "Suspicious Activity Report"); 12 C.F.R. § 225.4(f) (Federal Reserve: "Suspicious activity report"); 12 U.S.C. § 1844(a) (Federal Reserve: "[E]ach bank holding company shall register with the Board on forms prescribed by the Board. . . ."). The same statutes and regulations — and others — also expressly prohibit false statements to the agencies. *E.g.*, 18 U.S.C. § 1001(a) (addressing false statements made "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States"); 18 U.S.C. § 1005 (addressing "false entr[ies]" in reports made to, *inter alia*, the OCC, Federal Reserve, or FDIC); 15 U.S.C. § 78ff(a); 12 U.S.C. § 164. In addition, the relevant statutes grant examination and enforcement authority to the agencies. *E.g.*, 15 U.S.C.

§ 78u-2 (SEC); 12 U.S.C. §§ 93, 164(d), 481 (OCC); 12 U.S.C. § 1818 (OCC, Federal Reserve, FDIC); 12 U.S.C. §§ 325, 483, 1847 (Federal Reserve).

None of these laws expressly creates a private right of action against banks for fraud on their regulators.  While JPMorgan believes that there is no claim under federal common law for "fraud on the regulator," the Court will have to consider, in evaluating the Complaint, whether to create such a federal claim as a matter of first impression.  And if the Court were to determine that such a cause of action exists, it would then need to decide other threshold issues such as what the elements of the federal claim are and who has standing to bring it.  These questions of federal non-bankruptcy law fall well outside the purview of the bankruptcy court.

If the Trustee argues that the "fraud on the regulator" claim is really based on *state* common law, the Court would be faced with a related federal issue:  namely, whether the claim is preempted.  In *Buckman*, the United States Supreme Court held that federal statutes preempted an analogous claim for fraud on the Food and Drug Administration.  531 U.S. at 347.  Based on a careful analysis of the Federal Food, Drug, and Cosmetic Act, as amended, the Court found that the statute "amply empower[ed]" the agency "to punish and deter fraud against it," leaving no room for separate private actions.  *Id*. at 348.  In holding that the state law fraud-on-the-FDA action was preempted, the Court recognized that "[p]olicing fraud against federal agencies is hardly 'a field which the States have traditionally occupied.'"  *Id*. (citations omitted).

JPMorgan believes that *Buckman* is controlling and that any state law claims for fraud on federal regulators are preempted.  The need to resolve this federal preemption issue also mandates withdrawal of the reference.  *See In re Old Carco LLC*, 2010 WL 5158621, at *5 (S.D.N.Y. Dec. 6, 2010) (holding that withdrawal of the reference was mandatory where the movant raised "substantial and material" issues concerning federal preemption).

-16-

**D.    The Trustee's claims raise substantial issues of standing and preemption under federal securities law.**

The Trustee is trying to bring what amounts to an enormous damages class action on behalf of a class of Madoff's customers.  As the successor to Madoff's brokerage firm, the Trustee could never bring a $6 billion lawsuit against JPMorgan or anyone else; BMIS itself did not suffer any loss remotely approaching that amount.  Rather, as the Trustee expressly alleges, it was the *customers* of BMIS who suffered the multi-billion-dollar losses that the Trustee is seeking to recover in this action.  *See* Compl. ¶ 431; *see also Newbro* v. *Freed*, 409 F. Supp. 2d 386, 395 (S.D.N.Y. 2006) (funds deposited by customers never become "an asset of the brokerage firm; rather, at all times, they belong to the customer only").

Moreover, even if the Trustee could allege that BMIS itself suffered some loss separate from its customers' losses, the Trustee — as the successor to BMIS — would still be barred from bringing a suit to recover such loss.  Under settled law, a "claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation."  *Shearson Lehman Hutton, Inc.* v. *Wagoner*, 944 F.2d 114, 120 (2d Cir. 1991).  This rule is grounded in New York's *in pari delicto* doctrine, which "mandates that the courts will not intercede to resolve a dispute between two wrongdoers."  *Kirschner* v. *KPMG LLP*, 15 N.Y.3d 446, 464 (2010).

Faced with these obstacles, the Trustee has sought to step outside the shoes of BMIS and sue on behalf of the *customers* themselves.  The Trustee asserts that he has standing to do so as a bailee of "customer property" and as an assignee or subrogee of customer claims.  *See* Compl. ¶¶ 17(f), (g), (h) & (i).  The Trustee's attempt to sue in these capacities raises substantial questions under federal securities law, namely:  (1) whether SIPA confers standing on a trustee to sue on behalf of customers; and (2) whether such an action is barred by SLUSA.

1.        **Standing under SIPA**

An ordinary bankruptcy trustee "has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Wagoner*, 944 F.2d at 118 (citing *Caplin* v. *Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 434 (1972)).  The law, however, is unsettled as to whether a SIPA trustee has broader powers and can assert claims on behalf of a broker's customers.  In *Redington* v. *Touche Ross & Co.*, 592 F.2d 617 (2d Cir. 1978), a divided Second Circuit held that Section 17(a) of the Securities Exchange Act of 1934 creates an implied private right of action in favor of a broker's customers against the broker's accountant and that SIPC has standing to bring those claims as a bailee, assignee, or subrogee.  The Supreme Court, however, reversed the Second Circuit's holding that Section 17(a) creates a private right of action, and thus did not reach the SIPA standing issue.  *Touche Ross & Co.* v. *Redington*, 442 U.S. 560 (1979).  After the Supreme Court's reversal on those jurisdictional grounds, the Second Circuit concluded on remand that there were no "alternative bases for jurisdiction" over the SIPA trustee's claims.  *Redington* v. *Touche Ross & Co.*, 612 F.2d 68, 70 (2d Cir. 1979).

Since *Redington*, the district courts in this Circuit have split on the question of whether a SIPA trustee has standing to sue on behalf of customers.  In *Mishkin* v. *Peat, Marwick, Mitchell & Co.*, Judge Pollack, recognizing that the Second Circuit's first *Redington* opinion was not binding, disagreed with the majority's ruling in that case and held that a SIPA trustee "is not granted the power to bring fraud claims against third parties on behalf of customers."  744 F. Supp. 531, 558 (S.D.N.Y. 1990).  Subsequently, in *Holmes* v. *SIPC*, the United States Supreme Court cited *Mishkin* and observed that "SIPC's theory of subrogation is fraught with unanswered questions."  503 U.S. 258, 270-71 (1992).

-18-

More recently, in *SIPC* v. *BDO Seidman, LLP*, Judge Preska agreed that Judge Pollack's decision in *Mishkin* is "more faithful to the letter and purpose of" SIPA than *Redington*. 49 F. Supp. 2d 644, 653 (S.D.N.Y. 1999). But unlike Judge Pollack, Judge Preska believed that she was bound by *Redington*, and then proceeded to dismiss on other grounds. *Id*. at 653-58. The Second Circuit later affirmed in relevant part on those other grounds, and thus declined to decide whether *Redington* could or should be revisited. *SIPC* v. *BDO Seidman, LLP*, 222 F.3d 63, 69 (2d Cir. 2000).

JPMorgan will argue that SIPA does not confer standing on the Trustee to bring damages claims on behalf of BMIS's customers. As Judge Pollack explained in *Mishkin*, a SIPA trustee has no powers that are not conferred by statute, and the statute does not confer the power to bring claims sounding in fraud against third parties on behalf of customers. Moreover, any interpretation of SIPA that would empower the Trustee to bring such claims would raise the very same issues that led the Supreme Court to conclude that ordinary bankruptcy trustees do not have standing to sue on behalf of creditors: the Trustee's lawsuit could well be "inconsistent with any independent actions" brought by BMIS investors, and "a question would arise as to who was bound by any settlement" or judgment. *Caplin*, 406 U.S. at 431-32.

Under section 157(d), these complex interpretative issues under SIPA must be decided by an Article III court.[5]

---

[5] SIPA is not part of the Bankruptcy Code. Rather, SIPA is "an amendment to" and "a section of" the Securities Exchange Act of 1934. 15 U.S.C. § 78bbb. While bankruptcy courts apply SIPA, to the extent the statute requires significant interpretation, the mandatory withdrawal statute should apply just as it does to other federal laws outside of "title 11." 11 U.S.C. § 157(d).

### 2.      Preemption under SLUSA

Even assuming the Trustee has standing under SIPA to sue "on behalf of" or "in the shoes of" customers, Compl. ¶ 17(f), (h), the Court will still need to determine whether SLUSA preempts this suit.  SLUSA requires dismissal of any action:  (1) that is a "covered class action" (as defined in the statute); (2) that is based on state law; and (3) in which the plaintiff alleges "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security" or alleges that "the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b).

There is no question that the Trustee's action is based on state law.  Nor is there any question that Madoff's securities fraud, which JPMorgan has been accused of aiding and abetting, involved the purchase and sale of "covered securities" — *i.e.*, the S&P 100 stocks and options that Madoff claimed to buy and sell.  *See* Compl. ¶¶ 34-35.  For purposes of SLUSA, a security is a "covered security" if it is listed or authorized for listing on the New York Stock Exchange or another national exchange.  15 U.S.C. § 77r(b).  And Madoff's false statements that he was purchasing and selling covered securities, when in fact he was making no such purchases or sales, Compl. ¶ 37, fall squarely within the ambit of the federal securities laws, including SLUSA.  *See, e.g.*, *Barron* v. *Igolnikov*, 2010 WL 882890, at *4-5 (S.D.N.Y. Mar. 10, 2010) (holding that Madoff's fraud satisfied SLUSA:  "it is not necessary that the purchase or sale actually transpired; claims based on the alleged failure to buy or sell covered securities fall squarely within SLUSA's ambit"); *see also SEC* v. *Zandford*, 535 U.S. 813, 819-20 (2002) (finding "reasonable" the SEC's long-standing position that "a broker who accepts payment for securities that he never intends to deliver . . . violates § 10(b) and Rule 10b-5"); *Instituto de Prevision Militar* v. *Merrill Lynch*, 546 F.3d 1340, 1347-51 (11th Cir. 2008) (holding that

SLUSA precluded a fraud action involving an investment manager that stole investors' money rather than purchasing securities).

The Trustee, however, will likely contend that this action is not a "covered class action." SLUSA defines a "covered class action" to include not only class actions styled as such, but also lawsuits in which common issues predominate and (1) "damages are sought on behalf of more than 50 persons" *or* (2) the plaintiffs sue "on a representative basis on behalf of themselves and other unnamed parties similarly situated." 15 U.S.C. § 77p(f)(2)(A). The Supreme Court has held that SLUSA is to be given a "broad construction." *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U.S. 71, 86 (2006).

As JPMorgan will demonstrate, this action is a "covered class action" under SLUSA. Indeed, given that the losses resulting from Madoff's fraud were suffered by customers, and not by BMIS, any possible claim for billions of dollars in damages could only be brought in a representative capacity on behalf of Madoff's thousands of customers. Consistent with JPMorgan's position, SLUSA has been interpreted to bar actions brought by trusts or trustees on behalf of a company's creditors or shareholders. *See, e.g.*, *RGH Liquidating Trust* v. *Deloitte & Touche*, 71 A.D.3d 198, 206-10 (1st Dep't 2009) (dismissal under SLUSA of claims brought by liquidating trust that were assigned to the trust by bondholders).[6]

The Trustee may also raise other issues that require interpretation of SLUSA. For example, the Trustee may try to rely on the provision of SLUSA stating that a "corporation . . ., or other entity, shall be treated as one person or prospective class member, but only if the entity is not established for the purpose of participating in the action." 15 U.S.C. § 78bb(f)(5)(D).

---

[6]  In contrast, SLUSA has been interpreted not to "reach claims asserted by a bankruptcy trustee *on behalf of a bankruptcy estate*." *LaSala* v. *Bordier et Cie*, 519 F.3d 121, 135 (3d Cir. 2008) (emphasis added).

JPMorgan believes that this provision has no relevance:  even if the Trustee is an "entity," and even if the pursuit of claims is not a purpose of the "entity," under the terms of the statute, the Trustee is purporting to act "on behalf" of more than 50 other persons by purporting to assert the claims of thousands of customers whom Madoff defrauded.

The Trustee could likewise argue that Madoff's misrepresentations and omissions in connection with the purchase or sale of securities are not sufficient for purposes of SLUSA preemption, because Madoff himself is not the defendant in the action.  At least one court has relied on Madoff's misrepresentations in holding that SLUSA preempted a Madoff-related class action against parties other than Madoff.  *Barron*, 2010 WL 882890, at *5.  But another court has disagreed with *Barron* on this issue.  *Levinson* v. *PSSC Servs. Inc.*, 2010 WL 5477250, at *8 (D. Conn. Dec. 29, 2010).

Whatever the Trustee argues, there is no doubt that this case will require significant interpretation of SLUSA in a highly unusual, if not novel, context.  Since the Court will need to address complex issues of federal securities law, including SLUSA, withdrawal of the reference is mandatory.  *See, e.g.*, *SEC* v. *Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group)*, 960 F.2d 285, 288 n.1 (2d Cir. 1992) (withdrawal of the reference mandatory where the claims at issue "necessitated an examination of federal securities laws"); *Gredd*, 2001 WL 840187, at *4 (withdrawal of the reference mandatory where the court had "to interpret the various provisions of the federal securities laws"); *Mishkin*, 220 B.R. at 796-97 (withdrawal of the reference mandatory where the SIPA trustee's claims "generated important matters of first impression" relating to the Private Securities Litigation Reform Act).

II.    **THIS ACTION IS SUBJECT TO WITHDRAWAL**
       **OF THE REFERENCE FOR CAUSE.**

The reference to the bankruptcy court should also be withdrawn "for cause" under 28 U.S.C. § 157(d).  The Trustee's common law claims, with their purported foundation in state law and federal banking law, fall well outside the bankruptcy court's core jurisdiction and special expertise.  In addition, JPMorgan has a right to a jury trial on nearly all of the Trustee's claims, which could not be conducted in the bankruptcy court.  These considerations, as well as the pendency in the district court of a related lawsuit against JPMorgan, provide clear "cause" to withdraw the reference.

A.    **Constitutional considerations support withdrawal**
      **of the reference in non-core proceedings.**

The underlying purpose of the withdrawal of the reference statute originates with the Supreme Court's decision in *Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50 (1982).  In that case, the Supreme Court struck down the Bankruptcy Reform Act of 1978's broad grant of jurisdiction to the bankruptcy courts, holding that the "adjudication of state-created private rights, such as the right to recover contract damages," must be determined by an Article III court.  *Id.* at 71.

To address the constitutional restraints on the bankruptcy court's judicial power, Congress significantly overhauled the bankruptcy jurisdictional scheme.  Congress amended the Judicial Code to grant original jurisdiction to the *district courts*, as opposed to the bankruptcy courts, over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  At the same time, however, Congress authorized the district courts to "refer" the proceedings covered by section 1334(b) to the bankruptcy courts.  *See* 28 U.S.C. § 157(a).

In further recognition of the bankruptcy court's limited province, Congress went on to distinguish between "core" bankruptcy matters, which do not exist independently of a bankruptcy case, and "non-core" matters, which have independent existence under non-bankruptcy law.  While "[b]ankruptcy judges may hear and determine" *core* proceedings, subject to ordinary appellate review, 28 U.S.C. § 157(b)(1), when "a proceeding is *not* a core proceeding," only a district judge may enter a final judgment, and only after reviewing any findings or conclusions from the bankruptcy court on a *de novo* basis.  28 U.S.C. § 157(c)(1).

Against this backdrop, the Second Circuit has held that, in determining whether to withdraw the reference "for cause," a district court "should first evaluate whether the claim *is core or non-core*, since it is upon this issue that questions of efficiency and uniformity will turn." *Orion Pictures Corp.* v. *Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993) (emphasis added); *see also, e.g.*, *Solutia Inc.* v. *FMC Corp.*, 2004 WL 1661115, at *3 (S.D.N.Y. July 27, 2004) ("By litigating this non-core matter in the district court, judicial resources will be conserved instead of having two courts administer two rounds of briefing and argument on the same issues.").  Once the district court makes the core/non-core determination, it considers other factors, such as the "parties' jury trial rights," the "efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors."  *Orion*, 4 F.3d at 1101.

**B.      The Trustee's common law claims are non-core.**

The Trustee's common law claims against JPMorgan are classic non-core claims. Moreover, as noted above, the $6 billion in damages that the Trustee has sought in connection with those claims dwarfs the amount sought by the Trustee based on his fraudulent transfer and

preference theories.  Accordingly, the Trustee's non-core claims dominate this proceeding, and there is clear "cause" to  withdraw the reference.

Section 157(b) of the Judicial Code contains a non-exhaustive list of "core proceedings."  28 U.S.C. § 157(b)(2).  These core proceedings include "all civil proceedings arising under title 11 or arising in a case under title 11," but *not* proceedings that are merely "related to" a bankruptcy case.  *Joremi Enters., Inc.* v. *Hershkowitz (In re New 118th LLC)*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008); *accord Penthouse Media Grp.* v. *Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 72 (Bankr. S.D.N.Y. 2005).

Proceedings "arise under" the Bankruptcy Code when they "clearly invoke substantive rights created by federal bankruptcy law."  *MBNA Am. Bank, N.A.* v. *Hill*, 436 F.3d 104, 108-09 (2d Cir. 2006).  Proceedings "arise in" a bankruptcy case when they "are not based on any right expressly created by" the Bankruptcy Code, "but nevertheless, would have no existence outside of the bankruptcy."  *Baker* v. *Simpson*, 613 F.3d 346, 351 (2d Cir. 2010).  By contrast, "[a]n action that does not depend upon the bankruptcy laws for its existence and which could proceed in a court that lacks federal bankruptcy jurisdiction is," at most, "related" to a bankruptcy case and "non-core."  *United Orient Bank* v. *Green*, 200 B.R. 296, 298 (S.D.N.Y. 1996).

The non-bankruptcy claims being asserted by the Trustee — namely, the claims for aiding and abetting, unjust enrichment, conversion, and fraud on the regulator — are manifestly *non*-core claims.  Those claims do not "arise under" the Bankruptcy Code because they do not "invoke substantive rights created by federal bankruptcy law."  *MBNA Am. Bank, N.A.*, 436 F.3d at 108-09.  Likewise, they do not "arise in" a bankruptcy case, because they could all be asserted outside of bankruptcy.  *Baker*, 613 F.3d at 351.  Numerous courts, therefore, have

held that the kinds of claims brought by the Trustee, when asserted against defendants that have not filed proofs of claim against the plaintiff estate, are not core.  *See, e.g.*, *131 Liquidating Corp.* v. *LaSalle Capital Group, Inc. (In re 131 Liquidating Corp.)*, 222 B.R. 209, 211-12 (S.D.N.Y. 1998) (fraud); *Hassett* v. *Bancohio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 758 (S.D.N.Y. 1994) (conversion); *Togut* v. *RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*, 425 B.R. 78, 95 (Bankr. S.D.N.Y. 2010) (aiding and abetting breach of fiduciary duty); *id.* at 98 (unjust enrichment).

Not only are the Trustee's damages claims not core, but as discussed above, they raise issues of federal non-bankruptcy law that are of great importance to banks.  The Bank Secrecy Act, which the Trustee alleges JPMorgan has violated, vests the Secretary of the Treasury with the authority to bring civil actions for violations of the Act and related regulations. *See* 31 U.S.C. §§ 5320, 5321.  In attempting to use state law aiding and abetting claims as a vehicle to invoke the Bank Secrecy Act and related regulations, the Trustee is threatening not only to usurp the role of the federal agencies that regulate banking, but also to subject U.S. banks to new risks of liability in connection with fraud by their customers.  In light of the novelty and significance of the Trustee's claims, withdrawal of the reference is squarely within the exercise of this Court's sound discretion.  *See Pension Benefit Guar. Corp.* v. *LTV Corp. (In re Chateaugay)*, 86 B.R. 33, 39 (S.D.N.Y. 1987) (discretionary withdrawal warranted due to "the presence of significant issues of first impression, considerations of judicial economy," and "issues of national importance in pension benefit insurance and bankruptcy law").

While the Trustee has also asserted "core" preference and fraudulent transfer claims in this action, there is every reason to withdraw the reference as to those claims as well. The Trustee's avoidance claims arise out of the same facts as the common law claims and, in the

case of the Trustee's unjust enrichment claim, seek to recover the same amounts.  In such circumstances, courts have not hesitated to withdraw core claims from the bankruptcy court along with non-core claims.  *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 337667, at *4-5 (withdrawing core bankruptcy claims along with "related" and "overlapping" non-core claims); *1800Postcards, Inc.* v. *Morel*, 153 F. Supp. 2d 359, 367 (S.D.N.Y. 2001) (same); *Mishkin*, 220 B.R. at 800 (same).

### C.   Other relevant factors also strongly support withdrawal of the reference.

The other factors outlined by the Second Circuit in *Orion* provide additional support for withdrawal of the reference.  In light of JPMorgan's right to a jury trial, as well as the pendency in the District Court of an overlapping proceeding, there can be no doubt that withdrawal of the reference would promote the goals of "efficiency and uniformity," which are the critical considerations.  *Northwest Airlines Corp.* v. *City of Los Angeles (In re Nw. Airlines Corp.)*, 384 B.R. 51, 59 (S.D.N.Y. 2008); *Mishkin*, 220 B.R. at 800 ("In the final analysis, the critical question is efficiency and uniformity.").

### 1.   JPMorgan's right to a jury trial supports withdrawal of the reference.

The defendant's right to a jury trial is highly relevant to withdrawal of the reference because, where a jury right exists, "a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference."  *Orion*, 4 F.3d at 1101; *see also M. Fabrikant & Sons, Inc.* v. *Long's Jeweler's Ltd.*, 2008 WL 2596322, at *3 (S.D.N.Y. June 26, 2008) ("absent additional considerations, withdrawing the reference is efficient" where a "a party is entitled to a jury trial").  The United States Constitution "prohibits bankruptcy courts from holding jury trials in non-core matters."  *Orion*, 4 F.3d at 1101.

Moreover, in a core proceeding, a bankruptcy court may conduct a jury trial only if it is "specially designated" to do so by the district court *and* all parties consent.  28 U.S.C. § 157(e).

JPMorgan has a right to demand a jury with respect to the vast majority of the Trustee's claims.  Under settled law, a party that has not submitted a proof of claim has a right to a jury trial in actions to recover alleged preferences or fraudulent transfers, despite Congress's designation of such claims as "core proceedings."  *Granfinanciera, S.A.* v. *Nordberg*, 492 U.S. 33, 36, 58 (1989).  JPMorgan, therefore, has a right to a jury trial on the Trustee's preference and fraudulent transfer claims.  JPMorgan is also entitled to a jury trial on the Trustee's aiding and abetting fraud claim, *see Durso Supermarkets, Inc.* v. *D'urso (In re Durso Supermarkets, Inc.*), 170 B.R. 211, 214 (S.D.N.Y. 1994) (withdrawing reference in part because it could be "assumed" that defendant would be "entitled to a jury trial" on fraud claims), as well as on the Trustee's conversion claim, *see Starr Int'l Co., Inc.* v. *Am. Int'l Group, Inc.*, 623 F. Supp. 2d 497, 501 (S.D.N.Y. 2009) ("[I]t is settled law that conversion is unmistakably [an action] at law triable to a jury." (internal quotation marks omitted)).

Numerous cases from this District hold that "[t]he fact that an adversary proceeding concerns non-core matters for which there is the right to a jury trial is *sufficient cause to withdraw the reference*."  *Schachter* v. *Japan Indep. Commc'ns Corp.*, 1995 WL 675486, at *1 (S.D.N.Y. Nov. 14, 1995) (emphasis added) (granting motion to withdraw the reference of an action alleging RICO violations, fraud, breach of fiduciary duty and breach of contract); *Kentile Floors, Inc.* v. *Congoleum Corp. (In re Kentile Floors, Inc.*), 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995) (granting motion to withdraw the reference of an action alleging tortious interference and unfair competition); *see also M. Fabrikant & Sons, Inc.*, 2008 WL 2596322, at *3 (relying on defendant's jury right in granting motion to withdraw the reference of an action

-28-

seeking payment for delivery of goods sold).  JPMorgan's right to a jury trial, accordingly,

provides additional and sufficient cause for withdrawal of the reference.

> ### 2.      The pendency of related litigation in this District supports withdrawal of the reference.

The overlap between the Trustee's lawsuit against JPMorgan and an action

already pending in this Court provides yet more support for withdrawal of the reference.  Where

a proceeding in a bankruptcy court involves common issues of law and fact with a case pending

in district court, "the overlapping of facts, transactions and issues in the two cases . . . is good

cause for withdrawal of the reference and consolidation with the district court proceeding."

*Wedtech Corp.* v. *London (In re Wedtech Corp.)*, 81 B.R. 237, 239 (S.D.N.Y. 1987); *see also In

re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 337667, at *4-5 (granting

motion to withdraw the reference where lawsuit in bankruptcy court involved many of the same

defendants and issues as class action pending in the district court).

Since January 2009, Judge Berman has presided over putative class actions

brought by investors in several Madoff "feeder funds."  *In re Herald, Primeo, & Thema Funds

Secs. Litig.*, No. 09 Civ. 0289 (RMB) (S.D.N.Y.).  The investor-plaintiffs seek relief from an

array of defendants, including the feeder funds themselves and numerous service providers to the

feeder funds.  JPMorgan had no relationship with the relevant feeder funds; nonetheless, an

investor in Thema International Fund plc has sought to recover from JPMorgan, on behalf of

other investors, based on theories of unjust enrichment and aiding and abetting Madoff's breach

of fiduciary duty.  *See* Kleinhaus Decl. Ex. 2 (Complaint against JPMorgan in *In re Herald,

Primeo, & Thema Funds Secs. Litig*. ¶¶ 585-93 ("Thema Compl.")).

The complaint in the class action makes "many allegations of fact" that are "quite similar" to those in the Trustee's lawsuit. *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 337667, at *4. Among other things, both suits allege that:

- JPMorgan knew or should have known about Madoff's fraud based on allegedly suspicious activity in Madoff's 703 Account, *compare* Trustee Compl. ¶¶172-250 *with* Thema Compl. ¶¶ 59, 279-83;

- JPMorgan's internal control systems were inadequate because they did not detect Madoff's fraud, *compare* Trustee Compl. ¶¶ 234-41 *with* Thema Compl. ¶¶ 284-89;

- JPMorgan failed to comply with its obligations under federal banking laws, including the Bank Secrecy Act, the Patriot Act and related federal regulations, *compare* Trustee Compl. ¶¶ 182-93 *with* Thema Compl. ¶ 59, 291-97; and

- JPMorgan's alleged knowledge or suspicions of fraud led it to withdraw its investments in certain feeder funds, *compare* Trustee Compl. ¶¶ 143-53 *with* Thema Compl. ¶ 309.

On the basis of these and other common allegations, both actions seek to recover from JPMorgan on theories of unjust enrichment, *compare* Trustee Compl. ¶¶ 466-72 *with* Thema Compl. ¶¶ 585-89, and aiding and abetting breach of fiduciary duty, *compare* Trustee Compl. ¶¶ 444-58 *with* Thema Compl. ¶¶ 590-93.

Given the striking overlap between the Trustee's action and the action pending in the district court, withdrawal of the reference would plainly be justified. Withdrawal of the reference would minimize the risk of inconsistent results on factual and legal issues presented in both actions. It would also permit discovery from the same defendant on similar issues to be coordinated in one court. For that reason as well, the reference should be withdrawn.

**CONCLUSION**

For all the reasons set forth above, the Trustee's lawsuit against JPMorgan presents a textbook case for withdrawal of the reference, both on mandatory and on discretionary grounds.  The multi-billion dollar claims that the Trustee is asserting on behalf of Madoff's customers have nothing to do with bankruptcy law, and they raise an array of complex issues under federal banking law, federal securities law, and the law of New York.  More broadly, the Trustee's claims raise fundamental questions, of great importance to the banking industry as a whole, as to whether banks such as JPMorgan have liability to private plaintiffs for fraud conducted by their customers.  All of these issues fall outside the province of the bankruptcy court, and they should be considered by an Article III court.

JPMorgan, accordingly, respectfully moves this Court for an order withdrawing the reference of the Trustee's adversary proceeding under 28 U.S.C. § 157(d).

Dated:　　　New York, New York
　　　　　　February 8, 2011

　　　　　　　　　　　　　　　　　Respectfully submitted,

*Of counsel:*　　　　　　　　　　WACHTELL, LIPTON, ROSEN & KATZ

Amy R. Wolf
Douglas K. Mayer　　　　　　　By: /s/ John F. Savarese
Stephen R. DiPrima　　　　　　　　　John F. Savarese
Emil A. Kleinhaus
Meredith L. Turner　　　　　　　51 West 52nd Street
　　　　　　　　　　　　　　　　New York, NY  10019
　　　　　　　　　　　　　　　　Telephone:  (212) 403-1000
　　　　　　　　　　　　　　　　Facsimile:  (212) 403-2000

　　　　　　　　　　　　　　　　*Attorneys for Defendants JPMorgan Chase & Co.,*
　　　　　　　　　　　　　　　　*JPMorgan Chase Bank, N.A., J.P. Morgan Securities*
　　　　　　　　　　　　　　　　*LLC and J.P. Morgan Securities Ltd.*