**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------

SECURITIES INVESTOR PROTECTION
CORPORATION,

               Plaintiff-Applicant,

        v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

               Defendant.

------------------------------------------------------

In re:

BERNARD L. MADOFF,

               Debtor.

------------------------------------------------------

IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

               Plaintiff,

        v.

JPMORGAN CHASE & CO., JPMORGAN
CHASE BANK, N.A., J.P. MORGAN
SECURITIES LLC, and J.P. MORGAN
SECURITIES LTD.,

               Defendants.

------------------------------------------------------

SIPA LIQUIDATION

No. 08-01789 (BRL)

Substantively Consolidated

Adv. Pro. No. 10-4932 (BRL)

Case No. 1:11-cv-00913 (CM)


**REPLY MEMORANDUM IN FURTHER SUPPORT OF JPMORGAN'S**
**MOTION TO WITHDRAW THE REFERENCE**


WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
(212) 403-1000

*Attorneys for Defendants JPMorgan Chase & Co.,*
*JPMorgan Chase Bank, N.A., J.P. Morgan Securities*
*LLC and J.P. Morgan Securities Ltd.*

Dated:  April 18, 2011

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT .....................................................................................................5

I.      THIS ACTION IS SUBJECT TO MANDATORY WITHDRAWAL
        OF THE REFERENCE.................................................................................5

        A.      JPMorgan's motion is not premature .....................................................5

        B.      SIPC and the Trustee misstate the standard for mandatory withdrawal ...............5

        C.      The Trustee's claims require significant interpretation of
                federal banking statutes and regulations...................................................7

        D.      The Trustee's claim of "fraud on the regulator" requires significant
                interpretation of federal non-bankruptcy law .........................................10

        E.      The Trustee's claims require significant interpretation of SIPA ...........11

                1.      SIPA is not part of title 11 .......................................................12

                2.      The Trustee's claims present significant unresolved
                        issues under SIPA ...................................................................13

        F.      The Trustee's claims require significant interpretation of SLUSA ......18

II.     THIS ACTION IS SUBJECT TO WITHDRAWAL OF THE
        REFERENCE FOR CAUSE.......................................................................21

        A.      Non-core claims dominate this proceeding.............................................21

        B.      Considerations of efficiency and judicial economy
                support withdrawal of the reference .......................................................22

CONCLUSION...................................................................................................24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Atteberry* v. *Nigerian Nat'l Petroleum Corp.* (*In re Donald G. Atteberry*),
    164 B.R. 668 (D. Kan. 1994).............................................................................. 8

*Bankruptcy Services, Inc.* v. *Ernst & Young* (*In re CBI Holding Co.*),
    529 F.3d 432 (2d Cir. 2008) ..................................................................17-18

*Bear, Stearns Sec. Corp.* v. *Gredd*,
    2001 WL 840187 (S.D.N.Y. July 25, 2001)..........................................5, 7 n.3, 8, 10

*Buckman Co.* v. *Plaintiffs' Legal Committee*,
    531 U.S. 341 (2001)............................................................................... 10, 11

*Cal.* v. *Enron Corp.* (*In re Enron Corp.*),
    2005 WL 1185804 (S.D.N.Y. May 18, 2005) ............................................ 11 n.5

*Christian Bros. High Sch. Endowment* v. *Bayou No Leverage Fund*
    (*In re Bayou Grp., LLC*), 439 B.R. 284 (S.D.N.Y. 2010) ............................ 9

*City of New York* v. *Exxon Corp.*,
    932 F.2d 1020 (2d Cir. 1991) .................................................................. 6

*Enron Corp.* v. *J.P. Morgan Sec., Inc.* (*In re Enron Corp.*),
    388 B.R. 131 (S.D.N.Y. 2008)................................................................. 6, 9

*Enron Power Mktg., Inc.* v. *Cal. Power Exch. Corp.* (*In re Enron Corp.*),
    2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004)........................................... 7 n.3

*Enron Power Mktg., Inc.* v. *City of Santa Clara* (*In re Enron Power Mktg.*),
    2003 WL 68036 (S.D.N.Y. Jan. 8, 2003) .............................................. 6 n.2, 24

*Fornshell* v. *FirstMerit Bank, N.A.*,
    2010 WL 4835771 (N.D. Ohio Nov. 23, 2010)........................................... 7

*Giddens* v. *D.H. Blair & Co.* (*In re A.R. Baron & Co.*),
    280 B.R. 794 (Bankr. S.D.N.Y. 2002)........................................................ 17

*Holmes* v. *SIPC*,
    503 U.S. 258 (1992)............................................................................... 15, 17

*Homeland Stores, Inc.* v. *Burris* (*In re Homeland Stores, Inc.*),
    204 B.R. 427 (D. Del. 1997)................................................................... 5, 11

*In re Adelphi Inst., Inc.*,
    112 B.R. 534 (S.D.N.Y. 1990).................................................................. 6 n.2

*In re Boston Generating, LLC*,
    2010 WL 4288171 (S.D.N.Y. Nov. 1, 2010).............................................. 6 n.2

*In re CIS Corp.*,
    172 B.R. 748 (S.D.N.Y. 1994).................................................................. 6 n.2

*In re Enron Power Marketing, Inc.*,
   2003 WL 68036 (S.D.N.Y. Jan. 8, 2003) ........................................................ 6 n.2

*In re Fairfield Sentry Ltd.*,
   2010 WL 4910119 (S.D.N.Y. Nov. 22, 2010)........................................................ 24

*In re Keene Corp.*,
   182 B.R. 379 (S.D.N.Y. 1995)........................................................................ 6 n.2

*In re Texaco Inc.*,
   84 B.R. 911 (Bankr. S.D.N.Y. 1988)................................................................ 9 n.4

*In re VWE Group*, *Inc.*,
   359 B.R. 441 (S.D.N.Y. 2007) .................................................................... 22, 23

*In re White Motor Corp.*,
   42 B.R. 693 (N.D. Ohio 1984) ...................................................................... 9 n.4

*Jagow* v. *Top Hill, LLC (In re Townhomes at Hill Top, LLC)*,
   2008 WL 2078109 (D. Colo. May 14, 2008)..................................................... 11 n.5

*Kirschner* v. *KPMG LLP*,
   15 N.Y.3d 446 (2010) .................................................................................... 13

*LaSala* v. *Bordier et Cie*,
   519 F.3d 121 (3d Cir. 2008) ..................................................................... 19, 20

*LaSala* v. *UBS, AG*,
   510 F. Supp. 2d 213 (S.D.N.Y. 2007) .............................................................. 20

*Lee* v. *Marsh & McLennan Cos.*,
   2007 WL 704033 (S.D.N.Y. Mar. 7, 2007) .......................................................... 20

*Lubin* v. *Cincinnati Ins.*,
   411 B.R. 801 (N.D. Ga. 2009) ........................................................................ 8

*Martin* v. *Briggs*,
   235 A.D.2d 192 (1st Dep't 1997) .................................................................... 16

*Mirant Corp.* v. *Southern Co.*,
   337 B.R. 107 (N.D. Tex. 2006) ...................................................................... 22

*Mishkin* v. *Ageloff*,
   220 B.R. 784 (S.D.N.Y. 1998)........................................................................... 6

*Mishkin* v. *Peat, Marwick, Mitchell & Co.*,
   744 F. Supp. 531 (S.D.N.Y. 1990) ............................................................... 15, 17

*Newdow* v. *Rio Linda Union Sch. Dist.*,
   597 F.3d 1007 (9th Cir. 2010) ...................................................................... 15

*Old Carco LLC* v. *Kroger (In re Old Carco LLC)*,
   2010 U.S. Dist. LEXIS 33238 (S.D.N.Y. Mar. 29, 2010) ........................................ 11

*Pension Benefit Guar. Corp.* v. *Cont'l Airlines, Inc.* (*In re Cont'l Airlines*),
   138 B.R. 442 (D. Del. 1992)......................................................................... 9 n.4

*Pension Benefit Guar. Corp.* v. *LTV Corp. (In re Chateaugay Corp.)*,
   86 B.R. 33 (S.D.N.Y. 1987) ........................................................................ 22

*Pivar* v. *Graduate Sch. of Figurative Art*,
   290 A.D.2d 212 (1st Dep't 2002) ............................................................... 16

*Redington* v. *Touche Ross & Co.*,
   592 F.2d 617 (2d Cir. 1978), *rev'd*, 442 U.S. 560 (1979) .................. 3, 14, 15, 16-17

*Redington* v. *Touche Ross & Co.*,
   612 F.2d 68 (2d Cir. 1979) ............................................................. 12, 14, 15

*RGH Liquidating Trust* v. *Deloitte & Touche LLP*,
   71 A.D.3d 198 (1st Dep't 2009) ............................................................. 20, 21

*SEC* v. *Packer, Wilbur & Co., Inc.*,
   498 F.2d 978 (2d Cir. 1974) ........................................................................ 12

*Shearson Lehman Hutton, Inc.* v. *Wagoner*,
   944 F.2d 114 (2d Cir. 1991) ................................................................... 13, 16

*Shugrue* v. *Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*,
   922 F.2d 984 (2d Cir. 1990) ......................................................................... 6

*Shugrue* v. *Chem. Bank, Inc. (In re Ionosphere Clubs, Inc.)*,
   1995 WL 479480 (S.D.N.Y. Aug. 11, 1995) ................................................ 5

*SIPC* v. *BDO Seidman, LLP*,
   49 F. Supp. 2d 644 (S.D.N.Y. 1999) ........................................................ 17

*SIPC* v. *BDO Seidman, LLP*,
   222 F.3d 63 (2d Cir. 2000) .................................................................... 15 n.7

*Smith* v. *Arthur Andersen LLP*,
   421 F.3d 989 (9th Cir. 2005) ...................................................................... 20

*Touche Ross & Co.* v. *Redington*,
   442 U.S. 560 (1979) ............................................................................. 14, 15

**Statutes**

11 U.S.C. § 362(a) ........................................................................................... 12

15 U.S.C. § 77p(b) ........................................................................................... 18

15 U.S.C. § 78bb(f)(5)(B)(i) ............................................................................ 18

15 U.S.C. § 78bb(f)(5)(D) ...................................................................... 18-19, 20-21

15 U.S.C. § 78bbb .......................................................................................... 12

15 U.S.C. § 78fff-1 .......................................................................................... 15

15 U.S.C. § 78fff-2(b) ..................................................................................... 17

15 U.S.C. § 78fff-3(a) ..................................................................................... 17

28 U.S.C. § 157(c)(1) ...................................................................................... 23

28 U.S.C. § 157(d) ............................................................................................. passim

**Other Authorities**

H.R. Rep. No. 91-1613 (1970) ................................................................ 12 n.6

S. Rep. No. 91-1218 (1970) .................................................................... 12 n.6

# PRELIMINARY STATEMENT

The Trustee's opposition brief begins with a diversion — an accusation that JPMorgan is seeking "refuge" in this Article III court.  In truth, however, it is the Trustee who is trying to avoid this Court's scrutiny of the many novel and unsettled questions of federal banking and securities law that are at the center of this massive damages action.  Last week, Judge Rakoff withdrew the reference of another lawsuit filed by the Trustee to address the very same SIPA and SLUSA issues that JPMorgan has raised.  This action presents an even more compelling case for withdrawal of the reference, because it not only presents those same SIPA and SLUSA issues, but also requires resolution of issues of federal banking law that were not present in the case before Judge Rakoff.[1]

The Trustee does not deny that he has accused JPMorgan of violating federal banking law by alleging that the bank disregarded its anti-money laundering and know-your-customer duties.  Nor does he dispute that determining whether JPMorgan violated those duties will require significant interpretation of federal statutes and regulations.  Instead, the Trustee now seeks to downplay his own extensive allegations based on federal banking law by pronouncing that he merely intended them to "provide context."  Tr. Br. 24, 27.  But the Trustee's own press releases issued when he filed his complaint belie this claim:  at that time, before JPMorgan had made this motion, the Trustee singled out those very allegations for special press attention, prominently asserting that JPMorgan "ignored its money laundering obligations" and did not "know the business of its customers."  *See* Supp. Decl. Exs. 3 & 4.

---

[1]   The transcript of the hearing held before Judge Rakoff on April 12, 2011 in *Picard* v. *HSBC Bank PLC*, 1-11-cv-763 and *Picard* v. *Alpha Prime Fund Ltd.*, 1-11-cv-836 is attached to the Supplemental Declaration of Emil A. Kleinhaus as Exhibit 1, and is referenced as "HSBC Tr." Judge Rakoff's order withdrawing the reference is attached to that declaration as Exhibit 2.

In reality, the Trustee's invocation of federal banking law in his own pleading is the antithesis of mere "context."  As JPMorgan has shown, the Trustee has leveled extensive allegations that JPMorgan violated federal banking law in support of numerous causes of action, including claims for aiding and abetting fraud, "fraud on the regulator," and fraudulent transfer. The Trustee should not be allowed to disavow his own pleading — which he has not sought to withdraw or amend — for the transparently tactical purpose of keeping this case in the bankruptcy court.

The Trustee's novel claim for "fraud on the regulator" also mandates withdrawal of the reference.  The Trustee is taking the position that *state* law permits him to assert a claim that JPMorgan defrauded its *federal* regulators.  JPMorgan will argue, however, that any such state-law claim is preempted by the federal laws that govern the bank's relationships with those regulators.  In response, the Trustee and SIPC say only that the standards applicable to preemption are "well established," but they do not identify any "well established" standard that supports their position, nor do they even attempt to distinguish the controlling decision of the U.S. Supreme Court holding that the Food, Drug and Cosmetic Act preempted an analogous state law claim for fraud on the FDA.  Resolving such an important preemption question is plainly the province of an Article III court.

As Judge Rakoff concluded in the *HSBC* case, withdrawal of the reference is also mandatory in light of the novel and unsettled SIPA and SLUSA issues raised by this lawsuit. The Trustee's action stretches the federal securities laws to their breaking point by purporting to aggregate and assert thousands of state-law damages claims that belong to Madoff's customers. The issues presented by the Trustee's appropriation of customer claims are certainly not simple issues under SIPA and SLUSA.  HSBC Tr. 3:23-25.

The Trustee's own opposition brief exposes the contradiction inherent in his position on SIPA and SLUSA.  The Trustee first argues that even though bankruptcy law denies standing to bankruptcy trustees to assert claims owned by creditors, *SIPA* supposedly grants a SIPA trustee special power — beyond that of a bankruptcy trustee — to bring claims belonging to thousands of Madoff's customers.  The Trustee then argues, however, that SLUSA does not preclude him from bringing a *de facto* class action on behalf of those customers because, for *SLUSA* purposes, a SIPA trustee is no different from a bankruptcy trustee.  Whether the Trustee can walk this tightrope between SIPA and SLUSA incontestably raises novel issues.

The Trustee's specific arguments relating to SIPA and SLUSA further confirm the need for withdrawal.  As Judge Rakoff pointed out at the *HSBC* hearing, the Trustee and SIPC are wrong in asserting that SIPA is part of the Bankruptcy Code:  SIPA is indisputably part of title 15 — the federal securities laws.  HSBC Tr. 12:3.  They also are wrong in contending that the Trustee's standing under SIPA to sue on behalf of customers was resolved by the Second Circuit in *Redington* v. *Touche, Ross*:  their position ignores the split among the courts as to *Redington*'s status, as well as statements from the U.S. Supreme Court that call its reasoning into question.  Moreover, *Redington* simply does not address, and the Trustee does not explain, how his predecessor BMIS — which took customer property only to steal it — could obtain "bailee" status under SIPA, when New York law does not permit a thief to be a bailee.

With respect to SLUSA, while the Trustee's brief stridently labels JPMorgan's argument as "bordering on frivolous," Judge Rakoff found that the very same argument mandated withdrawal of the reference.  *See* Supp. Decl. Ex. 2.  And Judge Rakoff was right:  If a customer of Madoff purported to bring a class action on behalf of other customers asserting the same state-law claims advanced by the Trustee, SLUSA would stop the action in its tracks.  Yet

-3-

the Trustee does not explain why SLUSA would allow him to lead an aggregated action that no customer could bring, nor does the statute compel so odd a result.  Although the Trustee and SIPC assert that this is not a "covered class action," they rely not on the definition of that term (which is clearly satisfied), but instead on a separate "counting" provision of the statute under which an "entity" (such as a corporation) is counted as one "person" even if it has numerous beneficiaries (such as shareholders).  But that "counting" provision has no relevance here. Whether the Trustee is "one person" or many, he is not pursuing damages claims of *BMIS* — the bankrupt entity to which he is the appointed successor — but is instead asserting thousands of claims belonging to non-bankrupt *customers* of BMIS.  As Judge Rakoff concluded, the novel question whether SLUSA bars the Trustee's assertion of customer claims should be decided by this Court.

Finally, the Trustee and SIPC have no compelling response to JPMorgan's additional showing that "cause" exists to withdraw the reference.  The Trustee effectively concedes that the state-law claims asserted against JPMorgan are not "core" bankruptcy claims. The Trustee instead offers the facile observation that 16 of his 21 causes of action are core, while ignoring that those 16 claims only seek to recover, through repetitive theories, essentially the same pre-petition transfers totaling approximately $425 million.  What the Trustee cannot dispute is that the *non*-core claims in this action, which seek to recover approximately *$6 billion* in damages, overwhelm these far smaller core claims.  Nor should this case stay in the bankruptcy court because of its supposed "overlap" with unrelated clawback suits against unrelated defendants.  The non-core claims that dominate this proceeding, which arise out of JPMorgan's provision of banking services to BMIS, raise unique issues that are entirely distinct from the clawback actions being pursued against other parties in the bankruptcy court.

<strong>ARGUMENT</strong>

**I.   THIS ACTION IS SUBJECT TO MANDATORY WITHDRAWAL OF THE REFERENCE.**

 **A.   JPMorgan's motion is not premature.**

  Section 157(d) requires a motion to withdraw the reference to be "timely."  28 U.S.C. § 157(d).  The statute thus encourages the filing of a motion to withdraw the reference at the earliest possible stage of a lawsuit:  "Abundant case law holds . . . that the moving party should move under Section 157(d) as soon as possible after receiving notice of the grounds for withdrawing the reference."  *Shugrue* v. *Chem. Bank, Inc.* (*In re Ionosphere Clubs, Inc.*), 1995 WL 479480, at *3 (S.D.N.Y. Aug. 11, 1995).  Here, the federal issues raised by this action are readily apparent from the face of the Complaint and clearly framed by JPMorgan's motion.  The motion, therefore, is not premature but ripe for decision now.  *See Bear, Stearns Sec. Corp.* v. *Gredd*, 2001 WL 840187 (S.D.N.Y. July 25, 2001) (granting motion to withdraw the reference prior to consideration of securities law issues on a motion to dismiss); *Homeland Stores, Inc.* v. *Burris (In re Homeland Stores, Inc.)*, 204 B.R. 427, 430-33 (D. Del. 1997) (granting motion to withdraw the reference where the complaint "brim[med] with a farrago of ERISA issues").

 **B.   SIPC and the Trustee misstate the standard for mandatory withdrawal.**

  SIPC and the Trustee disagree about the requirements for mandatory withdrawal.  SIPC asserts that "mandatory withdrawal is appropriate only where the case presents substantial and material potential *conflicts* that exist between Title 11 and non-Title 11 federal law."  SIPC Br. 7-8 (emphasis in original).  The Trustee acknowledges that mandatory withdrawal "is not limited to these circumstances."  Tr. Br. 2.

-5-

SIPC's position is at odds with the language of the statute and controlling precedent. Section 157(d) provides that withdrawal of the reference is mandatory when a proceeding requires "consideration of" — not a conflict between — title 11 and "other laws of the United States." The Second Circuit has concluded that withdrawal is mandatory when a proceeding requires "significant interpretation . . . of federal laws apart from the bankruptcy statutes." *City of New York* v. *Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991); *accord Shugrue* v. *Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990). Accordingly, the standard for mandatory withdrawal in this Circuit has long been "well-settled." *Mishkin* v. *Ageloff*, 220 B.R. 784, 796 (S.D.N.Y. 1998) (collecting cases).[2]

The Trustee also misstates the applicable standard in asserting that, "as a practical matter," withdrawal is only mandatory when there is a conflict between the Bankruptcy Code and other federal law or "an issue of first impression involving a non-bankruptcy federal statute." Tr. Br. 10. Although this lawsuit raises numerous issues of first impression, "the district court is not required to find that novel or unsettled questions of non-bankruptcy law are presented in order to withdraw the reference." *Enron Corp.* v. *J.P. Morgan Sec., Inc. (In re Enron Corp.)*, 388 B.R. 131, 139-40 (S.D.N.Y. 2008).

---

[2]   The few cases cited by SIPC do not hold that a "conflict" between bankruptcy and non-bankruptcy law is necessary for mandatory withdrawal. Despite imprecise language in some of those district court decisions, they all follow the Second Circuit's "significant interpretation" test. *In re Keene Corp.*, 182 B.R. 379, 382 (S.D.N.Y. 1995); *In re Boston Generating, LLC*, 2010 WL 4288171, at *4 (S.D.N.Y. Nov. 1, 2010); *In re Enron Power Marketing, Inc.*, 2003 WL 68036, at *4 (S.D.N.Y. Jan. 8, 2003); *In re CIS Corp.*, 172 B.R. 748, 753 (S.D.N.Y. 1994); *In re Adelphi Inst., Inc.*, 112 B.R. 534, 537 (S.D.N.Y. 1990).

C.    **The Trustee's claims require significant interpretation of federal banking statutes and regulations.**

As JPMorgan has shown, the Complaint repeatedly alleges that JPMorgan violated federal banking laws, including the Bank Secrecy Act, the Patriot Act, and related regulations.  According to the Trustee, those federal laws should be interpreted to impose wide-ranging duties on banks — including, for example, a requirement that banks "perform on-site visits to their clients, obtain and review financial statements to corroborate the sources of the clients' wealth, and to review media reports regarding their clients."  Compl. ¶ 186.  The laws themselves, however, do not impose any such requirements, and they have rarely if ever been interpreted by the courts.  Opening Br. 12-13.[3]

The Trustee does not dispute that the court would need to engage in significant interpretation of the applicable statutes and regulations to determine whether JPMorgan violated federal banking laws.  Nonetheless, the Trustee urges that the reference should not be withdrawn because (1) his claims arise under state law, and (2) he alleged violations of federal banking law merely to "provide context."  Tr. Br. 23-24; *accord* SIPC Br. 24-25.

First, it is of no moment that the Trustee's claims are brought under state law. The Trustee and SIPC conflate the issue of mandatory withdrawal with the issue of federal question jurisdiction.  *See* Tr. Br. 28 and SIPC Br. 25 (citing *Fornshell* v. *FirstMerit Bank, N.A.*, 2010 WL 4835771, at *1 (N.D. Ohio Nov. 23, 2010), which held that federal question jurisdiction did not lie over an aiding and abetting claim).  Under section 157(d), a proceeding

---

[3]  Contrary to the Trustee's assertion, Tr. Br. 12, section 157(d) does not pertain only to statutes. The provision applies to any federal "laws" that regulate interstate commerce.  *Enron Power Mktg., Inc.* v. *Cal. Power Exch. Corp. (In re Enron Corp.)*, 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) (withdrawing the reference to interpret a tariff); *Gredd*, 2001 WL 840187, at *3 (withdrawing the reference to interpret federal regulations).

must be withdrawn when it requires consideration of federal laws other than title 11.  The statute does not require that the claims at issue *arise under* federal non-bankruptcy law.  And indeed, numerous cases have withdrawn the reference of claims that do not arise under federal non-bankruptcy law but simply require its interpretation.

A notable example is the district court's decision to withdraw the reference in *Bear, Stearns* v. *Gredd*, where the Court held that "substantial and material consideration" of federal securities laws would be required to adjudicate an avoidance claim under the Bankruptcy Code.  2001 WL 840187, at *3.  Thus, although the claim at issue did not arise under the federal securities laws, the need to interpret those laws mandated withdrawal.  *Id.* at *4.  Decisions involving state-law claims are to similar effect.  *See, e.g.*, *Lubin* v. *Cincinnati Ins.*, 411 B.R. 801, 803, 804 (N.D. Ga. 2009) (mandatory withdrawal of state-law claims that would "likely" require "substantial and material consideration of" federal banking law); *Atteberry* v. *Nigerian Nat'l Petroleum Corp.* (*In re Donald G. Atteberry*), 164 B.R. 668, 670 (D. Kan. 1994) (mandatory withdrawal of contract action due to "serious issue" whether contract payments violated Foreign Corrupt Practices Act).

The assertion that the Complaint invokes federal banking law only to provide "context" can likewise be summarily dispatched.  The Complaint explicitly relies on federal banking laws to support an array of claims.  In two separate aiding and abetting claims, the Trustee attempts to satisfy the "substantial assistance" element by alleging that JPMorgan assisted Madoff by "choosing not to execute its AML policy," by not providing "an account sponsor to the 703 Account," and by overlooking "irregular activity" in the account.  Compl. ¶¶ 441, 456.  The Trustee's conversion claim likewise relies on the allegation that JPMorgan "was required to monitor BLMIS's banking activities" but failed to do so.  Compl. ¶ 462.

Moreover, the Trustee's "fraud on the regulator" claim is predicated entirely on the allegation that JPMorgan "had a duty to report suspicious activity and failed to do so."  Compl. ¶¶ 474-75.

In addition, the Trustee admits that he is using JPMorgan's alleged violations of federal banking law to "show why JPMC was on inquiry notice of the fraud."  Tr. Br. 4, 27.  And the Trustee will doubtless assert that whether JPMorgan was on "inquiry notice" of Madoff's fraud will determine whether the bank can sustain a "good faith" defense to the Trustee's avoidance claims.  *See, e.g.*, *Christian Bros. High Sch. Endowment* v. *Bayou No Leverage Fund (In re Bayou Grp., LLC)*, 439 B.R. 284, 314-17 (S.D.N.Y. 2010).  As a result, issues of federal banking law bear directly and substantially on all of the Trustee's claims, core and non-core, and will remain at issue throughout this proceeding.

As the Trustee would have it, withdrawal should be denied if there is *any* conceivable way to resolve his claims without interpreting federal banking laws.  But the Trustee cites no authority for this approach.  Rather, his citations involve situations in which federal non-bankruptcy law would be considered only *after* a threshold issue under the Bankruptcy Code was resolved, with the district court deferring to the bankruptcy court on the threshold issue.  *See In re Enron Corp.*, 388 B.R. at 141 (denying withdrawal motion as premature where "the issue requiring substantial and material consideration of non-Bankruptcy Code federal law might be rendered moot" by an issue of bankruptcy law that the parties agreed "should be decided first").[4]

---

[4]   *See also In re Texaco Inc.*, 84 B.R. 911, 923 (Bankr. S.D.N.Y. 1988) (recommending denial of withdrawal motion where non-bankruptcy law issues were "highly speculative" and depended on threshold ruling whether contract could be assumed under bankruptcy law); *Pension Benefit Guar. Corp.* v. *Cont'l Airlines, Inc.* (*In re Cont'l Airlines*), 138 B.R. 442, 445-46 (D. Del. 1992) (denying withdrawal motion where threshold bankruptcy question "would render the [non-bankruptcy law] question raised moot"); *In re White Motor Corp.*, 42 B.R. 693, 705 (N.D. Ohio 1984) (denying withdrawal motion "based on speculation about ERISA and IRC issues which may or may not arise and may or may not be germane to resolution of core Code proceedings").

Here, however, the Complaint relies directly on alleged violations of federal banking law to support its claims, and the Trustee has identified no threshold bankruptcy issue that would resolve those claims in his favor — nor could he, given that his massive damages claims are not predicated on bankruptcy law.  Once again, the *Gredd* case is instructive.  In *Gredd*, as in this case, the trustee speculated that her claims might be decided on grounds that did not depend on federal securities law.  But the District Court concluded that the need to interpret "various provisions of the federal securities laws," along with the "pervasive federal regulatory scheme in this area," mandated withdrawal, "regardless of whether we ultimately find federal securities law to be dispositive."  *Gredd*, 2001 WL 840187, at *4.  In this case, the Trustee has chosen to aver violations of federal banking law in support of numerous claims.  Withdrawal of the reference is not defeated by his mere speculation that some other issue might be dispositive.

D.   **The Trustee's claim of "fraud on the regulator" requires significant interpretation of federal non-bankruptcy law.**

The Trustee seeks a $5.4 billion recovery on the theory that JPMorgan, a national banking association, defrauded its federal regulators at the SEC, the OCC, and the Federal Reserve.  In his opposition brief, the Trustee reveals that this claim is predicated on state law.  Tr. Br. 25.  But the Trustee avoids any substantive response to JPMorgan's showing that any such claim would be preempted by federal law, nor does he explain how the preemption issue could be resolved without significant interpretation of federal statutes and regulations.

JPMorgan will argue that the Supreme Court's decision in *Buckman Co.* v. *Plaintiffs' Legal Committee* is controlling on the preemption issue.  The Supreme Court in *Buckman*, noting that the relationship between a federal agency and the entities it regulates is "inherently federal," held that a state-law claim for fraud on the FDA was preempted by the Federal Food, Drug and Cosmetic Act.  531 U.S. 341, 347 (2001).  In reaching its decision, the

-10-

Court examined the purpose, requirements, and enforcement mechanisms of the statute and concluded that allowing state-law claims to be asserted would disturb the "delicate balance of statutory objectives" achieved by the federal regulatory scheme.  *Buckman*, 531 U.S. at 348.

The Trustee and SIPC appear to believe that *Buckman* is not controlling, but they never explain why.  To distinguish *Buckman*, the Trustee will have to show that the federal law at issue here leaves room for state-law claims, requiring the Court to construe federal law just as the Supreme Court did in *Buckman*.  The matter will be one of first impression, as JPMorgan is not aware of any decision determining whether a state-law claim for fraud on federal banking and securities regulators is preempted by federal law.  The presence of a serious preemption question like this requires withdrawal of the reference.  *See, e.g.*, *Old Carco LLC* v. *Kroger (In re Old Carco LLC)*, 2010 U.S. Dist. LEXIS 33238, at *5 (S.D.N.Y. Mar. 29, 2010) (action seeking to enjoin enforcement of state laws based on federal preemption was subject to mandatory withdrawal); *In re Homeland Stores*, 204 B.R. at 431 (defense to breach of contract claim based on ERISA preemption was "suited for resolution by a district court").[5]

## E.   The Trustee's claims require significant interpretation of SIPA.

According to the Trustee, his alleged standing under SIPA to assert the claims of Madoff's customers presents no significant issues requiring mandatory withdrawal.  The Trustee and SIPC argue that SIPA is actually part of the Bankruptcy Code and that, in any case, the

---

[5]   Most of the preemption cases cited by the Trustee and SIPC have nothing to do with withdrawal of the reference.  *See* Tr. Br. 29; SIPC Br. 26.  And in the two cases that do concern withdrawal, the courts concluded after sparse analysis that the specific issue presented did not require significant interpretation of the relevant federal statutes.  *See Cal.* v. *Enron Corp. (In re Enron Corp.)*, 2005 WL 1185804, at *2 (S.D.N.Y. May 18, 2005); *Jagow* v. *Top Hill, LLC (In re Townhomes at Hill Top, LLC)*, 2008 WL 2078109, at *3 (D. Colo. May 14, 2008).

issues presented do not require significant interpretation of the statute.  In the *HSBC* case, Judge

Rakoff correctly rejected both of these arguments.

### 1.    SIPA is not part of title 11.

Section 157(d) mandates withdrawal of the reference when a proceeding requires

significant interpretation of federal law *other than* title 11.  28 U.S.C. § 157(d).  As Judge Rakoff

confirmed, SIPA on its face is part of title 15, *not* title 11.  *See* HSBC Tr. 12:3; *accord* 15 U.S.C.

§ 78bbb ("the provisions of the Securities Exchange Act of 1934 . . . apply as if [SIPA]

constituted an amendment to, and was included as a section of [that statute]"); *Redington* v.

*Touche Ross & Co.*, 612 F.2d 68, 73 (2d Cir. 1979) (SIPA "a part" of securities laws); *SEC* v.

*Packer, Wilbur & Co., Inc.*, 498 F.2d 978, 985 n.12 (2d Cir. 1974) (SIPA a "section" of federal

securities laws).  That should be the end of the matter.[6]

The Trustee erroneously asserts that SIPA and the Bankruptcy Code are "each

incorporated into the other."  Tr. Br. 14.  SIPA incorporates certain provisions of the Bankruptcy

Code, but the Bankruptcy Code does *not* incorporate any provision of SIPA.  Although section

362(a) of the Bankruptcy Code declares that the filing of a SIPA proceeding triggers the

Bankruptcy Code's automatic stay, section 362(a) does not incorporate any provision of SIPA.

Moreover, the fact that SIPA incorporates certain provisions from the Bankruptcy Code, *see* Tr.

Br. 14; SIPC Br. 10-11, has no relevance, as the issue here is whether SIPA, *unlike* the

---

[6]  Since the statute is unambiguous, there is no reason to look at legislative history.  *See* HSBC
Tr. 15:20-25.  In any event, the House Report on SIPA states that "the bill provides that SIPC
members will be liquidated in special proceedings *outside the Bankruptcy Act*."  H.R. Rep. No.
91-1613 at 9 (1970) (emphasis added).  Likewise, the Senate Report states that "liquidation
proceedings" arising under SIPA "will be under the Securities Exchange Act of 1934, as
amended by the bill, *and not under the Bankruptcy Act*."  S. Rep. No. 91-1218 at 10 (1970)
(emphasis added).  It is hard to imagine a clearer statement of legislative intent.

Bankruptcy Code, authorizes a SIPA trustee to bring damages claims belonging to customers. Resolution of that issue turns on the interpretation of SIPA, not the Bankruptcy Code.

Nor would withdrawal of the reference in cases requiring significant interpretation of SIPA defeat Congress's referral of SIPA proceedings to the bankruptcy court. Tr. Br. 15. The vast majority of matters within a brokerage liquidation do not involve significant interpretation of title 15. Indeed, even in this highly unusual brokerage liquidation, the bulk of the lawsuits brought by the Trustee assert only clawback claims under title 11 that are not subject to mandatory withdrawal. This action against JPMorgan, however, does raise significant questions under title 15, precisely because the Trustee is taking the unusual position that SIPA grants him special powers to assert common-law damages claims belonging to the broker's customers.

> 2.    **The Trustee's claims present significant unresolved issues under SIPA.**

The Trustee's brief reaffirms that the Trustee is attempting to bring claims on behalf of *customers* rather than on behalf of BMIS. The Trustee has no choice but to do so: The billions of dollars in damages that he seeks to recover were suffered by Madoff's customers, not BMIS, and in any case, claims on behalf of BMIS would be barred by the doctrine of *in pari delicto*, which "mandates that the courts will not intercede to resolve a dispute between two wrongdoers." *Kirschner* v. *KPMG LLP*, 15 N.Y.3d 446, 464 (2010); *accord Shearson Lehman Hutton, Inc.* v. *Wagoner*, 944 F.2d 114 (2d Cir. 1991).

SIPA does not expressly authorize either SIPC or a SIPA trustee to assert customer claims against third parties. The Trustee's resort to extra-statutory concepts of bailment, subrogation and assignment to assert customer damages claims is, therefore, wholly dependent on the premise that the Trustee has wide-ranging powers not expressly conferred by

the statute.  All of the Trustee's asserted grounds for standing under SIPA present significant

issues that should be determined by this Court.

    a.  **The Trustee lacks standing as a bailee**.  The Trustee appears to be

relying on his alleged standing as a "bailee" to assert the bulk of his damages claims, as the

amounts subject to subrogation and assignment appear to be inadequate to match the

approximately $6 billion in damages sought from JPMorgan.  *See* www.madofftrustee.com

(SIPC has committed to pay only $794 million); Compl. ¶ 17(g) (pleading no information as to

the number or amount of claims expressly assigned to the Trustee).

    No provision of SIPA employs the term "bailment" or otherwise confers "bailee"

standing on a SIPA trustee.  Looking beyond the face of the statute for authority to sue on behalf

of Madoff's customers as their bailee, the Trustee invokes the Second Circuit's decision in

*Redington* v. *Touche Ross & Co.*, 592 F.2d 617 (2d Cir. 1978), *rev'd*, 442 U.S. 560 (1979), *on

remand*, 612 F.2d 68 (2d Cir. 1979).  *Redington*, however, is not good law and, even if it were,

its application to this case is highly questionable.

    The history of *Redington* undermines the Trustee's assertion that it is the "binding

law of this Circuit."  Tr. Br. 19.  In *Redington*, both the SIPA trustee and SIPC brought suit

against the broker's accountant, asserting claims on behalf of the broker's customers for

violations of section 17 of the Securities Exchange Act and state law claims.  The district court

dismissed the section 17 claims, holding that there was no private right of action under the

statute, and dismissed the state law claims for want of federal jurisdiction.  592 F.2d at 619 n.3.

The Second Circuit reinstated the section 17 claims, ruled that the SIPA trustee could assert

those claims as a bailee and SIPC as a subrogee, and remanded as to the jurisdictional basis for

the remaining claims.  *Id*. at 624-25.  But the Supreme Court reversed, holding that there was no

private right of action to enforce section 17 and that it was "unnecessary to reach" the Second

Circuit's other rulings.  442 U.S. at 567 n.9, 579.  On remand, the Second Circuit considered the

trustee's "alternative bases for jurisdiction" over the remaining claims, rejected those bases, and

affirmed the district court's dismissal.  612 F.2d at 70-73.

   In *Mishkin* v. *Peat, Marwick, Mitchell & Co.*, 744 F. Supp. 531 (S.D.N.Y. 1990)

— a case that the U.S. Supreme Court has singled out for citation with approval, *see Holmes* v.

*SIPC*, 503 U.S. 258, 270 (1992) — the district court recognized that the reversed *Redington*

decision is no longer binding and adopted the reasoning of the *Redington* dissent, 744 F. Supp. at

557-58 n.15.  At a hearing in the *Mishkin* case, Judge Pollack explained that the Second Circuit's

decision "does not stand as the law of this circuit," because the Supreme Court's decision "wiped

out everything that . . . occurred up to that time, and sent the case back accordingly."  Supp.

Decl. Ex. 5, at 32-33.  Judge Pollack was correct in that conclusion:  "when the Supreme Court

reverses a lower court's decision on a threshold question," the Supreme Court "effectively holds

the lower court erred by reaching" other issues.  *Newdow* v. *Rio Linda Union Sch. Dist.*, 597

F.3d 1007, 1041 (9th Cir. 2010).[7]

   Beyond repeating the cryptic statements of the *Redington* majority, the Trustee

and SIPC have nothing to say on the merits of the bailment issue.  In particular, they do not

explain why Judge Pollack was wrong in *Mishkin* when he held that section 78fff-1 of SIPA,

which sets out all the powers and duties of a SIPA trustee, also "expressly limits" those powers.

*Mishkin*, 744 F. Supp. at 558.

---

[7]  In *BDO Seidman*, the Second Circuit did not reaffirm *Redington*, as the Trustee and SIPC
wrongly suggest.  Tr. Br. 20; SIPC Br. 14-15.  Rather, the court stated that "[e]ven if we were
justified in revisiting the *Redington* decision . . . we need not do so in this case" since the claims
failed on other grounds.  *SIPC* v. *BDO Seidman, LLP*, 222 F.3d 63, 69 (2d Cir. 2000).

In this case, moreover, the Trustee's bailment theory raises additional fundamental questions that *Redington* does not address.  While the Trustee seems to be saying that BMIS was the bailee of its customers' property and that the Trustee, as successor to BMIS, succeeds to those rights, the Trustee cites no authority for the proposition that BMIS can assert bailee rights over property that it *stole*.  This is not surprising, for New York law is to the contrary:  A thief cannot be a bailee, because a bailment arises only if the bailee takes "lawful possession" of property "without present intent to appropriate" it.  *Pivar* v. *Graduate Sch. of Figurative Art*, 290 A.D.2d 212, 213 (1st Dep't 2002) (internal quotation marks omitted); *accord Martin* v. *Briggs*, 235 A.D.2d 192, 197 (1st Dep't 1997).  The Trustee's position that SIPA displaces New York law and permits the successor to a thief to bring claims as a bailee clearly presents significant issues under the statute.

In addition, 13 years after *Redington*, the Second Circuit held in *Wagoner* that a trustee lacks standing to sue to redress a harm for which the debtor was responsible.  944 F.2d at 120.  In asserting purported bailment rights of BMIS, the Trustee attempts to rely on the reversed *Redington* case to circumvent the more recent and routinely applied *Wagoner* rule.  Whether *Wagoner* and *in pari delicto* principles bar the Trustee's claims as a "bailee" (or a subrogee or assignee) is yet another unresolved issue of first impression.  As Judge Rakoff recognized, this unresolved standing issue falls within the particular expertise of a district court.  HSBC Tr. 8:13.[8]

     **b.**     <u>**The Trustee lacks standing as a subrogee**</u>.  The Trustee's argument that he has standing to sue third parties as the subrogee of claims paid by SIPC raises additional questions.  The *Redington* majority did not consider whether a SIPA trustee may obtain such

---

[8]   To the extent that the Trustee is saying that he has bailee rights even if BMIS never acquired such rights, he cites no statutory provision or case law explaining how he could be a "bailee" of property that had been transferred from BMIS before his appointment.

-16-

standing, although it did find that SIPC could assert claims as a subrogee. *Redington*, 592 F.2d at 624. For the reasons set forth above, however, *Redington* is not binding. Indeed, without deciding the issue, the U.S. Supreme Court has since stated that "SIPC's theory of subrogation" — essentially the same theory advanced by the Trustee here — "is fraught with unanswered questions." *Holmes*, 503 U.S. at 270-71. Moreover, based on a thorough analysis, the court in *Mishkin* held that a SIPA trustee does *not* have standing to bring claims against third parties on a subrogation theory. 744 F. Supp. at 558. In reaching that conclusion, the court rejected the argument made here that Congress granted a SIPA trustee the right to sue third parties as a subrogee when it amended section 78fff-3(a) of SIPA to provide that SIPC has "all other rights it may have at law or in equity." *Mishkin*, 744 F. Supp. at 558; *see* Tr. Br. 18; SIPC Br. 17.

> **c.**      **The Trustee lacks standing as an assignee**. The Trustee and SIPC cite no provision of SIPA, and no SIPA case law, that permits a SIPA trustee to sue as an assignee of customers, because the statute and case law are against them. Numerous SIPA cases have concluded that section 78fff-2(b) of SIPA, which authorizes a SIPA trustee to obtain assignments of customer claims *against* the estate, "does not extend to claims against a third party." *Giddens* v. *D.H. Blair & Co. (In re A.R. Baron & Co.)*, 280 B.R. 794, 803 (Bankr. S.D.N.Y. 2002); *accord SIPC* v. *BDO Seidman, LLP*, 49 F. Supp. 2d 644, 654 n.7 (S.D.N.Y. 1999), *aff'd in relevant part*, 222 F.3d 63 (2d Cir. 2000); *Mishkin*, 744 F. Supp. at 554.

> The Trustee's assertion that there is "no question" as to his assignee standing is thus wishful thinking. Tr. Br. 17. The Trustee cites section 541(a)(7) of the Bankruptcy Code, which provides that a bankruptcy estate includes "any interest in property that the estate acquires after commencement of the case," as well as one decision addressing it. The provision, however, sheds no light on the standing of a SIPA trustee. And the case cited by the Trustee, *Bankruptcy*

*Services, Inc.* v. *Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432 (2d Cir. 2008), held

merely that an entity created under a chapter 11 plan could take a post-bankruptcy assignment of

specific creditor claims pursuant to the plan, *id.* at 441, 455.  The case did not deal with a SIPA

proceeding or even with a chapter 7 bankruptcy liquidation.

> **F.    The Trustee's claims require significant interpretation
> of SLUSA.**

As JPMorgan showed in its opening brief, even if the Trustee had standing under

SIPA to bring claims on behalf of Madoff's customers, this suit would be barred by SLUSA.  In

response, the Trustee has essentially conceded, as he must, that two of the three requirements for

SLUSA preemption have been satisfied — *i.e.*, that the suit is based on state law and alleges "an

untrue statement or omission of a material fact in connection with the purchase or sale of a

covered security."  15 U.S.C. § 77p(b).  The sole ground of dispute concerns whether this lawsuit

by a SIPA trustee is a "covered class action" under SLUSA.  That is a novel issue under SLUSA

and, as in the *HSBC* case, it requires withdrawal of the reference.

The Trustee's opposing brief glosses over the definition of the term "covered

class action," which includes any lawsuit in which:

> damages are sought *on behalf of more than 50 persons* or
> prospective class members, and questions of law or fact common
> to those persons or members of the prospective class, without
> reference to issues of individualized reliance on an alleged
> misstatement or omission, predominate over any questions
> affecting only individual persons or members.

15 U.S.C. § 78bb(f)(5)(B)(i) (emphasis added).

Instead, the Trustee focuses on a separate portion of SLUSA, which clarifies that

for the purposes of counting class members, "a corporation, investment company, pension plan,

partnership, or other entity, shall be treated as one person or prospective class member, but only

if the entity is not established for the purpose of participating in the action." 15 U.S.C.

§ 78bb(f)(5)(D).  The Trustee claims that he is entitled to "entity treatment" under this provision

as "one person" — which supposedly is dispositive.  Tr. Br. 21-22; *accord* SIPC Br. 21-23.

       The Trustee misses the point.  Regardless of whether the Trustee counts as one

person or many, the action is a "covered class action" if he seeks damages "on behalf of more

than 50 persons or prospective class members."  In this case, rather than asserting claims as

successor to BMIS, the defunct brokerage firm, the Trustee is bringing claims that indisputably

belonged to more than 50 of Madoff's customers.  SLUSA is therefore applicable.  As the Third

Circuit has held, the phrase "on behalf of 50 or more persons" refers to someone "bringing a

claim on behalf of 50 or more *injured* persons."  *LaSala* v. *Bordier et Cie*, 519 F.3d 121, 134 (3d

Cir. 2008).  That is, SLUSA applies when "the *original owners* of the claim" number more than

50 — regardless of whether some other entity later seeks to assert such claims in a single action,

whether by assignment or otherwise.  *Id.* (emphasis added).

       In *LaSala*, the Third Circuit distinguished for SLUSA purposes between, on the

one hand, claims originally belonging to a debtor and, on the other hand, claims originally

belonging to purchasers of the debtor's stock.  Although both sets of claims had been assigned to

a liquidating trust, the court concluded that the trustees' assertion of the purchasers' claims — as

opposed to the claims belonging to the debtor corporation — "would seem to take the form of a

covered class action."  *Id.* at 138.  The court recognized that "Congress's clear intent not to reach

claims asserted by a bankruptcy trustee" embraced only "claims that the debtor-in-possession

once owned."  *Id.* at 135.  The court further recognized that, where there has been a purported

assignment of claims, the phrase "on behalf of 50 or more persons" "refers to the *assignors* of a

claim, not to the assignee (or, if the assignee is a trust, to its beneficiaries)."  *Id.* at 134 (emphasis

-19-

added); *see also RGH Liquidating Trust* v. *Deloitte & Touche LLP*, 71 A.D.3d 198, 214 (1st Dep't 2009) (dismissing under SLUSA claims that "originally belonged to" bondholders who had assigned the claims to a trust created under a chapter 11 plan).

Here, to the extent that the Trustee purports to sue as a "bailee," he is concededly bringing claims "on behalf of" customers, the very language in SLUSA.  Compl. ¶ 17(f). Moreover, to the extent that he is aggregating customer claims as an assignee or a subrogee, the Trustee again would be asserting the rights of thousands of BMIS customers, regardless of whether the Trustee himself is counted as one person or many.  "A group . . . of more than 50 . . . should not be permitted to defeat SLUSA through the expedient of voluntarily assigning their claims for alleged securities fraud to the bankruptcy trustee."  *RGH*, 71 A.D.3d at 214-15; *see also LaSala*, 519 F.3d at 136 ("[T]he statutory text and legislative history signal that the definition" of covered class action "was designed to prevent securities-claims owners from bringing what are, in effect, class actions by assigning claims to a single entity.").

The Trustee's cases are not to the contrary, as those cases involved situations where a trustee asserted claims that belonged to the bankrupt debtor.  Those cases did not involve situations, such as the case at bar, where the trustee purported to assert damages claims that belonged to third-party creditors.  *See Smith* v. *Arthur Andersen LLP*, 421 F.3d 989, 1001-06 (9th Cir. 2005); *LaSala* v. *UBS, AG*, 510 F. Supp. 2d 213, 235 & n.11 (S.D.N.Y. 2007); *cf. Lee* v. *Marsh & McLennan Cos.*, 2007 WL 704033, at *4 (S.D.N.Y. Mar. 7, 2007) ("a typical Chapter 11 trust established to represent a bankrupt estate . . . is entitled to entity treatment").

Finally, even if the "counting" provision of SLUSA had any relevance here, further interpretation of SLUSA would be needed, because the counting provision only applies to an entity "not established for the purpose of participating in the action."  15 U.S.C.

§ 78bb(f)(5)(D).  Seizing on language from cases that have focused on an entity's "primary purpose," the Trustee and SIPC assert that the Trustee was not established for the "primary purpose" of bringing litigation.  Tr. Br. 21; SIPC Br. 22.  But the word "primary" does not appear in the statute.  *RGH*, 71 A.D.3d at 210 ("The word 'purpose' is not modified in any way. Hence, if an entity was established for the purpose of participating in the subject action, it is irrelevant that the entity also has other purposes, or that participation in the action is not the entity's primary purpose.").  And here, in any event, the Trustee *was* created for the "primary purpose" of pursuing causes of action.  When the Trustee was appointed, the Madoff estate had minimal assets.  The Trustee's primary function, therefore, has been to assert claims against thousands of defendants in an attempt to maximize recoveries.

## II.   THIS ACTION IS SUBJECT TO WITHDRAWAL OF THE REFERENCE FOR CAUSE.

The reference to the bankruptcy court should also be withdrawn "for cause" under 28 U.S.C. § 157(d).  Non-core claims dominate this proceeding, and considerations of efficiency weigh heavily in favor of withdrawal.

### A.   Non-core claims dominate this proceeding.

The Trustee has brought non-core claims against JPMorgan seeking over *$6 billion* in damages.  The theories underlying those non-core claims, including the basic concept that a national banking association can be held liable to private plaintiffs for failing to detect a customer's fraud, threaten to subject banks to new and substantial risks of liability. Putting aside the Trustee's false accusations about JPMorgan's "complicity" in the fraud, the crux of this case is a far-reaching claim that banks such as JPMorgan, which are heavily regulated, can be held responsible to parties other than their regulators for not reporting fraudulent activity.  This kind of lawsuit belongs in an Article III court.  *See Pension Benefit*

*Guar. Corp.* v. *LTV Corp. (In re Chateaugay Corp.)*, 86 B.R. 33, 39 (S.D.N.Y. 1987) (discretionary withdrawal warranted due to "the presence of significant issues of first impression" and "issues of national importance in pension benefit insurance").

Without disputing that the Complaint asserts non-core claims, the Trustee's primary response is to argue that those claims should remain in bankruptcy court because they are "related to" core claims. But the converse is just as true: the Trustee's relatively smaller core claims are "related to" his vastly larger non-core claims. The Trustee and SIPC thus can only emphasize that "16 of the Trustee's 21 claims seek recovery of fraudulent and preferential transfers." Tr. Br. 32; *accord* SIPC Br. 27. Yet the Trustee's 16 core claims do nothing more than repackage the same theories for relief over and over again. More importantly, the five non-core claims in the Complaint dwarf the core claims in terms of the amount being sought: the non-core claims seek recoveries of approximately *$6 billion*; the core claims seek approximately $425 million. Where core claims are dominated by non-core claims, the logical forum for a lawsuit is the district court. *See Mirant Corp.* v. *Southern Co.*, 337 B.R. 107, 119 (N.D. Tex. 2006) (withdrawing the reference where "non-core claims" were "at least as significant as the core claims").

B.      **Considerations of efficiency and judicial economy
        support withdrawal of the reference.**

Given that the Trustee's claims against JPMorgan are overwhelmingly non-core, withdrawal of the reference will promote the efficient use of judicial resources. "Since the Bankruptcy Court's determination of th[e] non-core claim[s] would be subject to *de novo* review in the district court, unnecessary costs can be avoided by a single proceeding in this court." *In re VWE Group*, *Inc.*, 359 B.R. 441, 451 (S.D.N.Y. 2007). JPMorgan's right to demand a jury buttresses this conclusion. Although the Federal Rules do not require JPMorgan to demand a

jury at this stage, JPMorgan's right to demand a jury means that the bankruptcy court may not be able to adjudicate this proceeding.  *See* Opening Br. 27-29.

        Moreover, even if JPMorgan had no jury right, it would make no sense to try this case in the bankruptcy court.  The bankruptcy court's findings of fact on non-core claims would have to be reviewed *de novo*, 28 U.S.C. § 157(c)(1) — an exceedingly wasteful exercise in a case with a large factual record where credibility determinations could be critical.

        The idea that the reference could be withdrawn just before trial is equally impractical.  Under that approach, the bankruptcy court would need to delve into an extensive set of facts, as well as complex issues of law, to decide dispositive motions and, unless all of the claims were dismissed, the district court would then have to delve into the same voluminous facts and law at trial.  The far more efficient course is to withdraw the reference now, before the bankruptcy court has devoted any substantive attention to this case.

        The Trustee paints with a broad brush in laboring to show that "judicial efficiency" would be served by denying this motion.  The Trustee points to the 1,071 clawback actions pending in the bankruptcy court, a few of which are against "feeder funds" from which JPMorgan made redemptions.  Tr. Br. 33-36.  But the *non*-core damages claims against JPMorgan — which emanate from JPMorgan's provision of banking services to BMIS — are "both factually and legally distinct" from the clawback actions in the bankruptcy court.  *In re VWE Group*, 359 B.R. at 449 (rejecting argument that non-core claims were "related and intertwined" with other claims brought by the debtor).  Far from "overlapping" with the large number of cases pending in the bankruptcy court, in which the Trustee is simply seeking to recover withdrawals made by Madoff customers, this action is predicated on damages theories that bear no relation to those other actions, and it seeks to recover more than *ten times* the

-23-

amount that JPMorgan is alleged to have received as a direct or an indirect transferee.  This motion, therefore, differs from withdrawal motions that have been denied based on a substantial overlap with matters in the bankruptcy court.  *See, e.g.*, *Enron Power Mktg., Inc.* v. *City of Santa Clara* (*In re Enron Power Mktg.*), 2003 WL 68036, at *10 (S.D.N.Y. Jan. 8, 2003) (denying withdrawal motion where the case at issue and other cases in the bankruptcy court "all involve a defendant . . . that has allegedly breached a master agreement by failing to pay plaintiff and/or its affiliates certain termination payments").

Even the Trustee's *core* claims against JPMorgan have only a limited connection to the Trustee's unrelated clawback claims against other parties.  Although JPMorgan was allegedly a subsequent transferee of withdrawals made by certain feeder funds, the Trustee's claims against the feeder funds are easily divisible from the claims against JPMorgan.  Indeed, the Trustee does not even argue that the claims against the feeder funds should be consolidated with the claims against JPMorgan.

Finally, this case is easily distinguished from *In re Fairfield Sentry Ltd.*, 2010 WL 4910119 (S.D.N.Y. Nov. 22, 2010).  In that case, the district court determined that it would be premature to withdraw the reference in order to render a decision on the threshold procedural issue of whether the actions should be remanded to state court.  Here, in contrast, JPMorgan is seeking withdrawal of the reference so that this Court can address the substantive merits of an array of non-core claims.

## CONCLUSION

For the reasons set forth above and in the opening brief, the Trustee's lawsuit against JPMorgan belongs in an Article III court.  To resolve this dispute, the Court will need to engage in significant interpretation not only of SIPA and SLUSA, as in the *HSBC* case, but also

of federal banking law that the Trustee has broadly invoked.  In addition, the Trustee's non-core

claims dominate this proceeding, and those claims raise fundamental questions for banks that

should be determined by this Court.


Dated:      New York, New York
            April 18, 2011

                                        Respectfully submitted,

*Of counsel:*                           WACHTELL, LIPTON, ROSEN & KATZ

Amy R. Wolf
Douglas K. Mayer                        By:  /s/ John F. Savarese
Stephen R. DiPrima                           John F. Savarese
Emil A. Kleinhaus
Meredith L. Turner                      51 West 52nd Street
                                        New York, NY  10019
                                        Telephone:  (212) 403-1000
                                        Facsimile:  (212) 403-2000

                                        *Attorneys for Defendants JPMorgan Chase & Co.,*
                                        *JPMorgan Chase Bank, N.A., J.P. Morgan Securities*
                                        *LLC and J.P. Morgan Securities Ltd.*