# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

          Plaintiff,

          v.

JPMORGAN CHASE & CO., JPMORGAN
CHASE BANK, N.A., J.P. MORGAN
SECURITIES LLC, and J.P. MORGAN
SECURITIES LTD.,

          Defendants.

---

11 Civ. 913 (CM)

<br><br>

## REPLY BRIEF IN SUPPORT OF JPMORGAN'S MOTION
## TO DISMISS THE TRUSTEE'S AMENDED COMPLAINT

<br><br><br>

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
(212) 403-1000

*Attorneys for Defendants JPMorgan Chase & Co.,
JPMorgan Chase Bank, N.A., J.P. Morgan Securities
LLC and J.P. Morgan Securities Ltd.*

Dated:  September 16, 2011

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 5

POINT I   THE BANKRUPTCY CODE DOES NOT GRANT THE
TRUSTEE STANDING TO BRING COMMON LAW CLAIMS
ON BEHALF OF CUSTOMERS ........................................................... 5

    A.   *Caplin* and *Wagoner* foreclose the Trustee's theory of standing ............................ 5

    B.   *St. Paul* is consistent with *Caplin* and *Wagoner* and does not
support the Trustee's position ................................................................. 8

    C.   Section 544(a) of the Bankruptcy Code does not permit the Trustee
to bring creditor damages claims ............................................................ 14

        1.   The language and structure of section 544(a) refute
the Trustee's position ............................................................... 14

        2.   The history of section 544(a) refutes the Trustee's position and
shows that *Caplin* is still controlling ........................................ 20

    D.   Section 544(a) of the Bankruptcy Code does not permit the Trustee
to assert BMIS's damages claims ............................................................ 22

POINT II   SIPA DOES NOT GRANT THE TRUSTEE STANDING TO
BRING COMMON LAW CLAIMS ON BEHALF OF
CUSTOMERS ...................................................................................... 25

    A.   The Trustee lacks standing as a bailee ..................................................... 26

        1.   *Redington* is not good law ....................................................... 26

        2.   Even if *Redington* were good law, the Trustee lacks bailee
standing; a thief is not a bailee ................................................. 28

        3.   The Trustee cannot sue as the bailee of a "Customer Property
estate." ................................................................................... 29

    B.   The Trustee lacks standing as a subrogee .................................................. 31

    C.   The Trustee lacks standing as an assignee .................................................. 33

POINT III      THE TRUSTEE'S COMMON LAW CLAIMS ARE
PRECLUDED BY SLUSA ................................................................ 33

    A.    The Trustee's arguments about the policies and objectives of
SLUSA are irrelevant and inaccurate .................................................33

    B.    This is a covered class action.............................................................34

    C.    The Amended Complaint alleges misrepresentations or omissions
in connection with the purchase or sale of covered securities.............38

POINT IV     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM
FOR CONTRIBUTION ................................................................... 43

    A.    SIPA precludes the Trustee's contribution claim ...............................44

    B.    The Trustee fails to state a contribution claim under New York law ...45

POINT V      THE AMENDED COMPLAINT FAILS TO STATE CLAIMS
THAT JPMORGAN AIDED AND ABETTED MADOFF'S
PONZI SCHEME ............................................................................ 48

    A.    The Trustee has failed to plead particularized facts raising a strong
inference of actual knowledge ............................................................48

    B.    The Trustee's attempts to dilute the actual knowledge standard are
unavailing.............................................................................................52

    C.    The Trustee has failed to plead the other essential elements of his
aiding and abetting claims ..................................................................58

POINT VI     THE AMENDED COMPLAINT FAILS TO STATE CLAIMS
FOR CONVERSION, AIDING AND ABETTING
CONVERSION OR UNJUST ENRICHMENT ................................. 60

    A.    The Amended Complaint fails to state claims for conversion or
aiding and abetting conversion ...........................................................60

    B.    The Amended Complaint fails to state a claim for unjust
enrichment............................................................................................61

POINT VII    THE TRUSTEE HAS NO VALID CLAIM FOR "FRAUD ON
THE REGULATOR." ...................................................................... 63

POINT VIII   THE TRUSTEE'S CLAIMS TO AVOID PAYMENTS TO
JPMORGAN SHOULD BE DISMISSED .......................................... 66

    A.    The Trustee cannot avoid BMIS's loan repayments............................67

    1.      As acts of setoff, the loan repayments are not avoidable..........................67

    2.      The loan repayments are not avoidable because they discharged
            secured debts............................................................................................70

    3.      The Trustee's claims to avoid the loan repayments are barred by
            *Sharp International*..................................................................................70

    B.      BMIS's loan obligations and grants of liens are not avoidable ..........................71

CONCLUSION............................................................................................................ 74

# TABLE OF AUTHORITIES

## Cases

*Aetna Life and Cas. Co.* v. *Union Trust Co.*,
230 Conn. 779 (1994) ............................................................. 55

*Aktieselskabet Christianssand* v. *Fed. S.S. Corp.*,
201 N.Y.S. 504 (Sup. Ct. N.Y. Co. 1923) ................................ 17 n.3

*Alberts* v. *Tuft (In re Greater Southeast Comm. Hosp. Corp.)*,
333 B.R. 506 (Bankr. D.D.C. 2005) .............................. 14, 16, 18 n.4, 20, 23, 24-25

*Alexander & Jones* v. *Sovran Bank, N.A. (In re Nat Warren Contracting Co.)*,
905 F.2d 716 (4th Cir. 1990) .................................................. 69

*Allen* v. *Puritan Trust Co.*,
211 Mass. 409 (1912) ............................................................. 55

*Alside, Inc.* v. *Spancrete Northeast, Inc.*,
84 A.D.2d 616 (3d Dep't 1981) .............................................. 46

*American Tissue, Inc.* v. *Donaldson, Lufkin & Jenrette Securities*,
351 F. Supp. 2d 79 (S.D.N.Y. 2004) ....................................... 8

*Andrulonis* v. *U.S.*,
26 F.3d 1224 (2d Cir. 1994) ............................................. 46, 46-47

*Anwar* v. *Fairfield Greenwich*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) .................................... 40

*Baillie Lumber Co.* v. *Thompson (In re Icarus Holding, LLC)*,
391 F.3d 1315 (11th Cir. 2004) ......................................... 11, 14

*Bank of New York* v. *Treco (In re Treco)*,
240 F.3d 148 (2d Cir. 2001) ................................................. 67

*Barron* v. *Igolnikov*,
2010 WL 882890 (S.D.N.Y. Mar. 10, 2010) ......................... 42-43

*Bennett Funding Grp., Inc.* v. *Official Comm. of Unsecured Creditors
(In re Bennett Funding Group, Inc.)*,
146 F.3d 136 (2d Cir. 1998) ................................................. 68

*Best Van Lines, Inc.* v. *Walker*,
490 F.3d 239 (2d Cir. 2007) .............................................. 28 n.7

*Bischoff* v. *Yorkville Bank*,
218 N.Y. 106 (1916) ........................................................ 55, 56

*Bonham* v. *Coe*,
249 A.D. 428 (4th Dep't 1937) ........................................ 54-55

*Bridge* v. *Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) ........................................................ 64-65

*Buckman Co.* v. *Plaintiffs' Legal Committee*,
531 U.S. 341 (2001)..........................................................................63, 65, 66

*Butner* v. *United States*,
440 U.S. 48 (1979)........................................................................................15

*Cal. Pub. Emps.' Ret. Sys.* v. *Worldcom, Inc.*,
368 F.3d 86 (2d Cir. 2004)...........................................................................17

*Canney* v. *Merchants Bank (In re Canney)*,
284 F.3d 362 (2d Cir. 2002).....................................................................15, 18

*Caplin* v. *Marine Midland Grace Trust Co.*,
406 U.S. 416 (1972).........................................1, 2, 6, 8, 9, 10, 14, 18, 20, 22

*Carmona* v. *Spanish Broadcasting System, Inc.*,
2009 WL 890054 (S.D.N.Y. Mar. 30, 2009) ...............................................62

*Cement & Concrete Workers District Council Welfare Fund* v. *Lollo*,
148 F.3d 194 (2d Cir. 1998)..........................................................................64

*CFTC* v. *Walsh*,
618 F.3d 218 (2d Cir. 2010)..........................................................................73

*Chaney* v. *Dreyfus Serv. Corp.*,
595 F.3d 219 (5th Cir. 2010) .............................................................52-53, 55, 56

*Chem. Bank* v. *Ettinger*,
602 N.Y.S.2d 332 (1st Dep't 1993) ..............................................................60

*Collins* v. *Kohlberg & Co. (In re Sw. Supermarkets, LLC)*,
325 B.R. 417 (Bankr. D. Ariz. 2005).............................................................16

*Cox* v. *Microsoft Corp.*,
778 N.Y.S.2d 147 (1st Dep't 2004) ...............................................................62

*Credit Agricole Indosuez* v. *Rossiyskiy Kredit Bank*,
94 N.Y.2d 541 (2000) ...............................................................................23 n.6

*D.M. Rothman & Co.* v. *Korea Commercial Bank*,
411 F.3d 90 (2d Cir. 2005)............................................................................54

*Dale* v. *Ala Acquisitions*,
2008 WL 918138 (S.D. Miss. Mar. 31, 2008) ..........................................55-56

*Delgado Oil Co., Inc.* v. *Torres*,
785 F.2d 857 (10th Cir. 1986) ......................................................................19

*Devaney* v. *Chester*,
813 F.2d 566 (2d Cir. 1987)......................................................................51 n.13

*Dreieck Finanz AG* v. *Sun*,
1989 WL 96626 (S.D.N.Y. Aug. 14, 1989) ..................................................62

*E.F. Hutton & Co., Inc.* v. *Hadley*,
901 F.2d 979 (11th Cir. 1990) ..................................................................18, 20

*Eastman Kodak Co.* v. *Camarata*,
    2006 WL 3538944 (W.D.N.Y. Dec. 6, 2006)................................................. 60-61

*Edwards & Hanly* v. *Wells Fargo*,
    602 F.2d 478 (2d Cir. 1979)................................................................... 59

*Fisher* v. *Am. Nat'l Bank and Trust Co. (In re Elite Marketing Enterprises, Inc.)*,
    2001 WL 1669229 (Bankr. N.D. Ill. Dec. 13, 2001)........................................ 19

*Fundacion Museo de Arte Contemporaneo de Caracas-Sofia Imber* v.
    *CBI-TDB Union Bancaire Privee*,
    160 F.3d 146 (2d Cir. 1998).................................................................. 60

*Geltzer* v. *Mooney (In re MacMenamin's Grill Ltd.)*,
    450 B.R. 414 (Bankr. S.D.N.Y. 2011)......................................................... 25

*Gerrity Co., Inc.* v. *Bonacquisti Const. Corp.*,
    156 A.D.2d 800 (3d Dep't 1989)......................................................... 69 n.17

*Goldin* v. *Primavera (In re Granite Partners, L.P.)*,
    194 B.R. 318 (Bankr. S.D.N.Y. 1996)..................................................... 14, 18

*Gowan* v. *Wachovia Bank, N.A. (In re Dreier LLP)*,
    2011 WL 3319711 (Bankr. S.D.N.Y. Aug. 3, 2011)........................................ 72-73

*Grace* v. *Corn Exchange Bank*,
    287 N.Y. 94 (1941)......................................................................... 57, 58

*Grippo* v. *Perazzo*,
    357 F.3d 1218 (11th Cir. 2004).............................................................. 42

*HBE Leasing Corp.* v. *Frank*,
    48 F.3d 623 (2d Cir. 1995)............................................................ 71, 72, 73

*Heffernan* v. *Marine Midland Bank*,
    267 A.D.2d 83 (1st Dep't 1999)......................................................... 55 n.14

*Henry* v. *Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co.)*,
    471 F.3d 977 (9th Cir. 2006)................................................................ 70

*Hill* v. *Day (In re Today's Destiny, Inc.)*,
    388 B.R. 737 (Bankr. S.D. Tex. 2008)................................................... 46 n.11

*Hill* v. *Gibson Dunn & Crutcher (In re MS55, Inc.)*,
    2007 WL 2669150 (D. Colo. Sept. 6, 2007)................................................ 18, 19

*Hirsch* v. *Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995).................................... 1, 6-7, 7, 8, 9, 10, 12, 14, 29

*Holmes* v. *SIPC*,
    503 U.S. 258 (1992)......................................................................... 27

*Home Savings of Am.* v. *Amoros*,
    233 A.D.2d 35 (1st Dep't 1997).............................................................. 54

*In re Agape Litig.*,
    681 F. Supp. 2d 352 (E.D.N.Y. 2010)................................................. 53, 54, 55

*In re Agape Litig.*,
  773 F. Supp. 2d 298 (E.D.N.Y. 2011) ................................................ 4, 49, 51

*In re Beacon Assocs. Litig.*,
  745 F. Supp. 2d 386 (S.D.N.Y. 2010) .................................................. 39-40

*In re BLMIS*,
  2011 WL 3568936 (2d Cir. Aug. 16, 2011) ........................................ 30, 43

*In re Gen. Assignment for Benefit of Creditors of Tiffany Lingerie, Inc.*,
  208 N.Y.S.2d 471 (Sup. Ct. Kings Co. 1960) ........................................... 68

*In re J.P. Jeanneret Assocs. Inc.*,
  769 F. Supp. 2d 340 (S.D.N.Y. 2011) ...................................................... 42

*In re Kingate Mgmt. Ltd. Litig.*,
  2011 WL 1362106 (S.D.N.Y. Mar. 30, 2011) ...................................... 40, 42

*In re MV Sec., Inc.*,
  48 B.R. 156 (Bankr. S.D.N.Y. 1985) .................................................... 45-46

*In re Nat'l Century Fin. Enters., Inc.*,
  2011 WL 1397813 (S.D. Ohio Apr. 12, 2011) ......................................... 70

*In re Ozark Restaurant Equipment Co., Inc.*,
  816 F.2d 1222 (8th Cir. 1987) ........................................................... 18, 20

*In re Stanwich Financial Services Corp.*,
  317 B.R. 224 (Bankr. D. Conn. 2004) ..................................................... 12

*In re Texaco Inc.*,
  73 B.R. 960 (Bankr. S.D.N.Y. 1987) ....................................................... 67

*Ingalls* v. *Gressett*,
  326 F. App'x 838 (5th Cir. 2009) ...................................................... 18, 20

*Instituto de Prevision Militar* v. *Merrill Lynch*,
  546 F.3d 1340 (11th Cir. 2008) ......................................................... 41, 42

*Kagan* v. *K-Tel Entm't, Inc.*,
  172 A.D.2d 375 (1st Dep't 1991) ............................................................ 63

*Kagan* v. *Saint Vincents Catholic Med. Ctrs. of N.Y.*
  *(In re Saint Vincents Catholic Med.)*,
  449 B.R. 209 (S.D.N.Y. 2011) ......................................................... 13 n.2

*Kalnit* v. *Eichler*,
  264 F.3d 131 (2d Cir. 2001) ................................................................... 52

*KBL Corp.* v. *Arnouts*,
  646 F. Supp. 2d 335 (S.D.N.Y. 2009) ..................................................... 45

*Keene Corp.* v. *Coleman*,
  164 B.R. 844 (Bankr. S.D.N.Y. 1994) ..................................................... 19

*Kirschner* v. *Bennett*,
  648 F. Supp. 2d 525 (S.D.N.Y. 2009) ..................................................... 60

*Kirschner* v. *Grant Thornton LLP*,
  2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009),
  *aff'd*, 626 F.3d 673 (2d Cir. 2010) ................................................................ 24, 48

*Kleven* v. *Stewart (In re Myers)*,
  320 B.R. 667 (Bankr. N.D. Ind. 2005) ........................................................... 16-17

*Koch Refining* v. *Farmers Union Cent. Exch., Inc.*,
  831 F.2d 1339 (7th Cir. 1987) ................................................................ 12, 19, 24

*Lander* v. *Hartford Life & Annuity Ins. Co.*,
  251 F.3d 101 (2d Cir. 2001) ........................................................................... 34

*LaSala* v. *Bank of Cyprus*,
  510 F. Supp. 2d 246 (S.D.N.Y. 2007) ................................................................ 37

*LaSala* v. *Bordier et Cie*,
  519 F.3d 121 (3d Cir. 2008) ...................................................................... 36, 37

*LaSala* v. *UBS, AG*,
  510 F. Supp. 2d 213 (S.D.N.Y. 2007) ............................................................ 37, 41

*Lee* v. *Bankers Trust Co.*,
  166 F.3d 540 (2d Cir. 1999) ........................................................................... 50

*Lee* v. *Marsh & McLennan*,
  2007 WL 704033 (S.D.N.Y. Mar. 7, 2007) ......................................................... 37

*Lehman Bros., Inc.* v. *Wu*,
  294 F. Supp. 2d 504 (S.D.N.Y. 2003) ............................................................... 44

*Lerner* v. *Fleet Bank*,
  459 F.3d 273 (2d Cir. 2006) .................................................................. 53, 54, 56

*Levinson* v. *PSCC Servs.*,
  2009 WL 5184363 (D. Conn. Dec. 23, 2009) ...................................................... 40

*Lewis* v. *Mfrs. Nat'l Bank*,
  364 U.S. 603 (1961) ...................................................................... 16, 21, 22

*Lippe* v. *Bairnco Corp.*,
  249 F. Supp. 2d 357 (S.D.N.Y. 2003),
  *aff'd*, 99 F. App'x 274 (2d Cir. 2004) ............................................................. 66

*Litwin* v. *American Exp. Co.*,
  838 F. Supp. 855 (S.D.N.Y. 1993) ................................................................. 16

*LNC Investments Inc.* v. *First Fid. Bank, N.A.*,
  935 F. Supp. 1333 (S.D.N.Y. 1996) ............................................................... 45

*LoPresti* v. *Terwilliger*,
  126 F.3d 34 (2d Cir. 1997) ........................................................................... 60

*Luster* v. *Greenhill Capital Partners (In re CLK Energy Partners, LLC)*,
  2011 WL 1312275 (Bankr. W.D. La. Mar. 31, 2011) ............................................. 17

*Mandelbaum* v. *Fiserv, Inc.*,
　2011 WL 1225549 (D. Colo. Mar. 29, 2011) ...................................................... 42

*McHale* v. *Avarez (In re The 1031 Tax Grp., LLC)*,
　397 B.R. 670 (Bankr. S.D.N.Y. 2008) ............................................................... 14

*Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*,
　547 U.S. 71 (2006) ...................................................................................... 34, 42

*Mfrs. Hanover Trust Co.* v. *Chem. Bank*,
　160 A.D.2d 113 (1st Dep't 1990) ....................................................................... 61

*Minihane* v. *Weissman (In re Empire Blue Cross and Blue Shield Customer Litigation)*,
　622 N.Y.S.2d 843 (Sup. Ct. N.Y. Co. 1994) ................................................. 63, 64

*Mishkin* v. *Peat, Marwick, Mitchell & Co.*,
　744 F. Supp. 531 (S.D.N.Y. 1990) ........................................... 27, 28, 31, 32

*MLSMK Inv. Co.* v. *JP Morgan Chase & Co.*,
　737 F. Supp. 2d 137 (S.D.N.Y. 2010) ................................................................ 54

*MLSMK Inv. Co.* v. *JP Morgan Chase & Co.*,
　2011 WL 2176152 (2d Cir. June 6, 2011) .......................................... 53, 56-57, 58

*Molchatsky* v. *U.S.*,
　2011 WL 1471798 (S.D.N.Y. Apr. 19, 2011) ..................................................... 50

*Montague* v. *Metro Auto Xpress, LLC (In re Am. Remanufacturers, Inc.)*,
　2008 WL 2909871 (Bankr. D. Del. July 25, 2008) ............................................. 67

*Morrison* v. *Nat'l Australia Bank Ltd.*,
　130 S. Ct. 2869 (2010) ............................................................................... 28 n.7

*Muller-Paisner* v. *TIAA*,
　289 F. App'x 461 (2d Cir. 2008) ....................................................................... 64

*Musso* v. *Ostashko*,
　468 F.3d 99 (2d Cir. 2006) ............................................................................... 16

*National R.R. Passenger Corp.* v. *Nat'l Ass'n of R.R. Passengers*,
　414 U.S. 453 (1974) ......................................................................................... 28

*Nevin* v. *Citibank*,
　107 F. Supp. 2d 333 (S.D.N.Y. 2000) ......................................................... 50 n.12

*Newman* v. *Family Mgmt.*,
　748 F. Supp. 2d 299 (S.D.N.Y. 2010) ............................................................... 40

*Newton* v. *Scott (In re Bohenko Estate)*,
　254 A.D. 140 (4th Dep't 1938) ......................................................................... 54

*Nisselson* v. *Empyrean Investment Fund, L.P. (In re MarketXT Holdings Corp.)*,
　376 B.R. 390 (Bankr. S.D.N.Y. 2007) ............................................................... 25

*Nw. Airlines, Inc.* v. *Transp. Workers Union of Am., AFL-CIO*,
　451 U.S. 77 (1981) ........................................................................................... 45

*Official Comm. of Unsecured Creditors of Enron Corp.* v. *Martin*
  (*In re Enron Creditors Recovery Corp.*),
  376 B.R. 442 (Bankr. S.D.N.Y. 2007) ..................................................................... 69

*OFSI Fund II, LLC* v. *Canadian Imperial Bank of Commerce*,
  82 A.D.3d 537 (1st Dep't 2011) ......................................................................... 23 n.6

*Parks* v. *ABC, Inc.*,
  2008 WL 205205 (S.D.N.Y. Jan. 24, 2008) ............................................................. 61

*Peoples Westchester Sav. Bank* v. *FDIC*,
  961 F.2d 327 (2d Cir. 1992) ............................................................................... 68-69

*Pereira* v. *Farace*,
  413 F.3d 330 (2d Cir. 2005) .................................................................................. 7, 12

*Picard* v. *HSBC Bank PLC*,
  2011 WL 3200298 (S.D.N.Y. July 28, 2011) ................................................... passim

*Picard* v. *JPMorgan Chase & Co.*,
  2011 WL 2119720 (S.D.N.Y. May 23, 2011) ............................... 5-6, 35, 36, 37

*Picard* v. *Merkin* (*In re Bernard L. Madoff Investment Securities LLC*),
  440 B.R. 243 (Bankr. S.D.N.Y. 2010), *leave for appeal denied*,
  Slip Op. No. 11-MC-00012 (S.D.N.Y. Aug. 31, 2011) ................................ 71 n.18

*Piccoli A/S* v. *Calvin Klein Jeanswear Co.*,
  19 F. Supp. 2d 157 (S.D.N.Y. 1998) ................................................................... 62-63

*Pittsburg Carbon Co.* v. *McMillin*,
  119 N.Y. 46 (1890) ...................................................................................................... 25

*Plantronics, Inc.* v. *U.S.*,
  1990 WL 3202 (S.D.N.Y. Jan. 9, 1990) ................................................................... 46

*PPI Enterprises (U.S.), Inc.* v. *Del Monte Foods Co.*,
  2003 WL 22118977 (S.D.N.Y. Sept. 11, 2003) ....................................................... 45

*Proctor* v. *Vishay Intertech. Inc.*,
  584 F.3d 1208 (9th Cir. 2009) ................................................................................... 41

*Redington* v. *Touche Ross & Co.*,
  592 F.2d 617 (2d Cir. 1978), *rev'd*, 442 U.S. 560 (1979),
  *on remand*, 612 F.2d 68 (2d Cir. 1979) ............................... 26, 27, 28, 29, 30, 32

*Renner* v. *Chase Manhattan Bank*,
  1999 WL 47239 (S.D.N.Y. Feb. 3, 1999) ......................................... 53, 54, 55, 56

*Renner* v. *Chase Manhattan Bank*,
  2000 WL 781081 (S.D.N.Y. June 16, 2000) .............................................................. 4

*RGH Liquidating Trust* v. *Deloitte & Touche LLP*,
  2011 N.Y. LEXIS 1703 (N.Y. June 23, 2011) .................................................. 37, 38

*Romano* v. *Kazacos*,
  609 F.3d 512 (2d Cir. 2010) ...................................................................................... 39

*Rosenman Family, LLC* v. *Picard*,
   395 F. App'x 766 (2d Cir. 2010) ............................................................... 30

*Rosner* v. *Bank of China*,
   2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008) .................................... 4, 52, 58

*Rosner* v. *Bank of China*,
   349 F. App'x 637 (2d Cir. 2009) ..................................................... 4, 48, 52

*Ryan* v. *Hunton & Williams*,
   2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) ........................................ 49

*Saltz* v. *First Frontier, LP*,
   2010 WL 5298225 (S.D.N.Y. Dec. 23, 2010) ........................................ 50

*Savage & Assocs., P.C.* v. *BLR Servs. SAS (In re Teligent, Inc.)*,
   307 B.R. 744 (Bankr. S.D.N.Y. 2004) ............................................. 14, 18

*Schlossberg* v. *Barney*,
   380 F.3d 174 (4th Cir. 2004) ................................................................. 17

*Schmidt* v. *Fleet Bank*,
   1998 WL 47827 (S.D.N.Y. Feb. 4, 1998) ............................................... 52

*Schreibman* v. *Chase Manhattan Bank*,
   15 A.D.2d 769 (1st Dep't 1962) ...................................................... 69 n.17

*SEC* v. *Cohmad Sec. Corp.*,
   2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) ............................................ 59

*SEC* v. *Zandford*,
   535 U.S. 813 (2002) ................................................................... 39, 42

*Sharp International Corp.* v. *State Street Bank & Trust Co.*,
   403 F.3d 43 (2d Cir. 2005) ....................................................... 58, 70, 71

*Shearson Lehman Hutton, Inc.* v. *Wagoner*,
   944 F.2d 114 (2d Cir. 1991)................. 1, 2, 3, 6, 7, 8, 9, 10, 12, 14, 19, 22, 24, 25, 29, 47-48

*Sigmon* v. *Miller-Sharpe (In re Miller)*,
   197 B.R. 810 (W.D.N.C. 1996) ..................................................... 18 n.4, 20

*Silverman* v. *Actrade Capital, Inc. (In re Actrade Financial Technologies Ltd.)*,
   337 B.R. 791 (Bankr. S.D.N.Y. 2005) ................................................ 71 n.18

*SIPC* v. *BDO Seidman, LLP*,
   49 F. Supp. 2d 644 (S.D.N.Y. 1999)...................................................... 31

*SIPC* v. *BDO Seidman, LLP*,
   222 F.3d 63 (2d Cir. 2000)........................................................ 27, 59, 65

*Smith* v. *Amherst Acres*,
   43 A.D.2d 792 (4th Dep't 1973) ........................................................... 24

*Smith* v. *Arthur Andersen*,
   421 F.3d 989 (9th Cir. 2005) ............................................................... 37

*Spehar* v. *Fuchs*,
   2003 WL 23353308 (S.D.N.Y. June 18, 2003) .................................................... 36

*Sperry* v. *Crompton Corp.*,
   8 N.Y.3d 204 (2007) ........................................................................................... 62

*St. Paul Fire and Marine Insurance Co.* v. *PepsiCo, Inc.*,
   884 F.2d 688 (2d Cir. 1989) .......................................................................... 2, 7-12

*Stanziale* v. *Pepper Hamilton LLP*,
   335 B.R. 539 (D. Del. 2005) ........................................................................... 18 n.4

*State Bank and Trust Co.* v. *Spaeth (In re Motorwerks, Inc.)*,
   371 B.R. 281 (Bankr. S.D. Ohio 2007) ........................................................... 18 n.4

*Steinberg* v. *Buczynski*,
   40 F.3d 890 (7th Cir. 1994) ............................................................................ 12, 13

*Steiner* v. *Mut. Alliance Trust Co. of N.Y.*,
   139 A.D. 645 (1st Dep't 1910) .............................................................................. 68

*Swezey* v. *Lynch*,
   926 N.Y.S.2d 415 (1st Dep't 2011) ...................................................................... 24

*T.D. Bank, N.A.* v. *JP Morgan Chase Bank, N.A.*,
   2010 WL 4038826 (E.D.N.Y. Oct. 14, 2010) ...................................................... 62

*Tese-Milner* v. *Beeler (In re Hampton Hotel Investors, L.P.)*,
   289 B.R. 563 (Bankr. S.D.N.Y. 2003) ................................................................ 8 n.1

*The Mediators, Inc.* v. *Manney (In re Mediators, Inc.)*,
   105 F.3d 822 (2d Cir. 1997) .................................................................................... 7

*Titan Real Estate Ventures* v. *M.J.C.C. Realty (In re Flanagan)*,
   373 B.R. 216 (Bankr. D. Conn. 2007) .................................................................. 25

*United States* v. *Speers*,
   382 U.S. 266 (1965) .............................................................................................. 21

*Utica Sheet Metal Corp.* v. *J. E. Schecter Corp.*,
   53 Misc. 2d 284 (Sup. Ct. Schenectady Co. 1967) ...................................... 69 n.17

*Voiland* v. *Marston*,
   417 B.R. 766 (Bankr. N.D. Ill. 2009) ............................................................. 18 n.4

*Wells* v. *Bank of New York Co.*,
   181 Misc. 2d 574 (Sup. Ct. N.Y. Co. 1999) ........................................................ 60

*Wickham Contracting Co.* v. *Local Union No. 3*,
   955 F.2d 831 (2d Cir. 1992) .......................................................................... 28 n.7

*Wolf Living Trust* v. *FM Multi-Strategy Investment Fund*,
   2010 WL 4457322 (S.D.N.Y. Nov. 2, 2010) ....................................................... 40

*Wornick* v. *Gaffney*,
   544 F.3d 486 (2d Cir. 2008) ................................................................................... 7

*Zilkha Energy Co.* v. *Leighton*,
   920 F.2d 1520 (10th Cir. 1990) ...................................................................... 19

**Rules and Statutes**

11 U.S.C. § 541 ............................................................................................ 10, 23

11 U.S.C. § 544(a) ........................................................................................ 1, 14-25

11 U.S.C. § 544(b) ........................................................................................ 17, 67

15 U.S.C. § 77p(b) ........................................................................................ 39

15 U.S.C. § 77p(f)(2)(A) ............................................................................... 35, 36

15 U.S.C. § 77p(f)(2)(C) ............................................................................... 38

15 U.S.C. § 78bb(f)(1) .................................................................................. 39

15 U.S.C. § 78bb(f)(5)(B) ............................................................................. 35, 36

15 U.S.C. § 78bb(f)(5)(D) ............................................................................. 38

15 U.S.C. § 78fff(f)(1) .................................................................................. 32

15 U.S.C. § 78fff-1(a) ................................................................................... 2

15 U.S.C. § 78fff-2(c) ................................................................................... 29, 45

15 U.S.C. § 78fff-3(a) ................................................................................... 31, 32

15 U.S.C. § 78lll(4) ....................................................................................... 3, 29, 30, 32 n.9

15 U.S.C. § 78lll(11) ..................................................................................... 3

17 C.F.R. § 240.15c3-3 ................................................................................. 31 n.8

31 U.S.C. § 5318(g)(3) ................................................................................. 50

N.Y. Banking Law § 9-g(3) .......................................................................... 68 n.16

N.Y. C.P.L.R. § 1401 .................................................................................... 45

N.Y. C.P.L.R. § 1402 .................................................................................... 46, 47

N.Y. Debt. & Cred. Law § 278(2) ................................................................. 73

N.Y. Gen. Bus. L. § 359-i ............................................................................. 58 n.15

N.Y. Gen. Bus. L. § 359-l .............................................................................58 n.15

Pub. L. 91-598 § 6(f)(1) (1970) .................................................................... 32

**Other Authorities**

1 Law of Debt. & Cred. § 5:11 (2011) ........................................................... 68

4B *Collier on Bankruptcy*
   ¶ 70.45 (14th ed. 1978) .............................................................................. 22

4B *Collier on Bankruptcy*
  ¶ 70.47 (14th ed. 1978) ................................................................................ 21 & n.5

5 *Collier on Bankruptcy*
  ¶ 544.01 (16th ed. 2011) .............................................................................. 15

5 Collier on Bankruptcy
  ¶ 544.03 (15th ed. rev. 2001) ....................................................................... 15

Steven E. Boyce, *Koch Refining* and *In re Ozark*:  The Chapter 7 Trustee's Standing to
  Assert an Alter Ego Cause of Action, 64 Am. Bankr. L. J. 315 (1990) ................................ 20

Vern Countryman, *The Use of State Law in Bankruptcy Cases (Part II)*,
  47 N.Y.U. L. Rev. 631 (1972) ........................................................................ 22

*In re Jett*, Securities Act Rel. No. 8395, Exchange Act Rel. No. 49366,
  2004 SEC LEXIS 504 (Mar. 5, 2004) ................................................................... 42

Frank R. Kennedy, *The Bankruptcy Amendments of 1966*,
  1 Ga. L. Rev. 149 (1967) ............................................................................ 22

N.Y. Jur. 2d (Creditors' Rights) § 403 .............................................................. 73

## PRELIMINARY STATEMENT

Faced with Judge Rakoff's ruling in *HSBC* that a SIPA trustee has no greater power than a bankruptcy trustee to bring damages claims on behalf of creditors, the Trustee argues for the first time that the *Bankruptcy Code* independently authorizes him to bring the claims of Madoff's customers.  This argument is so clearly wrong that the Trustee did not even make it to Judge Rakoff, nor did he make it to this Court in opposing withdrawal of the reference.

Since the Supreme Court's decision in *Caplin* v. *Marine Midland*, 406 U.S. 416 (1972), it has been settled law that a trustee for a bankrupt corporation does not have power to assert claims belonging to the debtor's creditors.  The Second Circuit has strictly adhered to this law, holding categorically that a bankruptcy trustee may *not* "sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself."  *Shearson Lehman Hutton, Inc.* v. *Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991); *Hirsch* v. *Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995).

The Trustee asserts that he nonetheless has standing to bring customer claims under section 544(a) of the Bankruptcy Code, which endows a trustee with the rights of a "creditor that extends credit to the debtor at the time of the commencement of the case."  11 U.S.C. § 544(a).  But Madoff's defrauded customers never "extended credit" to BMIS, and their damages claims arose *before* the "commencement" of BMIS's bankruptcy.  In accordance with *Caplin* and *Wagoner*, courts in this Circuit and elsewhere have repeatedly held that section 544(a)'s limited grant of power to a trustee does *not* include the power to pursue damages claims on behalf of creditors.  The Trustee proclaims that all of those courts were mistaken because "the predecessor to section 544(a), section 70c of the Bankruptcy Act, was not in effect when the

*Caplin* liquidation commenced." Tr. Br. 39.  But it is the Trustee who is mistaken.  The predecessor to section 544(a) *was* indeed in effect when the *Caplin* liquidation commenced, and yet the Supreme Court still held that a trustee may not aggregate and pursue creditor claims.

   The Trustee also invokes the Second Circuit's decision in *St. Paul Fire and Marine Insurance Co.* v. *PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989), in which the Second Circuit held that a bankruptcy trustee — as opposed to an individual creditor — had standing to pursue a veil-piercing claim against the bankrupt company's parent.  But in *St. Paul*, the Second Circuit concluded that the claim at issue belonged to *the debtor*, because "under Ohio law, a corporation would be able to assert an alter ego cause of action against its parent corporation."  *Id*. at 703.  Creditors, by contrast, lacked Article III standing to pursue the claim, because only the debtor suffered direct harm.  *Id*. at 704.  Here, unlike in *St. Paul*, the Trustee is attempting to bring damages claims that belong to *customers*, not a veil-piercing claim that belongs to the *debtor*.  And even if the Trustee were bringing claims that belong to BMIS, he would still lack standing under *Wagoner*, because the Trustee is standing in the shoes of a thief.

   Despite Judge Rakoff's decision in *HSBC* — and despite the language in SIPA stating that a trustee "shall be vested with *the same* powers" as a bankruptcy trustee, 15 U.S.C. § 78fff-1(a) (emphasis added) — the Trustee also persists in arguing that *SIPA* authorizes him to bring claims that are not available to a bankruptcy trustee.  In an attempt to avoid the legal obstacles of bringing damages claims on behalf of either BMIS or its customers, the Trustee asserts that, under SIPA, he is entitled to bring claims on behalf of something called a "Customer Property estate," a fictional entity invented by the Trustee that was not defrauded by Madoff and has no claims against anyone.  Judge Rakoff correctly rejected this novel theory.  Contrary to the Trustee's assertion, SIPA does not create some new legal person that has independent standing to

bring claims.  Rather, under the statute, "customer property" is simply that portion of the BMIS

estate to which customers have a priority claim.  *See* 15 U.S.C. §§ 78lll(4) and (11).

Even as the Trustee's theories of standing have become still more convoluted,

SLUSA continues to provide a wholly independent basis for dismissal of the Trustee's damages

claims.  The Trustee's main argument on SLUSA is that the statute was enacted to deal with

"strike suits" by shareholders rather than actions by trustees.  But the language of SLUSA, which

encompasses securities fraud claims brought "on behalf of" more than 50 injured parties,

imposes no such limitation.  In seeking (unsuccessfully) to avoid the reach of *Wagoner*, the

Trustee in this case has explicitly sought to step out of BMIS's tainted shoes; rather than

pursuing the claims of BMIS, he is purporting to bring individual securities fraud claims on

behalf of thousands of investors.  SLUSA prevents the Trustee — just as it would prevent a lead

plaintiff — from pursuing a mass action alleging securities fraud that is not based on federal

securities law.

Beyond these threshold issues, the Trustee has failed to state valid claims.  First,

as Judge Rakoff held in *HSBC*, the Trustee has not alleged a valid contribution claim.  The

Trustee is seeking contribution for payments made pursuant to SIPA, and, therefore, he must

look to federal law for any right of contribution.  SIPA, however, does *not* authorize a trustee to

seek contribution for distributions of customer property to customers.  Moreover, even if the

Trustee could look to New York law, the Trustee has not alleged a valid claim.  The Trustee has

no answer to the statutory requirement that a contribution claim be based on "liability for

damages," not on a statutorily required return of customer property.  Nor can the Trustee defend

his failure to plead that BMIS has paid — or will *ever* pay — more than its "equitable share" of

tort liability.  The Trustee's talk of "impleader" is to no avail:  there has been no impleader here

and, in any event, an impleader would not relieve the Trustee of the requirement to plead and prove that BMIS will pay more than what it fairly owes.

The Trustee has also failed to allege facts to support his other claims. In opposing JPMorgan's motion, the Trustee once again publicly accuses people who work at JPMorgan of "complicity" in Madoff's crimes. But there is a massive gap between the Trustee's blustering accusations and the facts that he has actually alleged to support them. Despite taking extensive pre-trial discovery, the Trustee has still completely failed to allege facts showing that any individual at JPMorgan had actual knowledge of Madoff's fraud. The Trustee has also failed to present plausible claims. The Trustee's damages claims demand the absurd inference that JPMorgan deliberately joined with Bernard Madoff in a doomed-to-fail Ponzi scheme so that it could earn conventional banking fees from BMIS's checking account.

This is hardly the first time that an aggressive plaintiff has tried to hold a bank liable for a depositor's malfeasance. In case after case, however, courts have shut down attempts to impose liability based on "red flags" and allegations of what the banks "should have known." *See, e.g.*, *In re Agape Litig.*, 773 F. Supp. 2d 298 (E.D.N.Y. 2011); *Rosner* v. *Bank of China*, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F. App'x 637 (2d Cir. 2009); *Renner* v. *Chase Manhattan Bank*, 2000 WL 781081 (S.D.N.Y. June 16, 2000). The Trustee has no good answer to these cases, and the result should be the same here.

Finally, the Trustee has not presented a persuasive argument against dismissal of his claims to avoid the $145 million loan repayment. Unlike his clawback claims against redeemers of "fictitious profits," the Trustee here is seeking to avoid transactions that did *not* diminish the estate to the detriment of BMIS's customers and creditors. These transactions are not avoidable under New York's fraudulent conveyance statute.

-4-

# ARGUMENT

## POINT I

### THE BANKRUPTCY CODE DOES NOT GRANT THE TRUSTEE STANDING TO BRING COMMON LAW CLAIMS ON BEHALF OF CUSTOMERS.

The Trustee's lead argument in defense of his standing to bring common law claims against JPMorgan is that the *Bankruptcy Code* grants him such standing, regardless of anything in SIPA. Until the Trustee filed his opposition brief, this theory could be found, if at all, only in a cryptic phrase tacked on at the end of paragraph 20 of the Amended Complaint ("the Trustee has the rights and powers of any creditor under § 544 of the Bankruptcy Code"). Am. Compl. ¶ 20(j). The new theory was nowhere to be found in the Trustee's original complaint or in his and SIPC's lengthy briefing on JPMorgan's motion to withdraw the reference. It was also absent (apart from a throwaway reference) from the extensive briefing leading up to Judge Rakoff's decision in the *HSBC* case. And despite all of the litigation over standing in *Redington* and a multitude of other cases over more than 40 years since SIPA was enacted, the Trustee cites not one case that adopts his theory of bankruptcy standing for a SIPA trustee — which, if it had any validity, would have rendered all of those SIPA standing disputes moot. The Trustee's eleventh-hour theory is entirely wrong.

### A.      *Caplin* and *Wagoner* foreclose the Trustee's theory of standing.

In this case, the damages claims asserted by the Trustee are customer claims that seek to recover customer losses. The Trustee's fraud and aiding and abetting claims allege that customers suffered $19 billion in direct losses as a result of being defrauded in Madoff's Ponzi scheme. *See, e.g.*, Am. Compl. ¶¶ 506, 508, 520, 535, 583. Likewise, the Trustee's conversion and unjust enrichment claims allege that JPMorgan wrongfully took property that belonged to customers. *Id.* ¶¶ 538, 543, 557. Thus, as this Court already recognized, "the Trustee's

common-law claims are on behalf of BMIS customers, and not the BMIS estate." *Picard* v.

*JPMorgan Chase & Co.*, 2011 WL 2119720, at *6 (S.D.N.Y. May 23, 2011).

In arguing that he has the power under the *Bankruptcy Code* to assert these

customer claims, the Trustee must ignore controlling authority from the Supreme Court and the

Second Circuit squarely holding that he has no such power.  The Trustee's lack of standing to

bring claims belonging to customers begins with the Supreme Court's 1972 decision in *Caplin*.

In that case, the Supreme Court rejected a bankruptcy trustee's argument that federal bankruptcy

law "enables him to collect money" owed to creditors, ruling instead that the statute only

permitted the trustee to recover funds "owed to the estate."  406 U.S. at 428.  The Court

concluded that, despite the extensive legislation governing reorganizations, "nowhere in the

statutory scheme is there any suggestion that the trustee in reorganization is to assume the

responsibility of suing third parties on behalf of debenture holders."  *Id*.  The Court also

concluded that, as a matter of policy, permitting a bankruptcy trustee to sue on behalf of creditors

would present significant problems, including preclusion issues and infringement upon the rights

of creditors to make "their own assessment" about their claims.  *Id*. at 431-32.  *Caplin*, in sum,

establishes a rule under which a bankruptcy trustee may *not* bring "claims against third parties on

behalf of the estate's creditors," whether the claims belong to one creditor or many.  *Picard* v.

*HSBC Bank PLC*, 2011 WL 3200298, at *2 (S.D.N.Y. July 28, 2011) (citing *Caplin*).

The rule set forth in *Caplin* remains fully applicable under the Bankruptcy

Reform Act of 1978.  In the Second Circuit, "[i]t is well settled that a bankruptcy trustee has no

standing generally to sue third parties on behalf of the estate's creditors."  *Wagoner*, 944 F.2d at

118.  Rather, the trustee "stands in the shoes of the debtors, and can only maintain those actions

that the debtors could have brought prior to the bankruptcy proceedings."  *Hirsch* v. *Arthur*

*Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995); *accord Wornick* v. *Gaffney*, 544 F.3d 486,

490 (2d Cir. 2008); *Pereira* v. *Farace*, 413 F.3d 330, 342 (2d Cir. 2005); *The Mediators, Inc.* v.

*Manney (In re Mediators, Inc.)*, 105 F.3d 822, 825 (2d Cir. 1997).

      In analyzing whether a bankruptcy trustee has standing to bring causes of action,

"state law determines whether a right to sue belongs to the debtor or to the individual creditors."

*In re Mediators*, 105 F.3d at 825 (citing *St. Paul Fire & Marine Ins. Co.* v. *PepsiCo, Inc.*, 884

F.2d 688, 700 (2d Cir. 1989)).  If a cause of action belongs to creditors under state law, those

creditors "are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded

from doing so."  *Hirsch*, 72 F.3d at 1093, 1094.

      Based on these principles, the Second Circuit in *Wagoner* held that a bankruptcy

trustee had no standing to bring claims under New York law against a broker, Shearson Lehman,

for aiding and abetting the fraudulent investment activity of the bankrupt HMK Management

Corporation.  944 F.2d at 119-20.  The owner and president of HMK sold worthless notes to

members of his church and misappropriated the proceeds, trading stocks in the name of HMK

through a Shearson account.  *Id.* at 116. When HMK filed for bankruptcy, its trustee sued

Shearson for damages, alleging that Shearson aided the wrongdoer in his trading.  *Id.* at 117.

The Second Circuit held that that a trustee "has no power to assert a claim" if it is "not one

belonging to the bankrupt estate."  *Id*. at 118.  The Second Circuit then ruled that, to the extent

the trustee's "claim alleges money damages to the 'clients of HMK,' it belongs only to the

creditors and the trustee has no standing to assert it."  *Id*. at 119-20.

      Similarly, in *Hirsch*, the Second Circuit held that a bankruptcy trustee had no

standing to bring creditor claims against accounting firms that had provided services to Colonial

Realty, a real estate investment firm operated as a Ponzi scheme.  The Court concluded that

"Connecticut law has recognized the standing of creditors to maintain causes of action for negligence, breach of fiduciary duty, and fraud in precisely these circumstances."  72 F.3d at 1093.  As a result, "claims predicated upon the distribution of misleading [documents] to investors in Colonial limited partnerships are the property of those investors, and may be asserted only by them and to the exclusion of" the trustee.  *Id.* at 1094; *see also, e.g.*, *American Tissue, Inc.* v. *Donaldson, Lufkin & Jenrette Securities*, 351 F. Supp. 2d 79, 90 (S.D.N.Y. 2004) (Lynch, J.) ("Insofar as [the debtor] seeks to recover money owed to creditors, it lacks standing.").[1]

The Trustee's argument that the Bankruptcy Code authorizes the Trustee to bring the claims of BMIS creditors — customers in particular — is irreconcilable with these clear holdings of the Supreme Court and the Second Circuit.  In short, if the Trustee's argument were right, *Caplin*, *Wagoner* and *Hirsch* would all be wrong.  Each of the Trustee's specific arguments will be thoroughly addressed below, but nothing more than that really needs to be said.

**B.      *St. Paul* is consistent with *Caplin* and *Wagoner* and does not support the Trustee's position.**

The Trustee argues in his opposition brief that Judge Rakoff "failed to consider" *St. Paul Fire & Marine, Inc.* v. *PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989), and that *St. Paul* permits the Trustee to bring "generalized" claims belonging to creditors.  Tr. Br. 13, 40.  Neither the Trustee nor SIPC, however, ever so much as cited *St. Paul* to Judge Rakoff.  Nor did they

---

[1]  The Trustee mis-cites *Tese-Milner* v. *Beeler (In re Hampton Hotel Investors, L.P.)*, 289 B.R. 563 (Bankr. S.D.N.Y. 2003) — in which the court permitted a trustee to bring claims for aiding and abetting a breach of fiduciary duty owed to the *debtor* — as "belying" Judge Rakoff's decision in *HSBC*, Tr. Br. 11.  But the case simply applied *Wagoner* and *Hirsch*, under which a trustee is entitled to bring claims that belong to *the debtor*, subject to the Wagoner Rule.

cite the decision in opposing withdrawal of the reference in this proceeding.  The Trustee

fundamentally misreads *St. Paul*, creating a conflict with *Wagoner*, *Hirsch* and *Caplin* where

none exists.  *St. Paul* simply allowed a trustee to bring a veil-piercing claim that belonged to *the

debtor* under state law.  The case did *not* hold that a trustee could bring damages claims

belonging to *creditors*, as the Trustee is trying to do here.

    In *St. Paul*, PepsiCo brought a complaint against Banner Industries alleging that

Banner was an alter ego of Banner's subsidiary, Commercial Lovelace (CL), and that Banner

was therefore liable for CL's misdeeds, including its diversion of assets from a former PepsiCo

subsidiary, Lee Way, whose debts PepsiCo had guaranteed before the subsidiary was sold to CL.

At the same time, the bankruptcy trustee for the successor to CL and Lee Way brought his own

lawsuit against Banner, alleging that "the same acts identified by PepsiCo as causing harm to Lee

Way also caused harm to both the estate and the unsecured creditors, of whom PepsiCo [was]

one." *St. Paul*, 884 F.2d at 695.  The issue presented to the Second Circuit was whether PepsiCo

had standing to bring a veil-piercing claim against Banner or, alternatively, whether the trustee

alone had such standing.  *Id*. at 696.

    The Second Circuit explained that if PepsiCo's claims "are property of *the

debtor*" under state law, "*and therefore properly brought by the trustee*, and if PepsiCo has not

alleged a direct injury traceable to Banner, PepsiCo lacked standing to assert those claims." *Id*.

at 700 (emphasis added).  The Court went on to conclude that, "under Ohio law, a corporation

would be able to assert an alter ego cause of action against its parent corporation.  The cause of

action therefore becomes property of the estate of a bankrupt subsidiary, and is properly asserted

by the trustee in bankruptcy." *Id.* at 703-04.  By contrast, individual creditors such as PepsiCo

could *not* allege "the type of harm necessary to support a finding of standing," as PepsiCo only

alleged "that Banner's acts harmed a third party [the debtor subsidiary] and that that harm in turn led to PepsiCo's harm." *Id*. at 704. PepsiCo's claims, therefore, had to be dismissed for lack of standing. *Id*. at 705.

*St. Paul*, accordingly, is entirely consistent with the Second Circuit's subsequent holdings that a trustee "can only maintain those actions that *the debtors* could have brought prior to the bankruptcy proceedings." *Hirsch*, 72 F.3d at 1093 (emphasis added); *accord Wagoner*, 944 F.2d at 118. Indeed, the Second Circuit in *Hirsch* cited *St. Paul* with approval, refuting any notion that *St. Paul* is at odds with *Hirsch* and *Wagoner*. 72 F.3d at 1093.

Against this backdrop, the Trustee's myths about *St. Paul* can be easily dispelled. First, the Trustee is flatly wrong in asserting that *St. Paul* ruled — contrary to *Caplin* — that a trustee can bring fraud or other direct claims "on behalf of creditors." Tr. Br. 40. *St. Paul* distinguished *Caplin* to precisely the opposite effect: whereas *Caplin* involved claims brought on behalf of creditors, which thus could not be brought by the trustee, "if a cause of action is *property of the debtor*, the Bankruptcy Code explicitly gives the trustee the right to assert it on behalf of the estate" under section 541 of the Bankruptcy Code. *St. Paul*, 884 F.2d at 700 (emphasis added).

The Trustee is also wrong in his repeated assertions that *St. Paul* authorized the trustee there to bring creditor claims under section 544(a) of the Bankruptcy Code. Tr. Br. 28, 37, 39, 40-41. *St. Paul* says nothing to support the Trustee's misreading of section 544(a), which the next section of this brief debunks in detail. Rather, in ruling that the bankrupt debtor had standing to bring claims against Banner, the *St. Paul* court relied not on section 544(a) but on *section 541* of the Code, which creates an estate in bankruptcy encompassing "interests of *the debtor* in property." 11 U.S.C. § 541 (emphasis added); *see St. Paul*, 884 F.2d at 700 (citing

section 541); *see also Baillie Lumber Co.* v. *Thompson (In re Icarus Holding, LLC)*, 391 F.3d 1315, 1319 (11th Cir. 2004) (stating that *St. Paul* allowed a trustee "to bring an exclusive alter ego action . . . under section 541" rather than section 544).

   The Trustee grasps at two string-cite citations of section 544 in the *St. Paul* decision, but neither has any significance.  First, the Court preliminarily stated that "[u]nder the Bankruptcy Code, the bankruptcy trustee may bring claims founded, *inter alia*, on the rights of the debtor and on certain rights of the debtor's creditors, *see, e.g.*, 11 U.S.C. §§ 541, 544, 547." 884 F.2d at 700.  This string-cite does not even hint that section 544(a) provides a trustee with the right to assert creditor damages claims, and the very same paragraph says that causes of action are "properly brought by the trustee" if they are "property of the debtor."  *Id*.  Second, the Court later dropped a footnote to add that "[o]ur decision today goes no further than to say that causes of action that could be asserted by the debtor are property of the estate and should be asserted by the trustee, as should causes of action such as those that fall under 11 U.S.C. §§ 544, 547, 548," *i.e.*, the Bankruptcy Code's avoidance provisions.  *Id*. at 702 n.3.  While the Trustee claims that this footnote string-cite operates to "correct" a statement in an earlier case that "[t]he Trustee in bankruptcy has standing to represent only the interests of the debtor corporation," nothing in the footnote supports that assertion; the footnote simply distinguishes *St. Paul* on the grounds that, in the earlier case, the *debtor corporation* did not suffer any injury.  Tr. Br. 40-41.

   The Trustee also seizes on dictum in *St. Paul* stating that where "a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by a creditor of the debtor, the trustee is the proper person to assert the claim."  Tr. Br. 13, 37 (quoting 884 F.2d at 701).  But the Second Circuit specified what it meant by a "general" claim: the veil-piercing claim asserted by PepsiCo belonged to *the debtor*, and thus would benefit *all*

creditors "secondar[il]y" and indirectly.  884 F.2d at 704.  For creditors to bring the claim

themselves, therefore, they would have to do so on a "derivative" basis.  *See id*. at 697 (citing

with approval Seventh Circuit decision stating that if "'rights of action . . . can be enforced by

either the corporation directly or the shareholders derivatively before bankruptcy,' those actions

properly are asserted by the bankruptcy trustee" (quoting *Koch Refining* v. *Farmers Union Cent.

Exch., Inc.*, 831 F.2d 1339, 1343 (7th Cir. 1987)).

> This limited import of *St. Paul*'s language regarding "general" claims was

definitively confirmed by *Pereira* v. *Farace*, 413 F.3d 330 (2d Cir. 2005), in which the Second

Circuit squarely rejected precisely the argument made by the Trustee here:

> The Trustee argues, and the district court agreed, that . . . the Trustee
> could bring a claim for breach of the duty of care on behalf of the
> creditors, rather than the corporation.  The court reasoned that "where
> the injury is to all creditors as a class, it is the creditors who lack
> standing and the Trustee who may bring a claim based on that
> generalized injury."  While this proposition may be true — *because
> claims that injure all creditors as a class normally belong to the
> corporation* — it does *not* imply that the Trustee's rights are greater than
> the rights the corporation would have against malfeasant directors.

*Id*. at 342 (emphasis added) (citations to *St. Paul* and other cases omitted).  Along with *Wagoner*

and *Hirsch*, *Pereira* makes clear that a trustee's rights to sue third parties are limited to those of

the debtor corporation, and that a trustee may assert "general" claims only insofar as those claims

belong to *the debtor*.  *See also In re Stanwich Financial Services Corp.*, 317 B.R. 224, 228

(Bankr. D. Conn. 2004) ("*St. Paul* does not hold that a trustee has standing to pursue a claim

based solely on an allegation that creditors suffered a generalized harm.").

> The Seventh Circuit has similarly rejected the misreading of *St. Paul* that the

Trustee is pushing in this case.  In *Steinberg* v. *Buczynski*, 40 F.3d 890, 892 (7th Cir. 1994)

(Posner, J.), the Seventh Circuit ruled that a bankruptcy trustee lacked standing to bring a veil-

piercing claim that, in that instance, belonged to *creditors* under applicable law.  Citing *St. Paul*, the Court noted that "[w]e do not question the right of a trustee in bankruptcy to maintain a 'veil piercing' suit on behalf of *the bankrupt corporation*" where the claim belongs to the debtor.  As Judge Posner reasoned, "if a claim against the shareholders arising from their disregard of corporate formalities is the property of *the corporation*, then the trustee can sue; otherwise he cannot."  *Id.* (emphasis added).

Judge Posner went on to dismiss as "perfectly circular" the exact reasoning espoused by the Trustee here, which posits that because any recovery by the Trustee will benefit the estate and thus "all creditors," Tr. Br. 13, the Trustee has standing to bring creditor claims:

> The trustee argues that since he is, in fact, the plaintiff in this adversary proceeding . . ., any judgment he obtains will enure to the benefit of the bankrupt estate; he is therefore suing on behalf of the estate, as he is authorized to do.  This reasoning is perfectly circular.  Suppose a neighbor of the Buczynskis [the defendant] had slipped on ice in front of their house. Could the trustee sue the Buczynskis, on the theory that if the suit succeeded the proceeds of the suit would go to the bankrupt estate . . . ?  To ask the question is to answer it.

40 F.3d at 892.  Under Judge Posner's logic and the law of this Circuit, the Trustee's standing argument should be rejected here as well.[2]

---

[2]  *Kagan* v. *Saint Vincents Catholic Med. Ctrs. of N.Y. (In re Saint Vincents Catholic Med.)*, 449 B.R. 209 (S.D.N.Y. 2011) (Rakoff, J.), cited by the Trustee, did not hold that a trustee could bring creditor claims.  The case enjoined an action by a creditor that encroached on the trustee's power to bring *avoidance* claims that the trustee alone is entitled to assert under the Bankruptcy Code.  449 B.R. at 218.

**C.      Section 544(a) of the Bankruptcy Code does not permit
the Trustee to bring creditor damages claims.**

**1.      The language and structure of section 544(a)
refute the Trustee's position.**

The Trustee couples his distorted reading of *St. Paul* with an equally distorted

reading of section 544(a) of the Bankruptcy Code, which he interprets to authorize a bankruptcy

trustee to assert any claims available to creditors.  Tr. Br. 30-31.  As noted above, the Trustee's

position is foreclosed by *Wagoner* and *Caplin*, which hold unequivocally that a bankruptcy

trustee may not assert claims belonging to creditors.  *See Baillie Lumber Co.*, 391 F.3d at 1319

n.4 (citing *Wagoner* as "completely reject[ing]" the argument that section 544 permits trustees to

assert claims "as representative of all creditors"); *Alberts* v. *Tuft (In re Greater Southeast Comm.*

*Hosp. Corp.)*, 333 B.R. 506, 518 (Bankr. D.D.C. 2005) (citing *Wagoner* as rejecting the

argument that section 544(a) grants the trustee "the ability to file any claim that a creditor with a

judicial lien or creditors' bill against the property of the estate might possess").

The Trustee's position is also squarely at odds with numerous decisions from this

District, which establish that section 544(a) "does not extend beyond avoidance actions, and does

not permit the trustee to assert the personal, direct claims of creditors for the benefit of the estate

or for a particular class of creditors."  *Goldin* v. *Primavera (In re Granite Partners, L.P.)*, 194

B.R. 318, 324 (Bankr. S.D.N.Y. 1996); *accord Savage & Assocs., P.C.* v. *BLR Servs. SAS (In re*

*Teligent, Inc.)*, 307 B.R. 744, 749 (Bankr. S.D.N.Y. 2004); *McHale* v. *Avarez (In re The 1031*

*Tax Grp., LLC)*, 397 B.R. 670, 679 (Bankr. S.D.N.Y. 2008).  These decisions rely not only on

Collier on Bankruptcy, as the Trustee asserts (Tr. Br. 39), but also on *Wagoner*, *Caplin* and

*Hirsch*.  *See Goldin*, 194 B.R. at 324 (citing *Wagoner* and *Caplin*); *McHale*, 397 B.R. at 679

(citing *Hirsch*).

There is no hint on the face of section 544(a) that it was intended to authorize a bankruptcy trustee to assert damages claims belonging to creditors. Section 544(a) provides in pertinent part that:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by —
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [or]
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists.

11 U.S.C. § 544(a).

This provision, often referred to as the "strong arm clause," has no application to this lawsuit. As stated by the Second Circuit, "'[t]he purpose of the 'strong arm clause' is to cut off unperfected security interests, secret liens and undisclosed prepetition claims against the debtor's property as of the commencement of the case.'"  *Canney* v. *Merchants Bank (In re Canney)*, 284 F.3d 362, 374 (2d Cir. 2002) (quoting Collier on Bankruptcy ¶ 544.03 (15th ed. rev. 2001)); *see id.* (finding section 544(a) inapplicable where a creditor's mortgage was "neither unperfected, secret, nor undisclosed"); *see also Butner* v. *United States*, 440 U.S. 48, 54 n.8 (1979) (interpreting the predecessor of section 544(a) to authorize a trustee to "strike down secret liens and transfers"). The statute "empowers the trustee to avoid certain prebankruptcy transfers," such as unperfected security interests, that "could have been avoided by certain types of creditors" under state law.  5 Collier on Bankruptcy ¶ 544.01 (16th ed. 2011).

The Trustee argues that section 544(a)'s grant to trustees of certain "rights and powers" of creditors means that the Trustee can assert common-law damages claims belonging to creditors.  Tr. Br. 29.  But in making this argument, the Trustee "appears to have overlooked an important canon of statutory and regulatory construction:  read on."  *Litwin* v. *American Exp. Co.*, 838 F. Supp. 855, 857 (S.D.N.Y. 1993) (Mukasey, J.).  After the phrase the Trustee embraces, the statute proceeds to say that the trustee's "rights and powers" are limited to those of "a creditor that extends credit to the debtor at the time of the commencement of the case" and obtains a "judicial lien" or an unsatisfied "execution."  11 U.S.C. § 544(a); *see Musso* v. *Ostashko*, 468 F.3d 99, 104 (2d Cir. 2006) ("The trustee hypothetically extends credit to the debtor at the time of the filing and, at that moment, obtains a judicial lien on all property in which the debtor has any interest.").

As a result of this limiting language, "most kinds of affirmative relief that a trustee might seek would not be available under § 544(a)(2), because a creditor who extends credit on the date of petition will always have become a creditor after the wrong complained of."  *Collins* v. *Kohlberg & Co. (In re Sw. Supermarkets, LLC)*, 325 B.R. 417, 426 (Bankr. D. Ariz. 2005); *Greater Southeast Comm. Hosp.*, 333 B.R. at 520 ("[I]f the hypothetical judgment lien creditor extended credit only on the date of commencement of the bankruptcy case, how can she sue based on a wrong that occurred before [she] extended credit?"); *see also Lewis* v. *Mfrs. Nat'l Bank*, 364 U.S. 603, 607 (1961) (the "one consistent theory" underlying the strong arm statute is that "the rights of creditors . . . to which the trustee succeeds are to be ascertained as of 'the date of bankruptcy,' not at an anterior point of time").  In short, "the hypothetical creditor whose

powers the trustee wields through § 544(a) sustains no . . . loss and has no 'actual damages'" to recover. *Kleven* v. *Stewart (In re Myers)*, 320 B.R. 667, 670 (Bankr. N.D. Ind. 2005).[3]

Moreover, the statute on its face explicitly limits the trustee's rights to those of a creditor that "*extends credit to the debtor*." BMIS's customers did not "extend credit" to BMIS. Nothing in the statute authorizes a trustee to assert the rights of a brokerage customer or an involuntary creditor such as a tort creditor. *See Schlossberg* v. *Barney*, 380 F.3d 174, 180-81 (4th Cir. 2004) (concluding that section 544(a) does not permit a trustee to assert the rights of involuntary creditors that do not "extend credit").

Beyond all this, the Trustee's sweeping interpretation of the phrase "rights and powers" in section 544(a) would render surplusage all the language of avoidance that directly follows that phrase in section 544(a), as well as the entirety of section 544*(b)* of the Bankruptcy Code, which likewise authorizes avoidance of transfers and obligations voidable by creditors. If section 544(a) were construed to authorize the trustee to bring all affirmative claims belonging to creditors, there would be no need for section 544(b) or any other specific avoidance language, violating the basic rule that statutes "be construed, if possible, to give effect to every clause and word." *E.g.*, *Cal. Pub. Emps.' Ret. Sys.* v. *Worldcom, Inc.*, 368 F.3d 86, 106 (2d Cir. 2004).

For these reasons and others, section 544(a) "does not 'clothe the trustee with all the rights held by the creditors prior to bankruptcy.'" *Luster* v. *Greenhill Capital Partners (In re CLK Energy Partners, LLC)*, 2011 WL 1312275, at *5 (Bankr. W.D. La. Mar. 31, 2011)

---

[3]  The Trustee cites a 1923 decision stating that a subsequent creditor could bring a claim under a then-applicable dividend statute to recover an "illegal distribution of the capital of the corporation." Tr. Br. 33 n.2 (citing *Aktieselskabet Christianssand* v. *Fed. S.S. Corp.*, 201 N.Y.S. 504, 506 (Sup. Ct. N.Y. Co. 1923)). But the Trustee does not explain how a lender to BMIS at the time of its bankruptcy would have any damages claim for amounts lost by customers.

-17-

(quoting *In re Teligent*, 307 B.R. at 749). Not only have the Second Circuit and judges in this

District reached that conclusion, *e.g.*, *Canney*, 284 F.3d at 374; *Goldin*, 194 B.R. at 324, but at

least three other appellate courts have as well. *See Ingalls* v. *Gressett*, 326 F. App'x 838, 839

(5th Cir. 2009) (section 544(a) "did not supersede *Caplin*'s holding that a trustee lacks authority

to assert a claim against a third party that does not comprise a part of the bankruptcy estate");

*E.F. Hutton & Co., Inc.* v. *Hadley*, 901 F.2d 979, 986 (11th Cir. 1990) ("'there is nothing in

Section 544 or the liquidation framework of the Code authorizing a Chapter 7 trustee to collect

money not owed to the estate'"); *In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222,

1229-30 (8th Cir. 1987) ("nowhere in Sections 544(a) or (b) . . . is there any suggestion that the

trustee has been given the authority to collect money not owed to the estate").[4]

       The Trustee cites virtually no case law to support his theory that section 544(a)

permits him to bring creditor claims. He relies heavily on an outlier decision from the District of

Colorado, *Hill* v. *Gibson Dunn & Crutcher (In re MS55, Inc.)*, 2007 WL 2669150 (D. Colo.

Sept. 6, 2007), in which the court permitted a bankruptcy trustee to bring claims for aiding and

abetting breach of fiduciary duty and civil conspiracy against a law firm for the debtor. The

court concluded that the claims were properly asserted under section 544(a) because they were

---

[4] *Accord, e.g.*, *Stanziale* v. *Pepper Hamilton LLP*, 335 B.R. 539, 549 (D. Del. 2005) ("[section] 544 is limited to avoidance actions"); *Sigmon* v. *Miller-Sharpe (In re Miller)*, 197 B.R. 810, 815 (W.D.N.C. 1996) ("nothing in the section indicates that it makes the trustee an agent for the creditors" with the power to pursue damages claims); *Voiland* v. *Marston*, 417 B.R. 766, 771 (Bankr. N.D. Ill. 2009) (section 544(a) permits the trustee to "bring suit to reach property that belongs to the estate" but not "enforce entitlements of a creditor"); *State Bank and Trust Co.* v. *Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 289 (Bankr. S.D. Ohio 2007) ("The language of § 544 provides a trustee with limited authority to use hypothetical lien creditor status to avoid transfers of the debtor's property under non-bankruptcy law."); *Greater Southeast*, 333 B.R. at 520 (section 544(a) "does not transform the trustee into a 'super creditor' with the ability to raise causes of action separate from those possessed by the estate").

based on a "general" harm to the debtor and its creditors caused by the law firm's conduct.  *See id.* at *12-13.  In reaching this conclusion, however, the court explicitly acknowledged that its holding was at odds with the Second Circuit's decision in *Wagoner*.  *See id.* at *10 (citing the *Wagoner* decision as a "But see").  Moreover, the court relied primarily on *St. Paul* and *Delgado Oil Co., Inc.* v. *Torres*, 785 F.2d 857 (10th Cir. 1986) — cases holding simply that a trustee may assert *the debtor*'s claims under *section 541* of the Bankruptcy Code.  *Id.* at *12.  *Gibson Dunn*, accordingly, is not only directly contrary to the law of this Circuit but also wholly mistaken in its reliance on section 544(a).

Other decisions that the Trustee cites do not help him either.  The Tenth Circuit in *Zilkha Energy Co.* v. *Leighton*, 920 F.2d 1520 (10th Cir. 1990), which stated that section 544(a) permits a trustee to invoke "remedies provided by state law to judgment lien creditors to satisfy judgments against the debtor," goes on to hold simply that a trustee could bring an action under Oklahoma law to recover "overpayments" made by the debtor as to which the debtor retained an "equitable interest."  *Id.* at 1523.  The claim at issue, therefore, was comparable to an avoidance claim, not a creditor damages claim.  *Id.*  Moreover, as discussed earlier, *Koch Refining* v. *Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339 (7th Cir. 1987), was a veil-piercing case in which — as in *St. Paul* — the injury alleged was to *the debtor* rather than to creditors.  *Id.* at 1349-50.  Likewise, the one post-*Wagoner* decision from this District that the Trustee cites, *Keene Corp.* v. *Coleman*, 164 B.R. 844 (Bankr. S.D.N.Y. 1994), also involved a veil-piercing claim that belonged to the debtor.  Another case cited by the Trustee, *Fisher* v. *Am. Nat'l Bank and Trust Co. (In re Elite Marketing Enterprises, Inc.)*, 2001 WL 1669229 (Bankr. N.D. Ill. Dec. 13, 2001), involved unjust enrichment and breach of fiduciary claims brought by a trustee based on injuries "to . . . the debtor" in addition to creditors, *id.* at *4.

-19-

2.      **The history of section 544(a) refutes the Trustee's position and shows that *Caplin* is still controlling.**

In rejecting the Trustee's interpretation of section 544(a), many courts have correctly refused to read section 544(a) as an implicit Congressional override of the Supreme Court's landmark decision in *Caplin*. *E.g.*, *Ingalls*, 326 F. App'x at 839; *E.F. Hutton*, 901 F.2d at 986; *Ozark*, 816 F.2d at 1226-31.  Confirming this conclusion is the 1978 rejection by Congress of a proposed addition to section 544 that would have overruled *Caplin* by expressly permitting trustees to bring causes of action belonging to creditors.  *See Ozark*, 816 F.2d at 1228 ("because Congress refused to enact subsection (c), we believe Congress' message is clear — no trustee, whether a reorganization trustee as in *Caplin* or a liquidation trustee as in the present case, has power under Section 544 of the Code to assert general causes of action" for creditors); *accord In re Greater Southeast Comm. Hosp.*, 333 B.R. at 519; *In re Miller*, 197 B.R. at 812-13.

The Trustee declares in his brief that all of these decisions are based on an elementary error.  Tr. Br. 40.  According to the Trustee, *Caplin* has "no relevance" here because "the predecessor to § 544(a), § 70c of the Bankruptcy Act, was *not in effect* when the *Caplin* liquidation commenced" in 1965.  Tr. Br. 39 (emphasis added).  On the next page of his brief, the Trustee reiterates that the *Caplin* bankruptcy proceeding was begun at a time when "the hypothetical judgment creditor powers *did not exist*."  *Id.* at 40 (emphasis added).

The Trustee is badly mistaken.  His contention that section 70c was not "in effect" between 1950 and 1965 is simply false, and the only source that he cites that actually says that is an imprecise footnote in a law review article, *see* Tr. Br. 40 (citing 64 Am. Bankr. L. J. at 325 n.66).  At all times during the *Caplin* proceedings, section 70c of the Bankruptcy Act (then codified in 11 U.S.C. § 110(c)) included "strong arm" powers comparable in substance to what is now in section 544(a), including a provision granting the bankruptcy trustee powers of a

hypothetical creditor with a judicial lien.  *See* 4B *Collier on Bankruptcy* ¶ 70.47 (14th ed. 1978).

In 1966, Congress simply expanded the listing of powers in the provision to provide "further

clarification."  *See id.* ¶ 70.47[5] at 577.

       Further confirming the Trustee's error, the Supreme Court decided multiple cases

under section 70c of the Bankruptcy Act during the very era when the Trustee mistakenly claims

the statute was "not in effect."  *See United States* v. *Speers*, 382 U.S. 266, 272-75 (1965); *Lewis*

v. *Mfrs. Nat'l Bank*, 364 U.S. 603, 605-07 (1961).  Both decisions extensively analyze the terms

and effect of section 70c as well as its history.  *Speers*, 382 U.S. at 268, 272-75; *Lewis*, 364 U.S.

at 604, 605-07.  The Court in *Speers* declared that "it was *not* the purpose of the 1950

amendments to reduce the powers of the trustee," and specifically confirmed that a trustee's

ability to invoke the rights of a hypothetical judgment creditor most certainly *did* exist.  382 U.S.

at 273 (noting that "a judicial lien holder generally has greater rights than a judgment creditor").[5]

---

[5]  The 1952 and 1966 versions of section 70c, as quoted in 4B *Collier on Bankruptcy*, ¶ 70.47, at
573, 577-78, are set out below.  The first was in effect when the *Caplin* bankruptcy began in
1965, and the second was enacted six years before the Supreme Court's 1972 decision:

    The trustee as to all property, whether or not coming into possession or control of the
    court, upon which a creditor of the bankrupt could have obtained a lien by legal or
    equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date
    with all the rights, remedies, and powers of a creditor then holding a lien thereon by such
    proceedings, whether or not such a creditor actually exists.  [1952 version of section 70c]

    The trustee shall have as of the date of bankruptcy the rights and powers of (1) a creditor
    who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or
    not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an
    execution returned unsatisfied against the bankrupt, whether or not such a creditor exists,
    and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable
    proceedings upon all property, whether or not coming into possession or control of the
    court, upon which a creditor of the bankrupt upon a simple contract could have obtained
    such a lien, whether or not such a creditor exists.  [1966 version of section 70c]

The Trustee further distorts history by asserting that before 1978 the strong arm powers "did not include avoidance provisions at all."  Tr. Br. 38.  While the statute did not use the word "avoidance" before 1978, the avoidance of debtor transfers, particularly unrecorded secret liens, has always been at the core of the strong arm power.  *See, e.g.*, *Lewis*, 364 U.S. at 608-09 (1952 version of strong arm provision enables trustee to "set aside" or "upset" debtor transactions); 4B *Collier on Bankruptcy* ¶ 70.45 at 560 (status as judgment lien creditor sufficed "for the avoidance or elimination of invalid or secret liens, transfers or other claims" and provided "an important adjunct" in the "exercise of other powers of avoidance"); *see also* Kennedy, *The Bankruptcy Amendments of 1966*, 1 Ga. L. Rev. 149, 169 (1967) (noting § 70c's assistance "in seeking to avoid a transfer by the debtor"); Countryman, *The Use of State Law in Bankruptcy Cases (Part II)*, 47 N.Y.U. L. Rev. 631, 650 (1972) (strong arm provides "procedural assist" to "invoke state law as to fraudulent conveyances") (both articles cited at Tr. Br. 40).

The upshot of this true history is that the Supreme Court handed down its ruling in *Caplin*, clarifying the limited standing of bankruptcy trustees, against the backdrop of a statutory strong arm power that was substantially the same as what the Trustee today invokes as support for his alleged standing to bring creditor claims.

## D.      Section 544(a) of the Bankruptcy Code does not permit the Trustee to assert BMIS's damages claims.

The Trustee argues that section 544(a) of the Bankruptcy Code authorizes him to assert not only claims belonging to BMIS's customers, but also claims of BMIS itself that could be enforced by creditors.  The Trustee further argues that, by asserting BMIS's claims under section 544(a) of the Bankruptcy Code rather than section 541(a), through which a trustee succeeds to the debtor's rights, he is able to escape application of the Wagoner Rule.  Tr. Br. 35-

36.  Section 544(a) does not permit the Trustee to assert damages claims on behalf of BMIS any more than it permits the Trustee to assert claims on behalf of customers.

*First*, whether section 544(a) authorizes such a claim or not, the common law claims in the Amended Complaint seek to recover losses suffered by *customers*, including those resulting from BMIS's breaches of its fiduciary duty to those customers.  Nowhere in the Amended Complaint does the Trustee articulate any damages claim belonging to BMIS, the firm that perpetrated the Ponzi scheme.  Indeed, it is absurd even to imagine that BMIS, the firm that the Trustee has described in court filings as Bernard Madoff's "alter ego," was somehow the injured party here.  *See supra* Point I.A.[6]

*Second*, even if the Amended Complaint did assert debtor claims, section 544(a) of the Bankruptcy Code does not authorize a trustee to bring damages claims on behalf of *anyone*.  *See* Point I.C, *supra*.  Section 541 already permits a trustee to assert the debtor's claims, and "[t]here is no need to employ § 544(a) to bring into the estate that which is already in the estate under § 541."  *In re Greater Southeast Comm. Hosp.*, 333 B.R. at 521.  Consistent with that case law, the main case the Trustee cites on this issue, the Seventh Circuit's decision in

---

[6]  The Trustee spills much ink on the "trust fund doctrine," Tr. Br. 31-33, under which "officers and directors of an insolvent corporation are said to hold the remaining corporate assets in trust for the benefit of its general creditors," *Credit Agricole Indosuez* v. *Rossiyskiy Kredit Bank*, 94 N.Y.2d 541 (2000).  It is not clear what the Trustee is seeking to accomplish with this discussion; nor is it clear why the Trustee believes that claims against Bernard Madoff for breaching a fiduciary duty to preserve BMIS's assets could be asserted "directly" by creditors rather than by BMIS.  *Cf. OFSI Fund II, LLC* v. *Canadian Imperial Bank of Commerce*, 82 A.D.3d 537, 539 (1st Dep't 2011) (creditors "could not assert breach of fiduciary duty" by directors "as a direct claim, even if [the debtor] was insolvent").  What is clear, however, is that any "trust fund" claim would have all the same infirmities as the Trustee's other damages claims.

*Koch Refining*, involved a veil-piercing claim that was "property of the estate" under section 541, not a right under section 544. *See* 831 F.2d at 1346.

　　　　　*Third*, any damages claims that belong to BMIS are barred by the Wagoner Rule. In *Wagoner*, the Second Circuit held not only that a bankruptcy trustee cannot assert creditor claims but also that a claim on behalf of the debtor against a third party for participation in wrongdoing by the debtor's managers "accrues to creditors, not to the guilty corporation." *Wagoner*, 944 F.2d at 120.  Accordingly, "when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors." *Id.* at 118; *accord Kirschner* v. *Grant Thornton LLP*, 2009 WL 1286326, at *10 (S.D.N.Y. Apr. 14, 2009), *aff'd*, 626 F.3d 673 (2d Cir. 2010).  This holding of *Wagoner* is called the "Wagoner Rule." *See* Opening Br. 10-11.

　　　　　The Trustee's assertion that the Wagoner Rule does not apply — because section 544(a) permits the Trustee to step out of and then back into the debtor's shoes — is sophistry.  If a trustee could escape the Wagoner Rule simply by invoking section 544(a), bankruptcy trustees would escape the Wagoner Rule every time.  But the Trustee has once again misstated the law. Under New York law, when a creditor garnishes property (such as a debtor's claim), it does so subject to all of the debtor's rights and disabilities.  *See Swezey* v. *Lynch*, 926 N.Y.S.2d 415, 419 (1st Dep't 2011) ("Needless to say, 'a creditor stands in no better position with respect to property of the garnishee than does his debtor.'" (quoting *Smith* v. *Amherst Acres*, 43 A.D.2d 792, 793 (4th Dep't 1973))).  As a result, when a creditor brings an action belonging to the debtor that the debtor itself lacks standing to bring, "that action would not benefit [the creditor] in the slightest because 'an attaching or garnishing creditor can gain no greater right over the property or interest of the judgment . . . than the debtor himself has therein.'" *In re Greater*

*Southeast Comm. Hosp.*, 333 B.R. at 521-22.  Under these well-established principles, even if the Trustee could assert BMIS's claims on behalf of a BMIS creditor, he could not escape the burdens attached to BMIS, including the Wagoner Rule.

In seeking to escape the Wagoner Rule, the Trustee cites *Geltzer* v. *Mooney (In re MacMenamin's Grill Ltd.)*, 450 B.R. 414 (Bankr. S.D.N.Y. 2011) (Tr. Br. 36).  That case, however, involved an *avoidance* claim, to which the Wagoner Rule does not apply.  *See Nisselson* v. *Empyrean Investment Fund, L.P. (In re MarketXT Holdings Corp.)*, 376 B.R. 390, 423 (Bankr. S.D.N.Y. 2007) (citing cases).  Most of the other cases cited by the Trustee also involved avoidance claims.  Tr. Br. 61-62.  And the balance of the Trustee's cases likewise do not provide any basis to disregard the Wagoner Rule.  *See, e.g.*, *Pittsburg Carbon Co.* v. *McMillin*, 119 N.Y. 46, 53 (1890) (decided under New York receivership law 100 years before *Wagoner* recognized limitations on the standing of federal bankruptcy trustees); *Titan Real Estate Ventures* v. *M.J.C.C. Realty (In re Flanagan)*, 373 B.R. 216, 229-30 (Bankr. D. Conn. 2007) (plaintiff's reliance on section 544(a) was "withdrawn" and any claims under section 544(a) were barred by the statute of limitations).

## POINT II

### SIPA DOES NOT GRANT THE TRUSTEE STANDING TO BRING COMMON LAW CLAIMS ON BEHALF OF CUSTOMERS.

Despite the Trustee's newly announced discovery that he does not really need SIPA to assert the claims of customers against JPMorgan, the Trustee still argues that a SIPA trustee has "even greater powers" than an ordinary bankruptcy trustee, including the power to assert common law claims against JPMorgan as bailee of a "Customer Property estate" and as subrogee of customer claims paid by SIPC.  Tr. Br. 8-10, 49-50, 54-56.

-25-

Nothing in SIPA provides the Trustee with the powers that he claims.  The Trustee's powers are "cabined by Title 11," and "SIPA conveys no authority to a SIPA trustee to bring the common law claims here in issue."  *Picard* v. *HSBC Bank PLC*, 2011 WL 3200298, at *3, *4 (S.D.N.Y. July 28, 2011).

## A.    The Trustee lacks standing as a bailee.

### 1.    *Redington* is not good law.

The Trustee attempts to resuscitate the Second Circuit's decision in *Redington* v. *Touche Ross & Co.*, 592 F.2d 617 (2d Cir. 1978), by arguing that its holdings regarding bailee and subrogee standing have never been "overruled expressly or impliedly."  Tr. Br. 43-44.  The Trustee is wrong.  The Supreme Court's "prompt[] revers[al]" of *Redington*'s holding that Section 17 of the Exchange Act created a private right of action "also means, in context, that the secondary holding of *Redington* [regarding bailee and subrogee standing] is no longer good law."  *HSBC*, 2011 WL 3200298, at *7.

The Trustee has no answer to JPMorgan's argument that the Supreme Court's rationale for reversing *Redington* on the Section 17 ruling applied with equal force to the rulings on standing under SIPA as to which the Supreme Court had granted *certiorari* in tandem.  In reversing *Redington*, the Supreme Court held that it was error for the Second Circuit to attempt to "improve" Section 17 by implying a private right of action absent statutory language or legislative history, stating that "the mere fact that § 17(a) was designed to provide protection for brokers' customers does not require the implication of a private damages action in their behalf."  *Redington*, 442 U.S. at 578 (citations omitted).  The Second Circuit's rulings on SIPA standing were infected with the same error.  Accordingly, on remand, Judge Lumbard acknowledged that the Second Circuit's holdings on Section 17 and SIPA were entwined and that *both* had been

reversed. *Redington*, 612 F.2d at 70 (describing the Supreme Court's decision as a "revers[al] [of] our decision *to allow the Trustee to maintain a private right of action* for violations of § 17") (emphasis added); *accord* Decl. Ex. 6, at 32-33 (*Mishkin* transcript) (*Redington* "wiped out everything that . . . occurred up to that time, and sent the case back accordingly").

       Nor can the Trustee salvage his use of *Redington* by mischaracterizing subsequent appellate decisions. In *BDO Seidman*, the Second Circuit did not, as the Trustee claims, "confirm[] . . . *Redington*'s precedential value." Tr. Br. 15. The Court made a point of stating that it was *not* revisiting *Redington*, even if it were justified in doing so, since the claims failed on other grounds. *SIPC* v. *BDO Seidman, LLP*, 222 F.3d 63, 69, 71 (2d Cir. 2000). Tellingly, the Court declined the opportunity to reaffirm *Redington* and instead "assum[ed] *without deciding*" that there was statutory standing even as it held that the asserted claims failed. *Id.* (emphasis added). In addition, the Supreme Court's decision in *Holmes* — far from "implicitly acknowledg[ing] the binding effect of *Redington*," Tr. Br. 16 — expressly questioned its rationale. The Supreme Court stated that SIPC's subrogation theory was "fraught with unanswered questions" and cited Judge Pollack's decision in *Mishkin* v. *Peat, Marwick* with approval. *Holmes* v. *SIPC*, 503 U.S. 258, 270 (1992).

       The Trustee has also failed to refute Judge Rakoff's conclusion that the Supreme Court's "reversal based on want of subject matter jurisdiction deprives *Redington* of any precedential value." *HSBC*, 2011 WL 3200298, at *7. The Trustee does not contest that a decision reversed for lack of subject matter jurisdiction has no precedential value. Instead, he disputes whether *Redington* was overruled on "jurisdictional" grounds. Tr. Br. 45. But the Second Circuit itself thought so, stating that the Supreme Court remanded for "a decision on the . . . *alternative bases for jurisdiction*" and, finding none, affirmed the District Court's

complete dismissal of the case.  *Redington* v. *Touche Ross & Co.*, 612 F.2d 68, 70 (2d Cir. 1979) (emphasis added); *accord HSBC*, 2011 WL 3200298, at *7.  Moreover, the Supreme Court has stated that "it is only if . . . a right of action exists that we need consider whether the respondent had standing to bring the action and whether the District Court had jurisdiction to entertain it." *National R.R. Passenger Corp.* v. *Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 456 (1974).  As a result, the issue that the Court addressed in *Redington* regarding the existence of a private right of action was a threshold question that preceded the issue of statutory standing as well as any consideration of the merits.[7]

As Judge Pollack and now Judge Rakoff both recognized, the Supreme Court's reversal rendered *Redington* a "nullity" that "does not stand as the law of this circuit."  *HSBC*, 2011 WL 3200298, at *7 (quotation marks omitted); Decl. Ex. 6, at 32.

### 2.    Even if *Redington* were good law, the Trustee lacks bailee standing; a thief is not a bailee.

As demonstrated in JPMorgan's opening brief, and as Judge Rakoff concluded, regardless of whether *Redington* is good law, the Trustee's bailee theory fails on the basis that "no bailment can exist where the would-be bailee is a thief."  *HSBC*, 2011 WL 3200298, at *5. Since BMIS took property from its customers with the intent of stealing it, New York law does not permit BMIS's successor to assert the rights of a bailee.  Opening Br. 17.  *Redington* did not

---

[7]  The cases cited by the Trustee are distinguishable.  In *Morrison* v. *Nat'l Australia Bank Ltd.*, the issue presented was not the existence of a private right of action under Section 10(b), which by that time was well established, but whether the plaintiffs could state a claim based on extraterritorial transactions.  *See* 130 S. Ct. 2869, 2877 (2010).  And the courts in *Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239 (2d Cir. 2007) and *Wickham Contracting Co.* v. *Local Union No. 3*, 955 F.2d 831 (2d Cir. 1992), did not rely on decisions that had been reversed for want of subject matter jurisdiction or on rulings that were inextricable from the grounds on which the decisions were reversed.

involve a situation in which the alleged bailee was a thief, and, therefore, does not speak to the circumstances of this case. For similar reasons, *Wagoner* and *Hirsch* likewise prevent the Trustee from asserting bailment rights, regardless of *Redington*'s status. Opening Br. 18-19.

> ### 3. The Trustee cannot sue as the bailee of a "Customer Property estate."

In an effort to circumvent *HSBC* and to avoid the clear common law rule that a thief is not a bailee, the Trustee argues that he has standing as a bailee "independent" of his status as BMIS's successor. He claims that SIPA authorizes him to bring claims as "representative" and "bailee" of a "Customer Property estate." Tr. Br. 49-51. This theory finds no support in *Redington* or the statute, and Judge Rakoff properly rejected it. *See HSBC*, 2011 WL 3200298, at *4-5.

Nothing in SIPA supports the notion that there is a "Customer Property estate" with authority to bring damages claims. SIPA's categorization of certain assets as "customer property" is part of its priority scheme for the allocation of assets between customers and other creditors, and nothing more. *See* 15 U.S.C. 78fff-2(c)(1) (setting forth allocation of "customer property"). SIPA makes no reference to a "Customer Property estate," does not purport to create some new legal entity, and certainly does not indicate that a trustee can bring common law claims on its behalf. On the contrary, "customer property" is defined merely as certain "cash and securities" held by the liquidating broker — it is a fund made up of assets, not a new juridical person with independent rights to bring causes of action. *See* 15 U.S.C. § 78lll(4).

The Trustee's novel theory is also completely unsupported by case law. The cases cited by the Trustee do no more than acknowledge the mandate of SIPA that the "cash and securities" defined as "customer property" must be paid first to customers before general

creditors can collect any customer property that might be left.  The cases do not remotely

contemplate that a SIPA trustee may sue third parties on behalf of a "Customer Property estate,"

whether as a bailee or in any other capacity.  *See In re BLMIS*, 2011 WL 3568936, at *3 (2d Cir.

2011) ("In a SIPA liquidation, a fund of 'customer property' . . . is established for priority

distribution exclusively among customers."); *Rosenman Family, LLC* v. *Picard*, 395 F. App'x

766, 768 (2d Cir. 2010) (defining the term "customer property estate" to have the same meaning

as "customer property" and explaining that "SIPA accords . . . 'customers' of the debtor priority

over the distribution of 'customer property'" (quotation marks omitted)).  Notably, moreover, the

Trustee's new "Customer Property estate" theory is even inconsistent with *Redington*, which

stated only that a SIPA trustee may maintain an action "*on behalf of . . . customers.*"  *Redington*,

592 F.2d at 624 (emphasis added).

        In any event, even if SIPA were assumed to have created some new, previously

nonexistent bailment, the Trustee would still have no basis to invoke that bailment to bring

damages claims.  As Judge Rakoff explained, "bailees may generally bring claims against third

parties for the loss or destruction of bailed property in their possession."  *HSBC*, 2011 WL

3200298, at *5.  Under the Trustee's theory, however, the "actionable conduct is alleged to have

occurred *prior to* the bailment," when the Trustee did not possess any customer property.  *Id*.

The damages, in other words, preceded the bailment relationship.  The Trustee's only response is

to say that his newfound bailment rights are "retroactive," because SIPA defines the "customer

property" held by a trustee to encompass cash "at any time received," including "the proceeds of

any such property transferred by the debtor, including property unlawfully converted."  15

U.S.C. § 78lll(4); Tr. Br. 51-53.  This language, however, says nothing about the Trustee's rights

to recover damages, nor does it hint that the Trustee has some "retroactive" ability to recover

damages incurred *before* he obtained any kind of possessory interest.  Thus, even if the Trustee could bring claims as the bailee of a "Customer Property estate," basic principles of bailment law would not permit him to bring the damages claims asserted in this lawsuit.[8]

## B.     The Trustee lacks standing as a subrogee.

None of the arguments advanced to support SIPC's asserted subrogee standing has any merit.  As set forth in JPMorgan's opening brief, SIPA provides SIPC with only limited subrogation rights against the debtor's estate.  *See* Opening Br. 19-21.  As Judge Rakoff properly concluded in *HSBC*, there is no basis to imply additional subrogation rights in favor of SIPC that are not in the statute.  *See HSBC*, 2011 WL 3200298, at *6-7.

In support of his argument that SIPC possesses extra-statutory subrogation rights, the Trustee points to the addition in 1978 of the phrase "in addition to all other rights it may have at law or in equity" to section 78fff-3(a).  Tr. Br. 17.  But courts have consistently held that this "catch-all" phrase cannot be read to contradict the specific provision of SIPA demonstrating that SIPC is only subrogated to customer claims against the estate.  *HSBC*, 2011 WL 3200298, at *6; *accord Mishkin* v. *Peat, Marwick, Mitchell & Co.*, 744 F. Supp. 531, 558 (S.D.N.Y. 1990); *SIPC* v. *BDO Seidman, LLP*, 49 F. Supp. 2d 644, 654 (S.D.N.Y. 1999).

The Trustee also makes the novel argument that *SIPA* itself grants subrogation rights to SIPC with respect to customer claims against third parties.  Tr. Br. 55.  The Trustee

---

[8]  SIPC argues that federal common law, in conjunction with Rule 15c3-3, 17 C.F.R. § 240.15c3-3, supports bailee standing.  SIPC Br. 13-20.  With respect to Rule 15c3-3, Judge Rakoff was understandably "mystified" by the suggestion that "a rule that is undisputedly not a part of SIPA . . . may somehow confer upon a SIPA trustee broad authority" to bring common law claims against third parties.  *HSBC*, 2011 WL 3200298, at *4.  Rule 15c3-3 does not refer to a SIPA trustee's standing to bring common law claims, and SIPC has not identified a single case holding that either Rule 15c3-3 or federal common law permits a SIPA trustee to bring claims as a bailee.

asserts that, when *Redington* was decided, the statute "*expressly* limited SIPC's subrogation rights to 'customers' claims against the debtor's . . . estate.'" *Id.* (quoting *Redington*, 592 F.2d at 624) (emphasis in original)). After *Redington*, the Trustee declares, the statute was "amended" to remove this limitation. Tr. Br. 55.

There was no such amendment. The language quoted by the Trustee referring to "customers' claims against the debtor's estate" is taken from the Second Circuit's decision in *Redington* — which was construing the statute — *not from the statute itself*. *Redington*, 592 F.2d at 624 (citing 15 U.S.C. § 78fff(f)(1); Pub. L. 91-598 § 6(f)(1)). Both before and after the Second Circuit's decision, the statute has directed SIPC to satisfy customer claims and provided that, once SIPC does so, "SIPC shall be subrogated to the claims of such customers with the rights and priorities provided in [SIPA]." *Compare* Pub. L. 91-598 § 6(f)(1) (1970) *with* 15 U.S.C. 78fff-3(a). Based on this provision, courts from *Redington* through *HSBC* have concluded that SIPA grants subrogation rights to SIPC only with respect to claims "against the debtor's . . . estate." *Redington*, 592 F.2d at 624; *HSBC*, 2011 WL 3200298, at *6; *Mishkin*, 744 F. Supp. at 556.

The Trustee has thus re-written the history of SIPA in a futile search for SIPA standing just as he has re-written the history of section 544(a) in his futile search for bankruptcy standing.[9]

---

[9]  SIPC argues that the *HSBC* decision incorrectly held that permitting the Trustee to exercise SIPC's subrogation rights would upset the priority scheme for the distribution of customer property set forth in SIPA. *See* SIPC Br. 34-35; *HSBC*, 2011 WL 3200298, at *6. SIPC's argument that it is subject to the automatic stay or would have to turn over any damages awarded to the Trustee for distribution to customers in the liquidation rests on the unfounded proposition that such damages constitute "customer property." This is contradicted by the definition of "customer property," which does not include damages. *See* 15 U.S.C. § 78lll(4).

C.      **The Trustee lacks standing as an assignee.**

In his original complaint, the Trustee alleged that "as of this date, the Trustee has received multiple, express assignments of certain claims of the applicable accountholders." Orig. Compl. ¶ 17(g).  In the Amended Complaint, however, the Trustee edited his allegation down to an averment that he is bringing his claims as an assignee "to the extent the Trustee has received express assignments of certain BLMIS customer claims."  Am. Compl. ¶ 20(g).  Now, in his opposition brief, the Trustee has revealed that, in truth, he "has not yet received assignments from *any* customers"!  Tr. Br. 57 (emphasis added).

In light of the Trustee's admission that the allegations in his original complaint were false, it is now clear that the Trustee has no standing to bring common law claims as an assignee of BMIS customers, because he has received no assignments.  Accordingly, although JPMorgan disputes the various arguments offered by the Trustee in support of assignee standing, there is now no reason to address them.

## POINT III

### THE TRUSTEE'S COMMON LAW CLAIMS ARE PRECLUDED BY SLUSA.

A.      **The Trustee's arguments about the policies and objectives of SLUSA are irrelevant and inaccurate.**

The Trustee's lead argument in opposition to SLUSA preclusion addresses what he claims are the "policies and objectives behind" the statute.  Tr. Br. 65-67.  The Trustee argues that SLUSA was merely intended to keep securities "strike suits" out of state court and because his suit is not a strike suit, the statute should not apply to him.  *Id.* at 64.

These arguments are irrelevant — under the statute, the only issue is whether the elements of SLUSA preclusion are satisfied; if they are, no further consideration of the statute's

"policies and objectives" is appropriate.  *See, e.g.*, *Lander* v. *Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 110 (2d Cir. 2001) (rejecting appeal to "the structure, history, and purpose of SLUSA") ("If a statute's text is unambiguous and clearly disposes of an issue, our inquiry ordinarily ends.").

The Trustee's policy arguments are also inaccurate.  The policy and objective of SLUSA was to assure that *all* securities actions aggregating the claims of more than 50 plaintiffs — regardless of their merit or lack thereof — would be litigated exclusively in federal court under federal law.  *See Lander*, 251 F.3d at 108 (SLUSA's purpose was effected "by making federal court the exclusive venue for class actions alleging fraud in the sale of certain covered securities and by mandating that such class actions be governed exclusively by federal law").  The Trustee's attempt to evade federal securities law by asserting the state law claims of thousands of Madoff's customers is in direct conflict with this core purpose of the statute.

## B.    This is a covered class action.

The Trustee's primary textual argument against the application of SLUSA is that this is not a "covered class action" within the statutory definition.  Tr. Br. 68-71.  The Trustee argues that because he is a bankruptcy trustee, he is not barred by SLUSA from bringing state-law claims that injured customers would be barred by that statute from bringing in a class action.  Tr. Br. 68.  But by its plain language, the "covered class action" definition applies to *anyone* who tries to bring securities claims belonging to more than 50 plaintiffs.  The statute makes no exception for bankruptcy trustees.  As the Supreme Court held in *Dabit*, SLUSA must be given a "broad construction," and a court may not construe the statute in a manner that would "create" any "additional, implied exceptions."  *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U.S. 71, 86-88 (2006).

The Trustee argues further that the "covered class action" definition is not triggered because he is not really bringing claims belonging to Madoff's customers. Tr. Br. 71. After originally alleging that he was bringing claims "on behalf of" Madoff's customers, Orig. Compl. ¶ 17(f), the very language of SLUSA's "covered class action" definition, the Trustee now dissembles by claiming that he is seeking to recover "on behalf of the BLMIS estate, a judgment creditor, and/or the fund of customer property." Tr. Br. 67; *see also id*. at 71. But this is just an obfuscation. As this Court has found, "the Trustee's common-law claims are on behalf of BMIS customers, and not the BMIS estate." *Picard* v. *JPMorgan*, 2011 WL 2119720, at *6 (S.D.N.Y. May 23, 2011). Indeed, in other sections of his opposition brief, when it suits his purpose, the Trustee himself claims that he is entitled to sue "on behalf of creditors" and "on behalf of the customers/bailors." Tr. Br. 40, 42.[10]

SIPC contends that this is not a "covered class action" because there are no questions of law or fact "common to putative class members." SIPC Br. 43. But a "covered class action" exists where the common questions predominate over individualized issues without reference to issues of reliance. 15 U.S.C. §§ 77p(f)(2)(A), 78bb(f)(5)(B). Here, because the SLUSA statute expressly excludes issues of individual reliance from the calculus, the questions of fact and law common to the absent class members — including, for example, whether

---

[10]  The claims brought by the Trustee are plainly based on injuries suffered by Madoff's *customers*. *See, e.g.*, Am. Compl. ¶ 20(b) ("BLMIS customers and/or the customer property estate were injured as a result of the conduct detailed herein."); ¶ 200 ("Madoff and BLMIS were breaching their fiduciary obligations to their customers."); ¶ 295 (Madoff's fraud was "perpetuated . . . at the expense of BLMIS customers"); ¶ 522 ("Madoff and/or BLMIS breached that fiduciary duty by . . . stealing billions of dollars from BLMIS customers."). The Trustee's brief is to the same effect. *See* Tr. Br. 7 (alleging that JPMorgan caused injury "to innocent customers"); 23 (conduct alleged caused "harm to BLMIS customers"); 25 ("losses [were] incurred by BLMIS customers"); 42 (Trustee is bringing "customer claims").

-35-

JPMorgan knew about Madoff's fraud — clearly predominate.  In fact, SIPC does not identify any individual issue other than reliance that the Court will need to adjudicate to resolve customer fraud claims.  Instead, SIPC argues that "the only facts in dispute concern the knowledge and actions of" JPMorgan.  SIPC Br. 43.  But SIPC fails to explain why these issues are not "common to . . . the prospective class members."  15 U.S.C. §§ 77p(f)(2)(A), 78bb(f)(5)(B).  As this Court held in *Spehar* v. *Fuchs*, where the "central allegation" in the lawsuit concerns the manner in which the defendant's conduct affected all plaintiffs, "common questions . . . predominate for SLUSA purposes."  2003 WL 23353308, at *5 (S.D.N.Y. June 18, 2003) (McMahon, J.).

        As expected, to try to avoid the "covered class action" definition, the Trustee also continues to rely on SLUSA's "Counting" provision.  That provision, however, is not an exception to the "covered class action" definition.  Rather, it simply clarifies that when an entity such as a corporation brings an action, it will generally count as one person under SLUSA — so that a claim brought by a corporation on its own behalf will not run afoul of SLUSA.  Here, however, the Trustee is not bringing claims belonging to the BMIS estate.  He is aggregating and asserting claims belonging to thousands of Madoff's customers.  As this Court has correctly observed, "the issue is whether seeking damages 'on behalf of more than 50 persons or prospective class members' triggers SLUSA preemption, *even if the claims are brought by a single entity* — in this case, a SIPA trustee."  *Picard* v. *JPMorgan*, 2011 WL 2119720, at *5 (emphasis added).

        The Third Circuit's decision in *LaSala* v. *Bordier et Cie*, 519 F.3d 121 (3d Cir. 2008), is directly on point.  The Trustee seeks to avoid the import of *LaSala* by discussing the portion of the case that is not on point — its finding that claims originally owned by the

-36-

corporate debtor and assigned to the trust were not a covered class action because the debtor, as

the *original owner* of the claims, counted as one person.  The Trustee neglects to mention the

Third Circuit's further conclusion that claims originally owned by more than fifty purchasers of

the debtor corporation's stock "would seem to take the form of a covered class action" because

they were brought on behalf of those purchasers.  *LaSala*, 519 F.3d at 137-38.

   In support of his argument, the Trustee cites the same cases he cited in opposition

to JPMorgan's motion to withdraw the reference.  But as this Court has already observed,

"[n]one of the cases cited by the Trustee furthers his argument."  *Picard* v. *JPMorgan*, 2011 WL

2119720, at *5 (citing *Smith* v. *Arthur Andersen*, 421 F.3d 989, 1003 (9th Cir. 2005); *LaSala* v.

*UBS, AG*, 510 F. Supp. 2d 213, 237 (S.D.N.Y. 2007)); *see also LaSala* v. *Bank of Cyprus*, 510 F.

Supp. 2d 246 (S.D.N.Y. 2007) (cited in Tr. Br. 69-70).  That is because none of those cases

involved situations, such as the case at bar, where the trustee was purporting to assert damages

claims belonging to creditors.  Instead, the cases cited by the Trustee involved a trust or trustee

bringing claims that belonged to the corporate debtor.  *E.g.*, *UBS*, 510 F. Supp. 2d at 237; *see

also Lee* v. *Marsh & McLennan*, 2007 WL 704033, at *4 (S.D.N.Y. Mar. 7, 2007) (cited in Tr.

Br. 69) ("a typical Chapter 11 trust established to *represent a bankrupt estate* . . . is entitled to

entity treatment") (emphasis added).

   Nor does the decision in *RGH Liquidating Trust* v. *Deloitte & Touche LLP*, 2011

N.Y. LEXIS 1703 (N.Y. June 23, 2011), support the Trustee's position.  First, the majority

opinion in the case "'ignores the difference, critical for SLUSA purposes, between a trustee in

bankruptcy — who sues, ordinarily, on behalf of a single entity, the debtor — and a liquidating

trust like this one, which is bringing claims assigned to it for the purpose of suit by more than 50

potential plaintiffs.'"  Opening Br. 30 (quoting *RGH*, 2011 N.Y. LEXIS 1703, at **37-38

(Smith, J., dissenting)).  As Judge Smith explained, the majority ignored the critical fact that the

claims being litigated "originally belonged" to more than fifty persons.  *RGH*, 2011 N.Y. LEXIS

1703, at **38.  Moreover, as the Trustee himself recognizes, *RGH* was a case in which the

claims had been assigned to the trust.  Tr. Br. 72.  Here, however, the Trustee *admits* that he has

*not* "received assignments from any customers."  Tr. Br. 57.

           In addition, the counting provision only permits an entity to be treated as one

person if it was "not established for the purpose of participating in the action."  15 U.S.C.

§§ 77p(f)(2)(C), 78bb(f)(5)(D).  The Trustee was clearly appointed for the purpose of pursuing

litigation.  The Trustee has commenced hundreds of adversary proceedings, including this action,

which by itself seeks recovery of the entire $19 billion fraud loss resulting from Madoff's Ponzi

scheme.  The Trustee's response is that he was not established for the "primary" purpose of

bringing litigation.  Tr. Br. 71.  But the word "primary" does not appear in the statute, and even

if it did, it would not matter.  Over the past several years, the Trustee has not been busying

himself selling Madoff's office furniture.  The overwhelming majority of the time for which the

Trustee has sought compensation has been devoted to litigation.  *See SIPC* v. *Bernard L. Madoff*

*Inv. Sec.*, *LLC*, No. 08-1789, Sixth Application of Trustee and Baker & Hostetler LLP for

Allowance of Interim Compensation, Docket No. 4022, Exhibit E (Apr. 18, 2011).

**C.**      **The Amended Complaint alleges misrepresentations or**
           **omissions in connection with the purchase or sale of**
           **covered securities.**

           The Trustee also contends that the claims against JPMorgan "are not based on

untrue statements or omissions in connection with the purchase or sale of covered securities" and

that "the securities fraud committed by Madoff does not mandate the application of SLUSA."

Tr. Br. 73, 74.  This argument, once again, ignores the plain language of the statute, which

preempts any action "*alleging a misrepresentation or omission* of a material fact in connection with the purchase or sale of a covered security."  15 U.S.C. §§ 78bb(f)(1), 77p(b) (emphasis added).

This test is plainly satisfied here.  The Amended Complaint expressly alleges misrepresentations or omissions by JPMorgan itself.  The Trustee asserts a "fraud on the regulator" claim against the bank, alleging that it deliberately "omitted and misrepresented material facts to both federal and state regulators."  Am. Compl. ¶ 565.  Moreover, in addition to pleading a stand-alone fraud claim, the Trustee invokes these allegations of misrepresentations or omissions in support of his aiding and abetting claims.  *E.g.*, *id.* ¶¶ 518, 533.

These alleged misstatements and omissions to regulators easily satisfy SLUSA's "in connection with" requirement, which is met where "the scheme to defraud and the sale of securities coincide."  *SEC* v. *Zandford*, 535 U.S. 813, 822 (2002).  The Amended Complaint squarely alleges that the fraud on the regulators "coincided" with Madoff's phantom purchases and sales; in fact, the Trustee alleges that JPMorgan knowingly participated in Madoff's Ponzi scheme and that, if JPMorgan had not defrauded regulators, "the Ponzi scheme would have been stopped sooner."  Am. Compl. ¶ 144.  That is more than enough to satisfy SLUSA's "broad" in connection with requirement.  *Romano* v. *Kazacos*, 609 F.3d 512, 521, 523-24 (2d Cir. 2010) (observing that "[t]he 'coincide' requirement is broad in scope" and is met where "both the misconduct complained of, and the harm incurred, rests on and arises from securities transactions").

Indeed, in numerous decisions arising out of Madoff's Ponzi scheme and involving feeder funds, the courts in this Circuit have held that SLUSA precluded lawsuits where the plaintiffs claimed that the defendants' alleged misrepresentations or omissions "had the effect

of facilitating Madoff's fraud[]." *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 430 (S.D.N.Y. 2010); *accord, e.g.*, *Newman* v. *Family Mgmt.*, 748 F. Supp. 2d 299, 311-13 (S.D.N.Y. 2010); *Wolf Living Trust* v. *FM Multi-Strategy Investment Fund*, 2010 WL 4457322, at *3 (S.D.N.Y. Nov. 2, 2010); *see also In re Kingate Mgmt. Ltd. Litig.*, 2011 WL 1362106, at *9 (S.D.N.Y. Mar. 30, 2011) (SLUSA applied where "Madoff's fraud is at the heart of the case"); *Levinson* v. *PSCC Servs.*, 2009 WL 5184363, at *14 (D. Conn. Dec. 23, 2009) (dismissing claim for aiding and abetting Madoff's conversion).

The Trustee ignores these cases and instead cites Judge Marrero's decision in *Anwar* v. *Fairfield Greenwich*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010). In *Anwar*, the court concluded that the "in connection with" requirement of SLUSA was not met because the allegations "present[ed] multiple layers of separation between whatever phantom securities Madoff purported to be purchasing and the financial interests Plaintiffs actually purchased." *Anwar*, 728 F. Supp. 2d at 398. But in *Anwar*, the defendants were not alleged to have aided and abetted Madoff's fraud and breaches of fiduciary duty — but rather the fraud and breaches of fiduciary duty in connection with the sale of shares in feeder funds. *Id.* at 388. Here, the Trustee is suing on behalf of Madoff's direct customers on the theory that JPMorgan aided and abetted Madoff's fraud, thereby injuring those customers. According to the Trustee's allegations, there are *zero* "layers of separation" between Madoff's securities fraud and the conduct challenged in the Amended Complaint.

Moreover, while the allegations of JPMorgan's misrepresentations or omissions are more than sufficient to satisfy SLUSA, the Trustee is wrong in arguing that his allegations of *Madoff*'s misrepresentations and omissions do not count for SLUSA purposes. The statute only requires allegations of misrepresentations or omissions; it does not require that they be made by

the defendant.  Here, the Trustee alleges that Madoff made "intentional misrepresentation[s] of fact" to carry out "a multi-billion dollar securities fraud scheme" in violation of Section 10(b) of the 1934 Act and Rule 10b-5, and that JPMorgan deliberately assisted and profited from that deception by, among other things, making its own misrepresentations or omissions to federal and state regulators to conceal the fraud.  Am. Compl. ¶¶ 1, 47, 53, 58, 518.  Although the Trustee argues that Madoff's fraud is "too remote" for SLUSA to apply, this argument is refuted by the Trustee's own assertions that JPMorgan was "complicit in" and "at the very center of" the Ponzi scheme.  Am. Compl. ¶ 1.

As the courts have held, claims that the defendant aided and abetted someone else's securities fraud fall squarely within SLUSA preclusion.  *See Proctor* v. *Vishay Intertech. Inc.*, 584 F.3d 1208, 1222-23 (9th Cir. 2009) (SLUSA precluded claim where it was the alleged misrepresentations of defendant Vishay's auditor, Ernst & Young, that were "among the overt acts, or omissions, in which Ernst & Young engaged in furtherance of its conspiracy with, and in aiding and abetting, Vishay" — even though the claim in question did "not state that Vishay itself made misrepresentations or omissions"); *Instituto de Prevision Militar* v. *Merrill Lynch*, 546 F.3d 1340, 1348-49 (11th Cir. 2008) (SLUSA precluded action alleging that defendant "aided and abetted" a third party's misrepresentations and theft).  Indeed, Judge Haight's decision in *LaSala* v. *UBS*, 510 F. Supp. 2d 213 (S.D.N.Y. 2007) — relied on by the Trustee here (Tr. Br. 75) — makes this point, observing that "the misrepresentation or omission at issue need not in all instances be made by the defendant for SLUSA to preempt the claim."  *Id.* at 240.

Finally, contrary to the decisions of every court from this District to reach the issue, the Trustee contends that since Madoff never actually purchased any securities, SLUSA does not apply.  Tr. Br. 73.  The Trustee is wrong.  The United States Supreme Court, the SEC,

and the lower courts have squarely rejected such a narrow reading of the "purchase or sale"

language.  In *Dabit*, the Supreme Court held that SLUSA incorporates the "broad construction"

of the "purchase or sale" requirement adopted in previous decisions interpreting Section 10(b) of

the 1934 Act.  547 U.S. at 85.  The *Dabit* Court specifically relied on its prior decision in *SEC* v.

*Zandford*, 535 U.S. 813, 819 (2002), which accepted the SEC's position "that a broker who

accepts payment for securities that he *never intends to deliver* . . . violates § 10(b) and Rule 10b-

5." *Id.* at 819-20 (emphasis added); *see also In re Jett*, Securities Act Rel. No. 8395, Exchange

Act Rel. No. 49366, 2004 SEC LEXIS 504, at *72 & n.41 (Mar. 5, 2004) ("When a person

portrays activities as securities purchases and sales that, in fact, are no such thing, that conduct

can, and here does, constitute securities fraud." (citing cases)); *Grippo* v. *Perazzo*, 357 F.3d

1218, 1223-24 (11th Cir. 2004) ("purchase or sale" requirement of § 10(b) was satisfied even

though defendant never purchased securities).

   Under SLUSA, the rule is the same.  *See, e.g.*, *Instituto de Prevision Militar*, 546

F.3d at 1352 ("What controlled in *Grippo* was the product that was *marketed* to the investor, not

what the defendant actually did with the investor's money.  The same rule applies under

SLUSA.") (emphasis in original).  As a result, courts have repeatedly "concluded that, in the

context of [Madoff's] Ponzi scheme, the 'in connection with' requirement is satisfied by his

phony purchases and sales." *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 363

(S.D.N.Y. 2011) (citing cases); *accord Mandelbaum* v. *Fiserv, Inc.*, 2011 WL 1225549, at *15

(D. Colo. Mar. 29, 2011) (dismissing Madoff-related claims and holding that SLUSA applies

"even if a security was not actually purchased, provided the plaintiff had submitted funds to the

defendant with the understanding that such funds would be used to purchase securities") (citing

cases); *Kingate*, 2011 WL 1362106, at *7 (collecting cases); *Barron* v. *Igolnikov*, 2010 WL

882890, at *4 (S.D.N.Y. Mar. 10, 2010) ("[C]laims based on the alleged failure to buy or sell covered securities fall squarely within SLUSA's ambit.").

The Trustee ignores virtually all of this authority — and does not cite a single case in which any court has ever held that SLUSA's "in connection with" requirement is not met when someone lies about purchasing and selling securities. Instead, the Trustee relies on the Second Circuit's recent decision in *In re BLMIS*, 2011 WL 3568936, at *5 (2d Cir. Aug. 16, 2011) — a case that did not deal with SLUSA, Section 10(b), or Rule 10b-5. Given that SLUSA, in this particular respect, is interpreted the same as Section 10(b), if the Trustee were correct, it would mean that Madoff's conduct — perhaps the largest securities fraud in history — was not actionable under Section 10(b). This would certainly come as a surprise to the U.S. Attorney's Office and the SEC, both of which charged Madoff with securities fraud under Section 10(b), not to mention Madoff himself, who pled guilty to those charges. Am. Compl. ¶¶ 53, 58.

## POINT IV

### THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR CONTRIBUTION.

The Trustee does not attempt to argue that *SIPA* creates a right of contribution. The Trustee asserts, instead, that he is bringing the claim under New York law. This contribution claim fails. The Trustee is seeking contribution for payments made pursuant to SIPA, and, therefore, he is not entitled to look beyond SIPA to state law for a right of contribution. But even if the Trustee could look to New York law, the Amended Complaint does not state a valid contribution claim. The Trustee's contemplated payments are not based on "liability for damages" but are merely statutory distributions of customer property. Moreover, the Trustee has neither "paid" customer claims in excess of BMIS's equitable share nor even alleged that BMIS will *ever* pay more than its "equitable share" of its massive tort liability.

A.      **SIPA precludes the Trustee's contribution claim.**

In *HSBC*, on substantially similar allegations, Judge Rakoff dismissed the Trustee's claim for contribution. *HSBC*, 2011 WL 3200298, at *10-11. Judge Rakoff found that the Trustee was "assert[ing] a claim for contribution based on the fact that he has to pay customer claims pursuant to SIPA." *HSBC*, 2011 WL 3200298, at *10. Judge Rakoff held that where "payments are being made pursuant to a comprehensive statutory scheme" that does not provide for contribution rights — such as SIPA — the Trustee "cannot rely on state law to seek contribution." *Id.* (citing *Lehman Bros., Inc.* v. *Wu*, 294 F. Supp. 2d 504, 505 n.1 (S.D.N.Y. 2003)). In short, "[i]f Congress had intended to confer upon the Trustee authority to seek contribution for payments of customer claims, it would have said so in SIPA." *Id.*

Here, just as he did in *HSBC*, the Trustee argues that he can bring a contribution claim under New York law. Tr. Br. 23. But the Trustee is explicitly seeking contribution for the payment of "customer claims" in the SIPA proceeding. Am. Compl. ¶¶ 588-89. Those "customer claims" are "net equity" claims that the Trustee is required to pay under SIPA, *not* New York tort law. *See HSBC*, 2011 WL 3200298, at *10. The Trustee does not claim otherwise. Indeed, even in the face of Judge Rakoff's ruling that the payments to customers compelled under SIPA cannot be used as a basis for contribution under New York law, the Trustee expressly admits, as he must, that "*[t]he compulsion to pay in this case is the Trustee's obligation to pay customer claims under SIPA.*" Tr. Br. 26 (emphasis added).

The issue here is not preemption, as the Trustee incorrectly suggests, but what law governs. "[W]hether contribution is available in connection with a federal statutory scheme is a question governed solely by federal law." *Lehman Bros.*, 294 F. Supp. 2d at 505 n.1 (quotation marks omitted); *see also HSBC*, 2011 WL 3200298, at *10. Since the "compulsion to pay" in

this case is imposed by SIPA, the Trustee cannot look to state law for contribution rights.  *See HSBC*, 2011 WL 3200298, at *10-11; *see also Nw. Airlines, Inc.* v. *Transp. Workers Union of Am.*, *AFL-CIO*, 451 U.S. 77, 97 n.38 (1981) ("[F]ederal courts . . . have recognized a right to contribution under state law in cases in which state law supplied the appropriate rule of decision."); *KBL Corp.* v. *Arnouts*, 646 F. Supp. 2d 335, 341 (S.D.N.Y. 2009) ("The plaintiff cannot use New York State common law as an end-around to make a claim for contribution that it could not make under the federal statutory scheme."); *LNC Investments Inc.* v. *First Fid. Bank, N.A.*, 935 F. Supp. 1333, 1349 (S.D.N.Y. 1996) ("The source of a right of contribution under state law must be an obligation imposed by state law.").

It is undisputed that SIPA does not provide the Trustee with contribution rights. The Trustee, therefore, has no contribution claim.

**B.    The Trustee fails to state a contribution claim under New York law.**

Even if the Trustee could invoke New York law, he has failed to state a claim under New York's contribution statute.  As Judge Rakoff held, the Trustee is "not subject to 'liability for damages' in the sense contemplated by New York's contribution statute."  2011 WL 3200298, at *10 (citing N.Y. C.P.L.R. § 1401).  A contribution claim under New York law must be based on a judgment imposing "tort liability."  Opening Br. 66; *accord PPI Enterprises (U.S.), Inc.* v. *Del Monte Foods Co.*, 2003 WL 22118977, at *31 (S.D.N.Y. Sept. 11, 2003). Under SIPA, however, customers of a broker have a statutory entitlement to receive distributions of "customer property" ratably based on their "net equities," irrespective of any state law tort liability.  *See* 15 U.S.C. 78fff-2(c); *In re MV Sec., Inc.*, 48 B.R. 156, 160 (Bankr. S.D.N.Y. 1985) ("SIPA does not protect customer claims based on fraud . . . .  SIPA's primary intent and policy are to protect customers who have cash and securities being held for them by a broker

dealer. . . .") (quotation marks omitted).  Even the Trustee does not argue that he is under

compulsion to satisfy tort liability, stating instead that "[t]he compulsion to pay in this case is the

Trustee's obligation to pay customer claims under SIPA."  Tr. Br. 26.[11]

    The Trustee's contribution claim also fails on grounds that Judge Rakoff did not

reach.  First, even if the payments mandated by SIPA are mischaracterized as "damages"

payments, the Trustee has not "paid" more than his equitable share of liability.  N.Y. C.P.L.R.

§ 1402.  Under the statute, a right of contribution does not accrue "unless and until the defendant

pays the plaintiff."  *Andrulonis* v. *U.S.*, 26 F.3d 1224, 1233 (2d Cir. 1994).  Here, however, the

Trustee does not allege that BMIS has already paid more than its equitable share of liability.

Indeed, he does not allege that BMIS (as opposed to SIPC, which has made advances of

approximately $800 million) has made any payments at all.  Am. Compl. ¶ 588.  New York law

is clear that in the absence of a valid impleader, a joint tortfeasor cannot bring a contribution

claim until it pays more than its equitable share.  *Andrulonis*, 26 F.3d at 1233; *Alside, Inc.* v.

*Spancrete Northeast, Inc.*, 84 A.D.2d 616, 617 (3d Dep't 1981).  Similarly, in the absence of a

valid impleader, contribution prior to payment is not a ripe claim under federal law.  *See*

*Plantronics, Inc.* v. *U.S.*, 1990 WL 3202, at *1 (S.D.N.Y. Jan. 9, 1990) (contribution claim is

"not ripe for resolution" before judgment and payment of liability).

    The Trustee seeks to avoid the requirement of actual payment by claiming that he

has "impleaded" JPMorgan into "the SIPA proceeding."  Tr. Br. 27 (citing *Andrulonis*, 26 F.3d

---

[11]  *Hill* v. *Day (In re Today's Destiny, Inc.)*, 388 B.R. 737 (Bankr. S.D. Tex. 2008) (Tr. Br. 25-26), is inapposite.  Not only did that case apply Texas and not New York law, but it involved contribution claims based on "proofs of claim" asserting tort liability in a bankruptcy proceeding, not customer claims in a SIPA proceeding.  *Id.* at 753.

at 1233).  But this never happened, as the Trustee admits when he speculates that he might one

day move the bankruptcy court to permit him to implead JPMorgan into "individual contested

claims proceedings."  Tr. Br. 27-28.  Since there has been no payment beyond BMIS's equitable

share and no impleader, the Trustee's stand-alone action for contribution is barred.

Second, beyond the Trustee's failure to allege that BMIS has *already* paid more

than its "equitable share" of damages, the Trustee also does not allege that BMIS will *ever* pay

more than that "equitable share."  N.Y. C.P.L.R. § 1402.  The idea of BMIS's paying more than

its "equitable share" of the damages caused to customers and creditors is utterly implausible.

Bernard Madoff and his alter ego, BMIS, deliberately perpetrated and concealed the largest

securities fraud in history.  The Amended Complaint sets forth in detail the "overwhelming

wrongdoing of Madoff and his now-defunct company," BMIS, in perpetrating these crimes.

*HSBC*, 2011 WL 3200298, at *10; *see* Am. Compl. ¶¶ 36-52.  There is nothing in the Amended

Complaint that remotely suggests that the bankrupt BMIS will ever pay more than its "equitable

share" of the $19 billion in alleged out-of-pocket losses suffered by customers (not to mention

the billions more in interest and other damages for which BMIS is liable).

Third, although the Trustee argues that he "has adequately alleged tort claims

against JPMorgan," Tr. Br. 25, for all the reasons set forth below in Points V-VII, the Trustee has

failed to overcome JPMorgan's arguments that he has not stated a claim as to any of the common

law claims asserted against JPMorgan.

Finally, the Trustee's claim is also barred by the Wagoner Rule.  The Wagoner

Rule is a *standing* doctrine that divests a bankruptcy trustee of the authority to bring damages

claims aimed at redressing harms caused by the debtor's own misconduct.  The Trustee cites

cases stating the obvious point that parties seeking contribution from one another are necessarily

*in pari delicto*. Tr. Br. 60. But in this context, where BMIS is in liquidation, the Wagoner Rule dictates that BMIS's customers and creditors, and not the Trustee, are the proper parties to pursue claims against tortfeasors, including claims that may have belonged to the debtor outside bankruptcy. *See Kirschner*, 2009 WL 1286326, at *1 (under the Wagoner Rule, "a trustee cannot sue to recover for a wrong undertaken by the debtor itself"). Notably, despite the many bankruptcy cases involving debtors that committed fraud, *e.g.*, Enron, Worldcom, Refco, and Adelphia, the Trustee does not cite a single decision from this District permitting a fraudulent debtor to bring contribution claims.

## POINT V

## THE AMENDED COMPLAINT FAILS TO STATE CLAIMS THAT JPMORGAN AIDED AND ABETTED MADOFF'S PONZI SCHEME.

**A.     The Trustee has failed to plead particularized facts raising a strong inference of actual knowledge.**

To sustain his aiding and abetting and knowing participation claims, the Trustee must plead particularized facts raising a "strong inference" that JPMorgan had "actual knowledge" of Madoff's crimes; constructive knowledge is not enough. Opening Br. 34-35.

In his opposition brief, the Trustee cannot point to any particularized facts supporting his claim that JPMorgan "actually knew" that Madoff was operating a Ponzi scheme. He cannot identify any bank employee who conspired with Madoff or otherwise discovered his scheme. Instead, the Trustee continues to rely on allegations of what JPMorgan could have, should have, and would have known had it acted differently — allegations that are legally insufficient to establish the "actual knowledge" necessary to impose liability on a defendant for someone else's fraud. *See Rosner* v. *Bank of China*, 349 F. App'x 637, 639 (2d Cir. 2009) (allegations of what a defendant "should have known" are insufficient).

The Trustee's opposition brief tries to build a claim of "actual knowledge" against JPMorgan on two sets of allegations. The first involves activity in the so-called 703 Account, Madoff's checking account at JPMorgan. With the benefit of hindsight, the Trustee's lawyers claim to have identified "spikes" and "unusual repetitive transactions" and other "irregularities" in that account that supposedly should have alerted the bank to the fraud. *See* Tr. Br. 78, 110. But the Trustee never disputes that his pleading is void of any allegation that anyone at the bank ever noticed these supposed irregularities or became suspicious about them. Nor does the Trustee distinguish the cases cited by JPMorgan that have consistently rejected similar attempts to rely on "suspicious" bank account activity as a basis for pleading actual knowledge against a bank. *See, e.g.*, *In re Agape Litig.*, 773 F. Supp. 2d 298, 318 (E.D.N.Y. 2011) (holding that plaintiffs failed to plead actual knowledge by pointing to suspicious account activity even if "hindsight" would tend to "indicate the obviousness of the fraud"); *Ryan* v. *Hunton & Williams*, 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000) ("suspicions" of fraud based on account activity did "not raise an inference of actual knowledge"). While the Trustee takes JPMorgan to task for not spotting supposedly suspicious irregularities, the simple fact remains that a failure to detect fraud does not amount to the "actual knowledge" that is required for liability.

The second set of allegations focus on the due diligence that JPMorgan conducted, beginning in 2006, in connection with the bank's offering of structured products tied to the returns of Madoff feeder funds. Tr. Br. 79. But these allegations show, at most, that although employees at JPMorgan raised concerns about Madoff in conducting their due diligence, they missed or mis-analyzed "red flags" that might have alerted them to fraud. As JPMorgan has shown, the courts in this District have repeatedly rejected these same "red flag" allegations as a basis for pleading fraud on the part of the Madoff feeder funds and various

service providers to these funds.  In his opposition brief, the Trustee simply ignores these cases.  *See, e.g.*, *Saltz* v. *First Frontier, LP*, 2010 WL 5298225, at *3, *9-10 (S.D.N.Y. Dec. 23, 2010) (dismissing fraud claims against auditors of Madoff feeder fund where plaintiffs alleged such "red flags" as Madoff's "abnormally high and stable" investment results and his use of a small, unknown audit firm); *see also* Opening Br. 41-42 (citing additional cases).

The Trustee's remaining argument is that JPMorgan's filing of a Suspicious Activity Report with UK regulators in October 2008 demonstrates actual knowledge of the fraud.  Tr. Br. 99.  But this report contains no new evidence or revelation of fraud.  It simply repeats the same suspicions and speculation surrounding Madoff that had been discussed publicly in the financial press for years.  *See, e.g.*, *Molchatsky* v. *U.S.*, 2011 WL 1471798, at *2 (S.D.N.Y. Apr. 19, 2011) ("In May 2001, the industry publications *MARHedge* and *Barron's* publicly questioned Madoff's operations and returns."); Am. Compl. ¶ 6(g) (acknowledging "public speculation that Madoff operated a Ponzi scheme").  The Trustee's continued reliance on the SAR, moreover, is in clear violation of federal law.  While the Trustee argues that he may use the SAR because it was "made public by the French press," the federal statute providing what the Second Circuit has termed an "unqualified privilege" for statements made in a SAR does not disappear simply because a SAR is leaked or otherwise falls into the hands of a would-be plaintiff.  *See* 31 U.S.C. § 5318(g)(3); *Lee* v. *Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir. 1999).[12]

---

[12]  Contrary to the Trustee's assertions, the statute creates much more than an "evidentiary" privilege.  As this Court observed in *Nevin* v. *Citibank*, both the plain language of the statute and public policy "dictate[] that anything contained in an SAR enjoy an *unqualified* privilege."  107 F. Supp. 2d 333, 342 (S.D.N.Y. 2000) (emphasis added).

Unable to show that anyone at JPMorgan discovered Madoff's fraud, the Trustee resorts to arguing that he can satisfy the "actual knowledge" standard by showing "conscious avoidance." Tr. Br. 92. But the Trustee has not cleared the "very high bar" for making that showing. *Agape*, 773 F. Supp. 2d at 319. To establish conscious avoidance, the Trustee must plead particularized facts showing that employees at JPMorgan deliberately refrained from confirming that Madoff was perpetrating a Ponzi scheme so they could later deny knowledge of that fact. *Id.* And in doing so, the Trustee must demonstrate that the defendant acted with a "culpable state of mind." *Id.* at 320. But the Trustee points to no allegations in the Amended Complaint suggesting that anyone at JPMorgan was remotely conscious of wrongdoing or deliberately refrained from confirming Madoff's crimes just to preserve a defense in some future legal proceeding. *See* Tr. Br. 92-93.[13]

The Trustee quips that, short of an admission from the CEO, he could not imagine a more "damning" set of facts. Tr. Br. 96. Not so. A viable aiding and abetting case would include particularized allegations that bank employees were on the inside of Madoff's criminal operation or were somehow privy to the secrets of his scheme. But the Trustee cannot plead that case, despite his extensive pre-litigation discovery. As a result, he is left to rely on allegations about "red flags" and "irregular activity" that boil down to a charge that JPMorgan should have

---

[13]  The Trustee also attempts to lower his burden by arguing that courts give bankruptcy trustees "leeway" at the pleading stage, even arguing at one point in his brief that "a trustee need not meet Rule 9(b) requirements." Tr. Br. 76, 108. But there is no support for any argument that trustees are exempt from the requirements of Rule 9(b). The Second Circuit has made it clear that this "so-called relaxed standard does not eliminate the particularity requirement." *Devaney* v. *Chester*, 813 F.2d 566, 569 (2d Cir. 1987). The *Devaney* court also made it clear that it is appropriate to consider whether the trustee "has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts" — as was the case here. *Id.*

discovered the fraud.  *Id.* at 93, 98.  That is simply not enough.  "New York courts overwhelmingly recognize that a plaintiff does not satisfy Rule 9(b) by alleging a bank's actual knowledge of a fraud based on allegations of the bank's suspicions or ignorance of obvious 'red flags' or warning signs indicating the fraud's existence."  *Rosner* v. *Bank of China*, 2008 WL 5416380, at *6 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F. App'x 637 (2d Cir. 2009).

The Trustee's inability to meet his pleading burden is hardly surprising given the utter implausibility of his fraud theory.  Despite filing a massive, 137-page opposition brief, the Trustee has offered no cogent, plausible explanation for why JPMorgan would deliberately participate in Madoff's crimes to earn immaterial, routine banking fees.  *See Schmidt* v. *Fleet Bank*, 1998 WL 47827, at *6 (S.D.N.Y. Feb. 4, 1998) ("Ponzi schemes are doomed to collapse . . . and while an individual may be able to escape with the proceeds of a Ponzi scheme, a bank cannot."); *Kalnit* v. *Eichler*, 264 F.3d 131, 140-41 (2d Cir. 2001) (refusing to credit allegations that "def[y] economic reason") (quotation marks omitted).

## B.     The Trustee's attempts to dilute the actual knowledge standard are unavailing.

The Trustee seems to realize that he has failed to plead facts showing that the bank had anything approaching "actual knowledge" of Madoff's fraud.  Thus, despite all his rhetoric about JPMorgan being "at the center of" and "thoroughly complicit in" Madoff's Ponzi scheme, the Trustee ultimately argues that he should not have to satisfy the "actual knowledge" standard.  In this regard, the Trustee argues that his claim styled "*Knowing* Participation in a Breach of Trust" does not really require particularized allegations demonstrating knowledge. *See* Tr. Br. 85.  Instead, the Trustee presents his "knowing participation" claim as, in substance, a claim for simple negligence, repeatedly recasting cases that involved negligence claims as cases involving "knowing participation" in a breach of trust.  *See Id.* at 85 (citing *Chaney* v. *Dreyfus*

*Serv. Corp.*, 595 F.3d 219, 232 (5th Cir. 2010); *MLSMK Inv. Co.* v. *JP Morgan Chase & Co.*, 2011 WL 2176152, at *3 (2d Cir. June 6, 2011); *In re Agape Litig.*, 681 F. Supp. 2d 352, 359-61 (E.D.N.Y. 2010); *Renner* v. *Chase Manhattan Bank*, 1999 WL 47239, at *13-14 (S.D.N.Y. Feb. 3, 1999)).  These cases did not involve causes of action for "knowing participation"; they involved *negligence* claims.  *See also* Tr. Br. 84 (citing, *e.g.*, *Lerner* v. *Fleet Bank*, 459 F.3d 273, 287-90 (2d Cir. 2006) (addressing negligence claim)).

        In this case, however, the Trustee has not brought any claim for "negligence." Nor could he.  As the court held in *Agape*, the "'threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff?'"  *Agape*, 681 F. Supp. 2d at 359.  Here, the answer is "no" — it is well-settled that banks "'do not owe non-customers a duty to protect them from the intentional torts of their customers.'"  *Id.* at 360.

        As expected, the Trustee attempts to invoke a "narrow exception" to this rule by arguing that the 703 Account was a "fiduciary account" and that, therefore, JPMorgan owed a duty to Madoff's customers to protect them from any misappropriation of "trust funds" in that account.  *See MLSMK*, 2011 WL 2176152, at *3.  But the allegations and documents before the Court make it clear that the 703 Account was a conventional depository account, not a trust account.  While the Trustee faults JPMorgan for submitting Madoff's signature card for the 703 Account showing that it was a simple demand deposit account, the Trustee never disputes that that is exactly what it was.  Tr. Br. 82.  The Trustee is unable to point to any allegation in the Amended Complaint that the 703 Account was denominated a trust account, that the account documents identified Madoff's customers as trust beneficiaries, or that the funds in the account were segregated for the benefit of trust beneficiaries.  *See* Opening Br. 48.

Significantly, the Trustee makes no attempt to explain away Judge Jones'

determination in *MLSMK* that the 703 Account was a simple "demand deposit account, *not* a

fiduciary account." *MLSMK Inv. Co.* v. *JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 147 n.2

(S.D.N.Y. 2010) (emphasis added).  This ends the Trustee's argument:  as the *Agape* court

found, "[n]either the Plaintiffs nor the Court have been able to locate a case which even suggests

that New York law imposes upon banks a duty to protect non-customers from a fraud involving

*depository* accounts."  681 F. Supp. 2d at 360 (emphasis in original).

Although the Trustee asserts that *Madoff* and *BMIS* owed fiduciary duties to

investors, that contention is simply irrelevant.  New York courts have held repeatedly that a bank

account is *not* a "fiduciary account" merely because the bank's customer — the account holder

— may owe fiduciary duties to other people, including situations in which the bank's customer is

responsible for investing but misappropriates other people's money.  *See* Opening Br. 45-48

(citing, *e.g.*, *MLSMK*, 737 F. Supp. 2d at 144-45; *Agape*, 681 F. Supp. 2d at 360; *Renner*, 1999

WL 47239, at *1).  By contrast, in the cases that have imposed a duty on banks to protect non-

customers from misappropriation, the account at issue was actually a trust account.  Thus, in

*Lerner*, the plaintiff pled *facts* to show that the relevant accounts were "Attorney Trust and IOLA

accounts."  459 F.3d at 287.  And in *D.M. Rothman & Co.* v. *Korea Commercial Bank*, the

account "was a trust account subject to the provisions" of the Perishable Agricultural

Commodities Act.  411 F.3d 90, 94 (2d Cir. 2005).  Other cases cited by the Trustee also make

this clear.  *See, e.g.*, *Home Savings of Am.* v. *Amoros*, 233 A.D.2d 35, 37 (1st Dep't 1997)

("mortgage trust account"); *Newton* v. *Scott (In re Bohenko Estate)*, 254 A.D. 140, 141 (4th

Dep't 1938) ("misappropriation of trust funds by the committee of an incompetent person");

*Bonham* v. *Coe*, 249 A.D. 428, 431 (4th Dep't 1937) (executor's "misappropriation of trust

funds" from estate account); *Allen* v. *Puritan Trust Co.*, 211 Mass. 409, 422 (1912)

(administrator's misappropriation of "trust fund" from estate account).

   The Trustee, in arguing that the nature of the 703 Account is not relevant, cites

*Bischoff* v. *Yorkville Bank*, 218 N.Y. 106 (1916).  But *Bischoff* did not involve a conventional

depository account:  it involved a situation in which an executor misappropriated "trust funds"

from an estate account where the bank had "absolute proof" of the defendant's malfeasance.  *Id.*

at 108, 111, 113.  As cogently explained by the Connecticut Supreme Court, the *Bischcoff* line of

cases involved accounts that, unlike the 703 Account, "were specifically designated as held in

trust for the trust beneficiary or [that] bore some other indication *on their face* that the funds

belonged to another."  *Aetna Life and Cas. Co.* v. *Union Trust Co.*, 230 Conn. 779, 789 (1994)

(emphasis added) (citing, *e.g.*, *Bischoff*, 218 N.Y. 106).  Notably, the *Bischoff* case was cited by

the *Agape* court just last year in the course of distinguishing "conventional depository accounts"

from "trust accounts."  *Agape*, 681 F. Supp. 2d at 360; *see also Renner*, 1999 WL 47239, at *14

(distinguishing *Bischoff* and holding that a conventional depository account "was not a fiduciary

account").[14]

   Faced with these authorities, the Trustee seeks refuge in the Fifth Circuit's

decision in *Chaney* v. *Dreyfus Serv. Corp.*, 595 F.3d 219 (5th Cir. 2010).  In *Chaney*, the district

court thoroughly reviewed the *Bischoff* line of cases and concluded, citing *Renner*, that "these

cases do not hold or imply that" a duty of care "arises in favor of the noncustomer owner of

---

[14]  In *Heffernan* v. *Marine Midland Bank*, 267 A.D.2d 83, 84 (1st Dep't 1999) (Tr. Br. 87), the
court affirmed *dismissal* of negligence-based claims, observing that the plaintiff had failed "to
allege any facts showing a special duty running from the bank to them."  The court did reinstate
a claim for conversion — but did so in a situation in which the bank's *employee* was engaged in
fraud; thus, the bank was effectively a "participant in the wrongdoing."  *Id.*

funds simply because the bank knows its customer is investing funds that belong to a third party." *Dale* v. *Ala Acquisitions*, 2008 WL 918138, at *9 (S.D. Miss. Mar. 31, 2008).  Thus, the court dismissed a negligence claim against a bank based on alleged misappropriations by the bank's customer from two sets of accounts, general accounts registered in the customer's name and subaccounts registered in the name of insurance companies that had invested with the customer.  *Id.* at *11.  On appeal, the Fifth Circuit *affirmed* dismissal of the negligence claim as to the general accounts.  595 F.3d at 234.  The Fifth Circuit reversed as to the subaccounts, reasoning that for purposes of those accounts only, the insurance companies should be treated as "customers" of the bank to which the bank owed a duty.  *Id.* at 231-32.

    In affirming dismissal of the claims relating to the general accounts, the Fifth Circuit concluded that "knowledge that a third party's funds are being deposited into an account is certainly not enough, alone, to show that the bank ought to have known that the funds were fiduciary."  *Id.* at 233 (citing, *e.g.*, *Renner*, 1999 WL 47239).  The court went on to conclude that a bank cannot be liable for misappropriation from a general deposit account unless the "*sole inference*" available is that "the funds being deposited are held in a fiduciary capacity."  *Id.* (emphasis added).  Despite all this, the Trustee cites a footnote in which the Fifth Circuit — in affirming dismissal — disagreed with the district court's reliance on the fact that the accounts were not "denominated as fiduciary."  *Chaney*, 595 F.3d at 233 n.7 (cited in Tr. Br. 86).  But the footnote cites only *Lerner* and *Bischoff* — both of which involved misappropriation from accounts that *were* denominated in a trust capacity.  *Chaney*, 595 F.3d at 233 n.7.  The Trustee's reliance on dicta in a footnote from an out-of-circuit decision is misplaced.

    Moreover, even if one assumes for argument's sake that the 703 Account was a trust account, the Trustee would still have to plead facts showing that the bank had "clear

-56-

evidence" of misappropriation, as the Second Circuit held in affirming the dismissal of a

negligence claim filed by a Madoff customer against JPMorgan.  *MLSMK*, 2011 WL 2176152, at

*3.  The Trustee quibbles with the Second Circuit's articulation of the standard, claiming that it

was an "isolated" quotation.  Tr. Br. 89.  But that argument provides no basis to dismiss recent,

controlling Second Circuit authority involving the very account at issue in this case.  Nothing in

the Trustee's complaint constitutes "clear evidence" that BMIS, a regulated entity, was

perpetrating a Ponzi scheme through the 703 Account.  *See MLSMK*, 2011 WL 2176152, at *3.

As the Second Circuit observed in *MLSMK*, "it is not unusual for money to be transferred into

and out of investment accounts," often in large quantities.  *Id*.

   The Trustee is totally off base in asserting that the Second Circuit was wrong in

requiring "clear evidence" of misappropriation.  In 1941, in *Grace* v. *Corn Exchange Bank*, the

New York Court of Appeals examined the standard for cases involving misappropriation from

"trust accounts."  287 N.Y. 94, 107 (1941).  The court stated that "if a bank connives with a

trustee and *knowingly* assists the trustee to embezzle funds he holds as fiduciary, the bank is

liable for the moneys embezzled just as any other person, who *knowingly* assists a wrongdoer,

would be liable as a joint wrongdoer for a wrong so committed."  *Id.* at 100-01 (emphasis

added).  The court explained what it meant when it used the term "knowingly":  "of course [a]

bank cannot fairly be charged with *guilty participation* in a crime upon the fiction of a

*constructive, composite knowledge* of every fact of which any employee had notice . . . ."  *Id.* at

106 (emphasis added).  Thus, in articulating the standard of knowledge for claims of

misappropriation of trust funds, the *Grace* court set forth what has come to be the "clear"

evidence standard (*id.*) — the same standard applied by the Second Circuit in affirming dismissal of a negligence claim in *MLSMK*.[15]

### C.   The Trustee has failed to plead the other essential elements of his aiding and abetting claims.

The Trustee has also failed to satisfy the other elements of pleading liability on an aiding and abetting or knowing participation theory.  First, the Trustee has failed to allege substantial assistance.  He claims that JPMorgan "affirmatively assisted Madoff by allowing him to use the 703 Account."  Tr. Br. 97.  But "the mere fact that participants in a fraudulent scheme use accounts at a bank to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance."  *Rosner*, 2008 WL 5416380, at *12 (quotation marks omitted).  The Trustee also contends that JPMorgan assisted Madoff because it "failed to act when required to do so," including by not reporting Madoff to the regulators.  Tr. Br. 97.  But it is well settled that allegations that "come down to omissions or failures to act" do not support a claim of "substantial assistance."  *Sharp Int'l Corp.* v. *State Street Bank & Trust Co.*, 403 F.3d 43, 51-52 (2d Cir. 2005).

Second, the Trustee does not dispute that to recover on his aiding and abetting claims, he must show that the acts alleged in the Amended Complaint were the proximate cause of BMIS's customers' injuries.  As shown in JPMorgan's opening brief, the Trustee's theory of

---

[15]  After *Grace* was decided, the New York legislature enacted a statute stating that banks are *not* subject to a negligence standard in situations similar to that in *Bischoff*.  *See* N.Y. Gen. Bus. L. § 359-l (where "a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account against which he is empowered to sign as a fiduciary . . . the bank receiving such deposit may assume, *if acting in good faith and without actual knowledge* to the contrary, that the funds so deposited by the fiduciary are funds to which the fiduciary is personally entitled") (emphasis added); *id.* § 359-i ("An act is done 'in good faith' when it is done in fact honestly, *whether it be done negligently or not*.") (emphasis added).

proximate cause is that Madoff could not have run his Ponzi scheme without the commercial

banking services provided by JPMorgan.  The lynchpin of this theory appears to be that Madoff

could never have obtained routine banking services from any other bank (even though he

successfully fooled regulators, financial institutions, and other sophisticated investors for

decades).  *See SEC* v. *Cohmad Sec. Corp.*, 2010 WL 363844, at *2 (S.D.N.Y. Feb. 2, 2010).  The

Second Circuit rejected a similar proximate cause argument in *Edwards & Hanly* v. *Wells Fargo*,

a case that the Trustee does not try to distinguish.  602 F.2d 478, 484 (2d Cir. 1979) (allegation

that fraudster "would not have been able to finance or to conceal" the fraud without defendant's

"acquiescence" and lending of money did not amount to proximate cause).

   Finally, the Trustee has failed to meet the pleading requirements for the thousands

of individual fraud claims he is attempting to assert in this action.  In response, his argument is

that "'the basic facts surrounding Madoff's historic Ponzi scheme are by now well known.'"  Tr.

Br. 99.  But the Trustee cites *no* authority supporting the absurd proposition that where the facts

surrounding a fraudulent scheme are "well known," this somehow dispenses with the need to

plead the required elements of a fraud claim, including reasonable reliance.  Nor does the Trustee

distinguish the Second Circuit authority dismissing a fraud claim brought by SIPC and a SIPA

trustee on behalf of customers precisely because the complaint failed to plead reliance by the

individual customers.  *See SIPC* v. *BDO Seidman, LLP*, 222 F.3d 63, 73 (2d Cir. 2000).

   The Trustee suggests in a footnote that if the court should "determine that specific

allegations are required as to each customer, [he] would respectfully request leave to replead."

Tr. Br. 99 n.13.  This is too little too late.  The arguments raised in JPMorgan's motion to

dismiss the Amended Complaint were presented in the motion to dismiss the original complaint

— which the Trustee chose to oppose by amending his pleading.  The Trustee provides no reason

why he should be granted leave to plead "specific allegations" as to each customer when he has twice failed to do so.

## POINT VI

### THE AMENDED COMPLAINT FAILS TO STATE CLAIMS FOR CONVERSION, AIDING AND ABETTING CONVERSION OR UNJUST ENRICHMENT.

**A.      The Amended Complaint fails to state claims for conversion or aiding and abetting conversion.**

Although required for the Trustee's conversion claim, the Trustee cannot show that the money in BMIS's bank account was identifiable property belonging to investors with BMIS.  Under New York law, "a customer's bank account is merely a debt owed to it by the bank and funds deposited are not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for conversion against a bank."  *Wells* v. *Bank of New York Co.*, 181 Misc. 2d 574, 577 (Sup. Ct. N.Y. Co. 1999).  The Second Circuit has adopted this rule, holding that "'funds deposited in a bank account are not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for conversion against the bank.'" *Fundacion Museo de Arte Contemporaneo de Caracas-Sofia Imber* v. *CBI-TDB Union Bancaire Privee*, 160 F.3d 146, 148 (2d Cir. 1998) (quoting *Chem. Bank* v. *Ettinger*, 602 N.Y.S.2d 332, 336 (1st Dep't 1993)).

The Trustee provides no legal basis to disregard this rule.  In arguing that BMIS's depository bank can be said to have converted funds held in BMIS's deposit account, the Trustee cites cases that did not involve conversion claims against a bank holding funds on deposit.  *See, e.g.*, *LoPresti* v. *Terwilliger*, 126 F.3d 34 (2d Cir. 1997) (addressing conversion claim against an ERISA fiduciary); *Kirschner* v. *Bennett*, 648 F. Supp. 2d 525, 540-44 (S.D.N.Y. 2009) (addressing conversion claim against debtor's professional advisors); *Eastman Kodak Co.* v.

*Camarata*, 2006 WL 3538944, at *13-14 (W.D.N.Y. Dec. 6, 2006) (addressing conversion claim against an individual and observing that "courts have found funds deposited in general bank accounts to be insufficiently identifiable to support a conversion claim" for purposes of "claims against the banks themselves"); *Mfrs. Hanover Trust Co.* v. *Chem. Bank*, 160 A.D.2d 113, 124-25 (1st Dep't 1990) (addressing conversion claim against a bank that failed to credit a "specific sum" received from another bank to the "specific account" delineated on the wire transfer).

   The Trustee has also failed to show that JPMorgan "acted to exclude the rights of the owner," as is required for a conversion claim, *Parks* v. *ABC, Inc.*, 2008 WL 205205, at *5 (S.D.N.Y. Jan. 24, 2008), when it complied with the specific directions of the account-holder (BMIS) to debit $145 million from the 703 Account, *see* Am. Compl. ¶ 288. Although the Trustee asserts that BMIS's directions are irrelevant, because JPMorgan was supposedly "on notice that the funds in the 703 Account belonged to BLMIS customers," Tr. Br. 106, the form of that "notice" remains a mystery. The Trustee has *not* alleged that BMIS's account was anything besides a conventional deposit account. *See* Opening Br. 48. Moreover, the Trustee expressly acknowledges that the 703 Account held "commingled" funds that were *not* customer deposits, including the $145 million loaned by JPMorgan. *See, e.g.*, Am. Compl. ¶¶ 284, 286.

   The Amended Complaint likewise fails to state a claim for aiding and abetting conversion. For the reasons set forth above, nothing in the opposition brief shows that JPMorgan had actual knowledge of Madoff's crimes or provided substantial assistance to Madoff in perpetrating those crimes.

**B. The Amended Complaint fails to state a claim for unjust enrichment.**

   In its opening brief, JPMorgan demonstrated that the Trustee's unjust enrichment claim should be dismissed because the Trustee has failed to allege that JPMorgan had any

relationship with BMIS's customers.  As explained by Judge Kaplan in *Carmona* v. *Spanish Broadcasting System, Inc.*, 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009), where the plaintiff fails to allege "any direct dealings, or an actual, substantive relationship" with the defendant, "courts will dismiss unjust enrichment allegations," *id*. at *6 (citing *Sperry* v. *Crompton Corp.*, 8 N.Y.3d 204, 215-27 (2007)); *see also* Opening Br. 56 (citing additional cases).

In response, the Trustee cites certain cases that did not require the direct dealings that Judge Kaplan and other courts have required.  *See Dreieck Finanz AG* v. *Sun*, 1989 WL 96626, at *4 (S.D.N.Y. Aug. 14, 1989); *T.D. Bank, N.A.* v. *JP Morgan Chase Bank, N.A.*, 2010 WL 4038826, at *5 (E.D.N.Y. Oct. 14, 2010).  But even those cases require the plaintiff to allege a clearly defined, non-attenuated "connection between a plaintiff's alleged loss and a defendant's alleged gain." *T.D. Bank*, 2010 WL 4038826, at *5; *see also Cox* v. *Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (1st Dep't 2004) (sustaining unjust enrichment claim against Microsoft brought by ultimate purchasers of Microsoft products alleging "inflated prices").

Under any standard, the connection between customer losses and JPMorgan's alleged gains is too attenuated and speculative to support a claim.  The Amended Complaint alleges that JPMorgan was unjustly enriched because:  (1) BMIS repaid the $145 million loan that JPMorgan had made to it; and (2) JPMorgan used BMIS's deposits to earn income.  Am. Compl. ¶ 558.  But the Amended Complaint does not explain how BMIS's receiving and repaying $145 million enriched JPMorgan at any customer's expense.  Nor does the Trustee allege any connection between JPMorgan's "earnings" off deposits and any customer's loss.

In addition, the Trustee fails to allege facts showing that "equity and good conscience" require restitution.  New York courts have held that "a plaintiff, in order to recover under a theory of quasi-contract," must "prove that performance" by the plaintiff "was rendered

for the defendant." *Piccoli A/S* v. *Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 166

(S.D.N.Y. 1998) (quotation marks omitted); Opening Br. 57.  The rationale for the rule applies

with full force here:  customers of BMIS, in making investments with BMIS acted "at the behest

of someone other than the defendant," and in equity should look to "that person for recovery,"

not to JPMorgan.  *Kagan* v. *K-Tel Entm't, Inc.*, 172 A.D.2d 375, 376 (1st Dep't 1991).

**POINT VII**

**THE TRUSTEE HAS NO VALID CLAIM FOR
"FRAUD ON THE REGULATOR."**

In its opening brief, JPMorgan demonstrated that "fraud on the regulator" is not a

recognized claim under New York law.  *See* Opening Br. 58.  The Trustee has no response.  He

fails to cite a single New York case upholding a cause of action for "fraud on the regulator."

Instead, the Trustee invokes the United States Supreme Court's decision in *Buckman Co.* v.

*Plaintiffs' Legal Committee*, which — far from supporting a claim for "fraud on the regulator"

under New York law — firmly rejected purported state law claims for fraud on federal regulators

as preempted by federal statute.  531 U.S. 341, 348 (2001); *see also* Opening Br. 60-62.

The Trustee also cites *Minihane* v. *Weissman (In re Empire Blue Cross and Blue

Shield Customer Litigation)*, a case dismissing fraud claims against an insurer because they were

barred by New York's "filed-rate" doctrine.  622 N.Y.S.2d 843, 847-49 (Sup. Ct. N.Y. Co.

1994).  *Empire* is wholly irrelevant.  In *Empire*, policyholder plaintiffs sued Empire and its

executives for fraud, claiming that Empire had filed inaccurate financial reports with the New

York State Department of Insurance to obtain rate increases.  *Id.* at 845.  The court held that

plaintiffs' fraud claims were barred by the "filed rate" doctrine, pursuant to which any filed rate

approved by the governing regulatory agency is "per se reasonable and unassailable in judicial

proceedings brought by ratepayers."  *Id.* at 847.  In so holding, the court rejected plaintiffs'

-63-

argument that "there should be an exception to the 'filed rate' doctrine when there are allegations of fraud upon the regulatory agency." *Id.* at 848.  Plaintiffs in *Empire* did not assert a claim for "fraud on the regulator," and the court certainly did not recognize such a claim under New York law.  *Id.* at 846-48.

       The Trustee's attempt to allege "fraud on the regulator" also fails because the Trustee has not alleged the required elements of any type of fraud claim.  With respect to JPMorgan's supposed "knowing misrepresentation or omission" to its regulators, the Trustee alleges only that he "is informed and believes" that JPMorgan "omitted and misrepresented material facts to both federal and state regulators."  Am. Compl. ¶ 565.  Likewise, the opposition brief argues only that "based on the Trustee's investigation to date, JPMC failed to fully and accurately report Madoff's likely fraud to regulators."  Tr. Br. 109.  The Trustee has failed to "specify the statements or omissions that [he] contends were fraudulent, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent."  *Muller-Paisner* v. *TIAA*, 289 F. App'x 461, 463 (2d Cir. 2008).

       Moreover, the Trustee misapprehends the reliance element of a fraud claim under New York law.  According to the Trustee, BMIS customers relied upon JPMorgan's alleged misrepresentations to its regulators because JPMorgan "lent legitimacy and cover to Madoff"; BMIS customers somehow "relied upon" this legitimacy; and, without such legitimacy, BMIS customers "would not have been harmed to the extent they were."  Tr. Br. 111.  But the cases cited by the Trustee make clear that even if third-party reliance can be sufficient under New York law to satisfy the reliance element of a fraud case — despite the Second Circuit's holding that it cannot, *see Cement & Concrete Workers District Council Welfare Fund* v. *Lollo*, 148 F.3d 194, 196-97 (2d Cir. 1998) — it is *only* where plaintiffs' injuries "result *directly* from the

defendant's fraudulent misrepresentations to a third party."  Tr. Br. 110 (quoting *Bridge* v.

*Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653 (2008) (emphasis added)).  Yet in *SIPC* v. *BDO*

*Seidman, LLP*, 222 F.3d 63 (2d Cir. 2000), the Second Circuit held that allegations of "fraud on

the regulatory process" are *not* sufficiently direct to show that a plaintiff "actually relied" on a

defendant's communications with regulators, *id*. at 73.  Here, therefore, where the Trustee has

not alleged that BMIS customers actually relied on JPMorgan's communications with regulators,

the Trustee has no viable claim for "fraud on the regulator."

      The third basis for dismissal is preemption.  *See* Opening Br. 60-62.  The Trustee

claims that "[d]espite having been, at various times, regulated by both *state* and federal

regulators, JPMC argues that fraud on regulators is preempted by federal banking laws."  Tr. Br.

112 (emphasis in original).  In truth, JPMorgan argued in its opening brief that "*insofar* as the

Trustee's 'fraud on the regulator' claim alleges that JPMorgan misled its *federal regulators*, the

claim is preempted by federal law."  Opening Br. 60 (emphasis added).  The Trustee has no

persuasive response to this point.  In *Buckman*, the Supreme Court held that where a relationship

between a federal agency and a regulated entity is prompted by and governed by federal law, that

agency has been granted statutory power to enforce the requirements of that relationship, and no

private right of action exists under the statute, state law "fraud on the regulator" claims are

preempted.  *Buckman Co.* v. *Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).  The Trustee's

sole response — that *Buckman*  is "based on a different federal statute," Tr. Br. 114 — attempts

to read into *Buckman*'s holding a limitation that simply does not exist in the opinion.  The

*Buckman* Court did not, for example, hold that the relationship between the *FDA* and the entity it

regulates is "inherently federal" but, rather, that the relationship between "*a federal agency*" and

the entity it regulates is inherently federal.  *Buckman*, 531 U.S. at 347 (emphasis added).  Nor are

the policy considerations cited by the *Buckman* Court unique to FDA cases.  To the contrary, the

Supreme Court ruled broadly that "[p]olicing fraud against federal agencies is hardly a field

which the States have traditionally occupied."  *Id.* (quotation marks omitted).

      The Trustee's argument relating to New York statutes also does not hold up:  the

New York statutes cited by the Trustee do not contain any private right of action, and yet the

Trustee is seeking to hold JPMorgan liable for allegedly violating those statutes.  *See* Opening

Br. 62-63.  Just as it would contravene Congressional intent to permit private plaintiffs to enforce

the BSA where the statute does not create a private right of action, so too there is no basis here to

imply a private cause of action for fraud on New York regulators.

## POINT VIII

### THE TRUSTEE'S CLAIMS TO AVOID PAYMENTS TO JPMORGAN SHOULD BE DISMISSED.

      It is fundamental that a conveyance is not avoidable as fraudulent if it does not

harm creditors by "deplet[ing] or otherwise diminish[ing] the value of the assets of the debtor's

estate remaining available to creditors."  *Lippe* v. *Bairnco Corp.*, 249 F. Supp. 2d 357, 375

(S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004); Opening Br. 70.

      As shown in JPMorgan's opening brief, this elementary principle compels

dismissal of the Trustee's claims to avoid BMIS's repayments of $145 million in loans:  *First*,

the repayments were setoffs, not transfers of BMIS's property, and as such did not deplete

BMIS's estate.  *Second*, even if the repayments were not setoffs, they were repayments of

secured debt that again could not have harmed creditors.  And *third*, as the Second Circuit has

held, except in narrow circumstances not present here, a repayment of an antecedent debt

(secured or unsecured) cannot be avoided as fraudulent, as any prejudice it arguably may cause to other creditors is the concern of *preference* law, not fraudulent transfer law.

The Trustee's attempt to evade this fatal flaw in his claims by challenging BMIS's incurrence of loan obligations and grants of liens to JPMorgan likewise fails, principally for the same reason:  a debtor's incurrence of a secured loan obligation does not injure creditors by diminishing the estate.  Nor has the Trustee alleged a basis for "collapsing" BMIS's incurrence of secured debt with any other conceivably harmful transaction.

**A.     The Trustee cannot avoid BMIS's loan repayments.**

**1.     As acts of setoff, the loan repayments are not avoidable.**

A setoff cannot be avoided as a fraudulent conveyance, because it does not involve "any transfer of an interest of the debtor in property" under 11 U.S.C. § 544(b)(1).  *E.g.*, *Montague* v. *Metro Auto Xpress, LLC (In re Am. Remanufacturers, Inc.)*, 2008 WL 2909871, at *2 (Bankr. D. Del. July 25, 2008).  Indeed, "when mutual debts and mutual obligations are applied against one another there is *no* violation of the concept of equality of distribution.  The estate's other unsecured claimants *are not adversely affected* because a creditor who is entitled to a setoff is regarded in the same light as a secured claimant."  *In re Texaco Inc.*, 73 B.R. 960, 966 (Bankr. S.D.N.Y. 1987) (emphasis added); *see also Bank of New York* v. *Treco (In re Treco)*, 240 F.3d 148, 162 (2d Cir. 2001) ("If [a party] has a right of setoff, then its claim is deemed secured to the extent of the right of setoff.").  The Trustee's own allegations that BMIS's loans were repaid by debiting the 703 Account (Am. Compl. ¶ 288) — that is, by effectuating a setoff — thus defeat his avoidance claims.

The Trustee responds by arguing that because BMIS "voluntarily directed repayment of the loan," no setoff could have occurred.  Tr. Br. 134.  But setoffs are not

transformed into voidable "transfers" simply because the parties agree that they can occur.  To the contrary, the cases the Trustee himself cites confirm that parties routinely consent to the effectuation of a setoff.  *See Steiner* v. *Mut. Alliance Trust Co. of N.Y.*, 139 A.D. 645, 646 (1st Dep't 1910) (upholding bank's contractual right to setoff unmatured debt where party "consented"); *In re Gen. Assignment for Benefit of Creditors of Tiffany Lingerie, Inc.*, 208 N.Y.S.2d 471, 476 (Sup. Ct. Kings Co. 1960) (no setoff of non-mutual debts absent agreement); *see also* 1 Law of Debt. & Cred. § 5:11 (2011) ("The setoff right . . . can be created by contract.").[16]

Quite simply, then, there is no plausible way to read the Trustee's allegations as pleading anything other than a setoff, where it is undisputed that BMIS held nothing but a claim against JPMorgan in the amount of the funds that were debited from the 703 Account.  *E.g.*, *Bennett Funding Grp., Inc.* v. *Official Comm. of Unsecured Creditors (In re Bennett Funding Group, Inc.)*, 146 F.3d 136, 139 (2d Cir. 1998) (when a depositor makes a deposit into a general bank account, "he parts with title to the funds in exchange for a debt owed to him by the bank").

The Trustee further contends that JPMorgan could not set off using the contents of the 703 Account because that account contained funds belonging to BMIS's customers.  He does not dispute, however, that "funds in a general deposit account can be used to set off debts owed to the bank," *Bennett Funding*, 146 F.3d at 139, or that "a deposit made in the ordinary

---

[16]  Nor does it matter whether BMIS's debt had matured, or whether JPMorgan sent a written notice, at the time of the loan repayment by setoff that BMIS authorized.  The Trustee cites no case holding that debt maturity or written notice is integral to a setoff where the parties otherwise agree, as the Amended Complaint alleges that BMIS and JPMorgan did.  Indeed, the New York statute he cites expressly states that its requirements "shall *not* be deemed to affect the validity of the right of set off."  N.Y. Banking Law § 9-g(3) (emphasis added).  And the point here is not whether JPMorgan effectuated a setoff that would have been technically sound absent consent, but whether the loan repayments were "transfers" of BMIS's property as opposed to setoffs.

course of business is presumed to be general," *Peoples Westchester Sav. Bank* v. *FDIC*, 961 F.2d 327, 330 (2d Cir. 1992).  Instead, the Trustee argues merely that allegations that JPMorgan knew the 703 Account contained some customer desposits are sufficient to defeat a right of setoff.  Not so.  The Amended Complaint admits that the 703 Account held funds that were *not* customer deposits, including the $145 million in proceeds from JPMorgan's loans.  *See, e.g.*, Am. Compl. ¶¶ 284, 286.  This admitted commingling is dispositive:  "Funds not subject to setoff lose their exempt status . . . when they are commingled with funds that are not exempt from setoff." *Alexander & Jones* v. *Sovran Bank, N.A. (In re Nat Warren Contracting Co.)*, 905 F.2d 716, 718 (4th Cir. 1990).  That rule makes particular sense where, as here, a bank sets off against the same account where the proceeds of its loans to the debtor were initially credited.[17]

Finally, the Trustee's reliance on authorities holding that the right of setoff is equitable, and thus subject to factual determinations that cannot be made at the pleadings stage, is entirely misplaced.  Unlike in those cases, JPMorgan is not invoking setoff as an affirmative defense to a claim.  *Compare Official Comm. of Unsecured Creditors of Enron Corp.* v. *Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 465 (Bankr. S.D.N.Y. 2007) (setoff invoked to reduce liability to debtor).  Rather, JPMorgan simply contends that, according to the Amended Complaint itself, what happened to effectuate the loan repayment was a setoff, not a

---

[17]  None of the cases cited by the Trustee supports a different outcome.  *See Gerrity Co., Inc.* v. *Bonacquisti Const. Corp.*, 156 A.D.2d 800, 802 (3d Dep't 1989) (bank's general knowledge that depositor's business involved holding funds in trust for third parties was insufficient to defeat bank's right to setoff); *Schreibman* v. *Chase Manhattan Bank*, 15 A.D.2d 769, 770 (1st Dep't 1962) (allegation that bank applied non-depositor's funds to debts owed by depositor sounded in conversion for purposes of statute of limitations); *Utica Sheet Metal Corp.* v. *J. E. Schecter Corp.*, 53 Misc. 2d 284, 287 (Sup. Ct. Schenectady Co. 1967) (setoff upheld despite bank's knowledge of trust nature of account where funds in trust had been removed from account before setoff).

transfer of BMIS's property; thus, the issue presented can appropriately be resolved on a motion to dismiss.

> **2.      The loan repayments are not avoidable because they discharged secured debts.**

Viewed as transfers, BMIS's loan repayments again cannot be avoided, because the satisfaction of secured debt does not harm creditors by "put[ting] assets otherwise available in a bankruptcy distribution out of their reach." *E.g.*, *Henry* v. *Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co.)*, 471 F.3d 977, 1008 (9th Cir. 2006); Opening Br. 70.

The Trustee's argument that BMIS's loan repayments harmed creditors by "depriving" them "of a $145 million asset" (Tr. Br. 132) misses the point:  in exchange for the repayment of $145 million, JPMorgan relinquished its claim and lien in the same amount.  To whatever extent creditors were "deprived" of $145 million in cash when BMIS repaid its loans, they simultaneously gained the right to look to property of exactly equivalent value to satisfy their claims, and so they could not possibly have been harmed.  *See, e.g.*, *In re Nat'l Century Fin. Enters., Inc.*, 2011 WL 1397813, at *23 (S.D. Ohio Apr. 12, 2011) (secured loan repayment by Ponzi scheme operator was not avoidable because "a payment does not harm other creditors when it results in a dollar-for-dollar reduction in secured, antecedent debt").

> **3.      The Trustee's claims to avoid the loan repayments are barred by *Sharp International*.**

The Second Circuit held in *Sharp International Corp.* v. *State Street Bank & Trust Co.*, that "a conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper," except in the narrow situation where the defendant is an insider of the debtor or a knowing participant in the debtor's fraud.  403 F.3d 43, 54-55 (2d Cir. 2005) (internal quotation marks omitted).  As the Second Circuit explained,

fraudulent conveyance law does not concern itself with any "prejudice" that may result from merely preferring one creditor over another; rather, "[t]he basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy *some* of his creditors." *Id.* (quoting *HBE Leasing Corp.* v. *Frank*, 48 F.3d 623, 634 (2d Cir. 1995) (emphasis in original)).

To escape *Sharp*, the Trustee draws a distinction without a difference between cases where the antecedent debt was incurred before the debtor's fraud and cases where the antecedent debt was incurred when the creditor allegedly knew or should have known of fraud. In both scenarios, however, when the debtor repays its antecedent debt, it "uses [its] limited assets to satisfy *some* of his creditors," which *Sharp* teaches causes no injury that is cognizable under fraudulent conveyance law.[18] Here, because the Trustee has not adequately alleged that JPMorgan was an insider of BMIS or knowingly participated in the alleged fraud, his claims to avoid the challenged repayments should be dismissed.

**B.    BMIS's loan obligations and grants of liens are not avoidable.**

The Amended Complaint newly alleges that BMIS's incurrence of loan obligations and grants of security interests to JPMorgan themselves are avoidable fraudulent conveyances. These claims, too, necessarily fail.

---

[18] The cases cited by the Trustee are not to the contrary. In *Silverman* v. *Actrade Capital, Inc. (In re Actrade Financial Technologies Ltd.)*, the trustee alleged "that there was no satisfaction of an antecedent debt." 337 B.R. 791, 803-04 (Bankr. S.D.N.Y. 2005). Similarly, in *Picard* v. *Merkin (In re Bernard L. Madoff Investment Securities LLC)*, the trustee alleged that an investor in a Ponzi scheme was not "entitled to claims for restitution" that could constitute antecedent debts. 440 B.R. 243, 257-58, 262-65 (Bankr. S.D.N.Y. 2010), *leave for appeal denied*, Slip Op. No. 11-MC-00012 (S.D.N.Y. Aug. 31, 2011). These cases stand in contrast to *Sharp* and to this case, where the challenged transfers satisfied the debtor's contractual obligations to a lender.

In *Gowan* v. *Wachovia Bank, N.A. (In re Dreier LLP)*, __ B.R. __, 2011 WL 3319711 (Bankr. S.D.N.Y. Aug. 3, 2011), a decision arising out of the Marc Dreier fraud, the court held that when a Ponzi scheme operator takes out a bank loan and grants a lien, creditors are not harmed by the transaction because the debtor receives an equivalent amount of cash in exchange. *Id.* at *6 ("Standing alone, the [debtor's incurrence of secured debt] did not harm Dreier LLP or its creditors."); *see also* Opening Br. 72. "Instead, the damage, if any, to the creditors occur[s] when [the debtor] allegedly transfer[s] virtually the entire loan proceeds to a Ponzi scheme investor." *Gowan*, 2011 WL 3319711, at *6. The court held further that the debtor's loan obligations and grants of security interests could only be avoided as fraudulent conveyances if they were "collapsed" with the debtor's subsequent payment to a Ponzi scheme investor, which in turn would require a showing — by *the trustee* — that "the consideration received from the [bank was] reconveyed by the debtor for less than fair consideration or with an actual intent to defraud creditors," and that the bank had "actual or constructive knowledge of the entire scheme that renders [its] exchange with the debtor fraudulent." *Id.* at *7 (quoting *HBE Leasing*, 48 F.3d at 635).

Here, the Trustee fails to meet this pleading burden. *First*, the Amended Complaint fails adequately to allege that JPMorgan had any kind of knowledge that BMIS was a Ponzi scheme. The Amended Complaint demands the absurd inference that JPMorgan chose to lend $145 million to what it knew was a Ponzi scheme — *i.e.*, an enterprise doomed to fail — solely so that it could earn regular interest rates and routine banking fees. As the court held in *Gowan*, such allegations are implausible and therefore insufficient to sustain a fraudulent conveyance claim against a bank that lent to a Ponzi scheme operator. *See id.* at *10 ("The Trustee's theory is also implausible. . . . Although [the bank] was anxious to earn more fees

from [the debtor's] business, it is difficult to believe that [the bank] would knowingly choose to facilitate [the] fraudulent scheme as the way to earn those fees.").

Aside from arguing that *the defendant* bears the burden to show lack of knowledge — an argument that *Gowan* correctly rejected — the Trustee also tries to dilute the knowledge requirement into a nebulous "knew or should have known" standard tantamount to negligence. *E.g.*, Tr. Br. 120.  As demonstrated in the opening brief, section 278(2) of the Debtor and Creditor Law protects a defendant that gave value and did not have "actual fraudulent intent" from liability under New York's fraudulent conveyance law.  N.Y. Debt. & Cred. Law § 278(2).  In cases such as this — where JPMorgan provided full value for the challenged obligation by lending $145 million to BMIS — this provision reflects a clear statutory purpose to protect defendants that are "not guilty of actual fraud."  N.Y. Jur. 2d (Creditors' Rights) § 403; *see also CFTC* v. *Walsh*, 618 F.3d 218, 230 (2d Cir. 2010) (New York law looks to the "subjective intent of the transferee"); *HBE Leasing Corp.* v. *Frank*, 48 F.3d at 637 (in collapsing case, analyzing whether the defendant's conduct constituted "a conscious turning away from the subject").  Failing to allege any facts showing that JPMorgan loaned money to BMIS with fraudulent intent, the Amended Complaint does not state a claim.

*Second*, and in any event, the Amended Complaint contains no allegation that the proceeds of JPMorgan's loans were used to fund a specific transaction that defrauded or harmed creditors.  As a result, the Amended Complaint does not identify any fraudulent transaction with which BMIS's incurrence of loan obligations can be "collapsed."  *Compare Gowan*, 2011 WL 3319711, at *8 (concluding that element of "collapsing" test was met by allegations that the debtor "immediately wired substantially all of the [bank loan] proceeds to an investor in the Note Fraud as repayment of principal, interest, and fees").

**CONCLUSION**

For all the reasons set forth in JPMorgan's briefs, as well as the briefs submitted by the UBS Defendants and Luxalpha Director Defendants in support of their motion to dismiss filed in Case No. 11 Civ. 4212 (CM), causes of action 21-28 and 1-12 of the Amended Complaint should be dismissed with prejudice.

Dated:   New York, New York
         September 16, 2011

                    Respectfully submitted,

*Of counsel:*                WACHTELL, LIPTON, ROSEN & KATZ

Amy R. Wolf
Douglas K. Mayer           By:  /s/ John F. Savarese
Stephen R. DiPrima              John F. Savarese
Emil A. Kleinhaus
Meredith L. Turner           51 West 52nd Street
Jonathon R. La Chapelle     New York, NY  10019
Lauren M. Kofke            Telephone:  (212) 403-1000
                    Facsimile:   (212) 403-2000

                    *Attorneys for Defendants JPMorgan Chase & Co.,*
                    *JPMorgan Chase Bank, N.A., J.P. Morgan Securities*
                    *LLC and J.P. Morgan Securities Ltd.*